19.     Upon information and belief, plaintiff has given no such notice to the

Owner.

### FOR A SECOND DEFENSE

20.     Plaintiff's recovery under Arch's Payment Bond is limited to the amount, if

any, found to be due to plaintiff from Marco for labor and materials furnished by plaintiff

to Marco on the project.

### FOR A THIRD DEFENSE

21.     Plaintiff is not entitled to punitive damages.

### FOR A FOURTH DEFENSE

22.     There is presently pending a lawsuit instituted by plaintiff against Marco in

the Supreme Court of the State of New York, New York County, for the same monies

plaintiff seeks against defendant Arch, Marco's surety, in this action, and in which state

court action Marco denies owing any monies to plaintiff.

23.     By reason of the foregoing, this Court should stay this action pending the

resolution of plaintiff's pending action against defendant's principal, Marco.

### FOR A FIFTH DEFENSE

24.     Defendant Arch incorporates herein by reference all defenses asserted by its

principal, Marco, in plaintiff's aforesaid pending action against Marco in the Supreme

Court of the State of New York, New York County.

118573 v1                                    4

WHEREFORE, defendant Arch Insurance Company demands judgment

dismissing this action, together with its costs and disbursements.

Dated: Jericho, New York              TORRE, LENTZ, GAMELL, GARY
      September 14, 2009              & RITTMASTER, LLP
                                      Attorneys for Defendant Arch Insurance Company

                                  By:   /s/ Steven H. Rittmaster
                                        Steven H. Rittmaster
                                        Lewis Stockman
                                100 Jericho Quadrangle, Suite 309
                                Jericho, NY 11753-2702
                                (516) 240-8900

**A164**

Index No.: __09CV6796(JGK)__          20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

METRO FOUNDATION CONTRACTORS, INC.,

                         Plaintiff,

      - against -

ARCH INSURANCE COMPANY,

                      Defendant.
          and third party action

## THIRD PARTY COMPLAINT

**TORRE, LENTZ, GAMELL, GARY & RITTMASTER, LLP**
*Attorney(s) for*     Defendant and Third-Party Plaintiff
*Office and Post Office Address, Telephone*
**100 JERICHO QUADRANGLE, SUITE 309**
**JERICHO, NEW YORK 11753-2702**
    Tel: (516) 240-8900

To:                                     Esq.

Attorney(s) for

Service of a copy of the within

                is hereby admitted:
Dated, N.Y.,                          20

Attorney(s) for

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
METRO FOUNDATION CONTRACTORS, INC.,

        Plaintiff,

    - against -

ARCH INSURANCE COMPANY,

        Defendant.
--------------------------------------------------------------------- X
ARCH INSURANCE COMPANY,

       Third-Party Plaintiff,

    - against -

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMANN and PATRICK J. QUIGLEY,

       Third-Party Defendants.
---------------------------------------------------------------------

CASE NO.
09CV6796 (JGK)

RECEIVED
SEP 15 2009
U.S.D.C. S.D. N.Y.
CASHIERS

THIRD-PARTY
COMPLAINT

      Defendant and third-party plaintiff Arch Insurance Company ("Arch"), by its

attorneys, Torre, Lentz, Gamell, Gary & Rittmaster, LLP, for its third-party complaint

herein, alleges as follows:

    1.    Arch is a foreign corporation duly authorized to issue surety bonds in the

State of New York.

    2.    Upon information and belief:

      (a)    Third-party defendant Marco Martelli & Associates, Inc. ("Marco") is a New York corporation with its principal place of business at 73 Third Street, New Rochelle, New York 10801;

      (b)    Third-party defendant Martelli Real Estate, Inc. is a New York corporation with is principal place of business at 73 Third Street, New Rochelle, New York 10801;

      (c)    Third-party defendants Marco Martelli and Madeline Martelli are residents of the State of Florida, and the causes of action contained herein arise from the transaction of business by said third-party defendants within the State of New York;

      (d)    Third-party defendant Ronald Kuhlmann resides at 14 Prince Road, Mahopac, New York 10509; and

      (e)    Third-party defendant Patrick J. Quigley resides at 11 Tanager Road, Brewster, New York 10509.

3.    This Court has subject-matter jurisdiction over this third-party action pursuant to 28 U.S.C.A. §1367(a).

## AS AND FOR A FIRST CLAIM FOR RELIEF

4.    Heretofore, third-party defendant Marco entered into construction contract with Village Center For Care, 154 Christopher Street, New York, New York 10010, for the construction of a nursing home at 214-219 West Houston Street, New York, New York (the "Contract").

118-16 v1

2

5.    In connection with the Contract, third-party plaintiff Arch, as Surety, issued its Payment Bond No. SU 103333 in the amount of $29,292,754 on behalf of third-party defendant Marco, as Principal, to Village Center For Care, as Owner.

6.    On or about March 11, 2008, third-party defendants jointly and severally executed a General Indemnity Agreement ("GIA") in favor of Arch "for the purpose of indemnifying [Arch] for any Bonds . . . . which [Arch] may have issued, or may hereafter issue" on behalf of third-party defendant Marco, as Principal, in which GIA the third-party defendants, jointly and severally, agreed, inter alia, to indemnify and hold harmless Arch from any and all "Loss" sustained or incurred by reason of having executed any and all such Bonds; and Arch begs leave to refer to the original of the GIA for its exact terms and conditions.

7.    In the GIA, "Loss" was defined, in part, as follows:

> "**Loss**:  Any and all liability, losses, costs, expenses, and fees of whatever kind or nature, that Surety may sustain or incur as a result of executing any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement.  Loss includes but is not limited to: (a) sums posted by Surety as a reserve for the payment of potential losses and/or expenses, (b) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses ....."

8.    Plaintiff herein has instituted the instant action against Arch under its aforesaid Payment Bond issued on behalf of third-party defendant Marco; a copy of plaintiff's complaint herein is annexed hereto as Exhibit "1" and a copy of Arch's answer herein is annexed hereto as Exhibit "2".

9.   By reason of the foregoing, in the event that plaintiff recovers a judgment herein against defendant and third-party plaintiff Arch, the latter is entitled to judgment over for the same amount against the third-party defendants, and each of them.

## AS AND FOR A SECOND CLAIM FOR RELIEF

10.   Defendant and third-party plaintiff Arch repeats and realleges the allegations contained in paragraphs "1" through "8" hereof as if fully set forth at length herein.

11.   By reason of the foregoing, third-party defendants, and each of them, are liable to Arch for its costs and expenses, including legal fees, incurred to date and to be incurred with respect to the claim asserted by plaintiff under Arch's aforesaid Payment Bond and in defending this action and enforcing Arch's rights against the third-party defendants under the GIA, which expenses, including legal fees, Arch presently estimates will be not less than $25,000.

WHEREFORE, defendant and third-party plaintiff Arch Insurance Company demands judgment as follow:

(1)   on the first claim for relief, in the event that plaintiff recovers a judgment herein against Arch, then judgment over for the same amount against the third-party defendants, and each of them; and

(2)   on the second claim for relief, judgment against the third-party defendants, and each of them, for Arch's costs and expenses, including legal fees, incurred to date and to be incurred with respect to plaintiff's claim under the aforesaid Payment Bond,

including the defense of this action and the enforcement of Arch's rights against the

third-party defendants, presently estimated to be not less than $10,000,

together with appropriate interest, costs and disbursements.

Dated: Jericho, New York
     September 15, 2009

               TORRE, LENTZ, GAMELL, GARY
               & RITTMASTER, LLP
               Attorneys for Defendant and Third-Party Plaintiff
               Arch Insurance Company

               By: _____
                     Steven H. Rittmaster

               100 Jericho Quadrangle, Suite 309
               Jericho, NY 11753-2702
               (516) 240-8900

MASTROPIETRO-FRADE, LLC
John P. Mastropietro (JM 7248)
*Attorneys for Third-Party Defendants*
111 Broadway, Suite 1403
New York, New York 10006
(212) 943-9079
(212) 943-9218 fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS INC.,                    Case No.: 09-cv-6796 (JGK)

                              Plaintiff,              **AMENDED ANSWER**
                                                     **WITH CLAIMS AS AGAINST**
         -against-                                   **METRO FOUNDATION**
                                                     **CONTRACTORS INC.**
ARCH INSURANCE COMPANY,

                              Defendant.
------------------------------------------------------------------X
ARCH INSURANCE COMPANY,

                              Third-Party Plaintiff,

         -against-

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMANN and PATRICK QUIGLEY,

                              Third-Party Defendants.
------------------------------------------------------------------X

         Third-party defendants Marco Martelli Associates, Inc. (incorrectly named herein as

Marco Martelli & Associates, Inc.) ("MMA"), Martelli Real Estate, Inc., Marco Martelli,

Madeline Martelli, Ronald Kuhlmann and Patrick Quigley (collectively referred to herein as

"third-party defendants"), by their attorneys, Mastropietro-Frade, LLC, as and for their Amended

Answer to third-party plaintiff's Third-Party Complaint, set forth the following:

1.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "1" of the Third-Party Complaint.

2.    Admit the allegations set forth in Paragraph "2" of the Third-Party Complaint.

3.    Neither deny nor admit the allegations set forth in Paragraph "3" of the Third-Party Complaint and respectfully refer the Court to 28 U.S.C.A. § 1367(a) for its true terms, meaning and effect.

4.    Neither deny nor admit the allegations set forth in Paragraph "4" of the Third-Party Complaint and respectfully refer the Court to the contract referenced therein for its true terms, meaning and effect.

5.    Neither deny nor admit the allegations set forth in Paragraph "5" of the Third-Party Complaint and respectfully refer the Court to the Payment Bond referenced therein for its true terms, meaning and effect.

6.    Neither deny nor admit the allegations set forth in Paragraphs "6" and "7" of the Third-Party Complaint and respectfully refer the Court to the General Indemnity Agreement referenced therein for its true terms, meaning and effect.

7.    Neither deny nor admit the allegations set forth in Paragraph "8" of the Third-Party Complaint and respectfully refer the Court to the Complaint and Answer referenced therein for their true terms, meaning and effect.

8.    Third-Party Defendants deny the allegations of Paragraphs "9" and "11" of the Third-Party Complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

9.    The Third-Party Complaint fails to state a claim upon which relief may be granted.

2

#### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

10.    The Third-Party Complaint is barred to the extent it applies to activities prior to the applicable statute of limitations period.

#### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

11.    The Third-Party Complaint claims are barred, in whole or in part, by the doctrines of waiver, estoppel, release and/or laches.

#### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

12.    Venue is not proper in the United States District Court, Southern District of New York.

#### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

13.    There is a prior action pending between plaintiff and third-party defendant contractor.

#### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

14.    The subject action should be stayed pending disposition of the prior action pending.

#### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

15.    The claims asserted by Metro Foundation Contractors, Inc. ("Metro") in this action against the third party contractor are barred, in whole or in part, by the doctrines of waiver, estoppel, release and/or laches.

#### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

16.    Metro has failed to provide proper notice of claim, a required condition precedent under the terms of the applicable Subcontract with third-party contractor.

3

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

17.    If damages were sustained by Metro in the manner alleged in the Complaint, such damages were attributable in whole or in part to Metro's breach of contract.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

18.    Metro has been paid in full.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

19.    The answering third-party defendants reserve the right to assert other affirmative defenses as may be warranted as discovery proceeds as well as any counterclaims or cross-claims.

### AS AND FOR A FIRST CLAIM AS AGAINST PLAINTIFF METRO
### (FOR BREACH OF CONTRACT)

20.    Third-party defendant MMA repeats and realleges each and every allegation contained in Paragraphs "1" through "19" of this Amended Answer with Claims as against Metro with the same force and effect as if fully set forth at length herein.

21.    MMA was at all relevant times hereto and is a corporation organized and existing under the laws of the State of New York with a business address and principal place of business at 73 Third Street, New Rochelle, New York 10801.

22.    MMA, as contractor, entered into a contract with the Village Nursing Home, as owner, for construction services located at 214-218 W. Houston Street, 50-56 Downing Street, New York, New York ("the Project").

23.    Thereafter, Metro as subcontractor, entered into two subcontracts (collectively referred to herein as the "Subcontract") with MMA, as general contractor, for certain shoring and foundation services in connection with the Project.

4

24. Thereafter, Metro materially breached the Subcontract in that, among other things, it failed to perform its work in a timely manner, failed to perform its work in a workman like manner, failed to provide sufficient manpower, failed to adhere to Project progress schedule, failed to follow direction from MMA, failed to pay its project suppliers and failed to complete its work under the Subcontract.

25. Metro improperly abandoned the Project.

26. MMA provided Metro with a Notice to Cure and a Supplemental Notice to Cure.

27. MMA declared Metro in default of its Subcontract and in accordance with the terms of the Subcontract, MMA terminated Metro's Subcontract for cause.

28. In connection with Metro's default, MMA caused labor, materials, equipment and services to be furnished in connection with the completion of the Subcontract work at the Project.

29. Metro's failure to perform its obligations in accordance with the terms of the Subcontract constitutes a breach thereof.

30. Metro failed to cure its material breach.

31. By virtue of the foregoing, plaintiff Metro is indebted to MMA for the cost of completing the Subcontract work, which sum shall be determined at trial, together with interest thereon.

## AS AND FOR A SECOND CLAIM AS AGAINST PLAINTIFF METRO
### (FOR INDEMNIFICATION)

32. Third-party defendant MMA repeats and realleges each and every allegation contained in Paragraphs "1" through "31" of this Amended Answer with Claims as against Metro with the same force and effect as if fully set forth at length herein.

33. Metro materially breached the Subcontract in that, among other things, it failed to perform its work in a timely manner, failed to perform its work in a workman like manner, failed to

Case: 13-556   Document: 26-2   Page: 14   04/11/2013   904405   125

**A175**

provide sufficient manpower, failed to adhere to Project progress schedule, failed to follow direction from MMA, failed to pay its project suppliers and failed to complete its work under the Subcontract.

34.     As a direct and proximate result of Metro's breach of the Subcontract, MMA was required to complete and/or repair work at a cost in excess of the balance of the Subcontract.

35.     Defendant MMA is entitled to indemnification from Metro as a result of said breach.

36.     By virtue of the foregoing, plaintiff Metro is indebted to MMA for the cost of completing the Subcontract work, which sum shall be determined at trial, together with interest thereon.

### AS AND FOR A THIRD CLAIM AS AGAINST PLAINTIFF METRO
### (FOR INDEMNIFICATION)

37.     Third-party defendant MMA repeats and realleges each and every allegation contained in Paragraphs "1" through "36" of this Amended Answer with Claims as against Metro with the same force and effect as if fully set forth at length herein.

38.     Metro's failure to perform its obligations in accordance with the terms of the Subcontract constitutes a breach thereof.

39.     Metro's improper claim as against MMA's surety Arch has caused MMA and its surety to expend significant resources, including but not limited to attorneys' fees in connection with the instant matter.

40.     MMA is entitled to be indemnified by Metro for all such costs.

41.     By reason of the foregoing, Metro is liable to MMA in an amount to be determined at trial.

6

### AS AND FOR A FOURTH CLAIM AS AGAINST PLAINTIFF METRO
### (FOR ATTORNEYS' FEES)

42.     Third-party defendant MMA repeats and realleges each and every allegation contained in Paragraphs "1" through "41" of this Amended Answer with Claims as against Metro with the same force and effect as if fully set forth at length herein.

43.     MMA has incurred and will incur attorneys' fees and expenses in connection with the instant action.

44.     In accordance with the Subcontract, Metro is liable for the attorneys' fees and expenses incurred or to be incurred by MMA in the prosecution of this action.

45.     Metro is also liable to MMA for additional costs and attorneys' fees incurred as a result of Metro's improper filing of certain mechanic's liens.  These costs include, but are not limited to, bond costs, Court fees and attorneys' fees.

46.     By reason of the foregoing, Metro is liable to MMA for attorneys' fees in an amount to be determined at trial.

**WHEREFORE,** third-party defendants Marco Martelli Associates, Inc, Martelli Real Estate, Inc., Marco Martelli, Madeline Martelli, Ronald Kuhlmann and Patrick Quigley request that the Court dismiss the Third-Party Complaint in its entirety and award judgment against plaintiff as follows:

a)     On the first, second, and third claims, in an amount to be determined at trial, together with interest thereon;

c)     On the fourth claim, attorneys' fees, cost and expenses in an amount to be determined at trial, together with interests thereon;

d)     For the costs and disbursements associated with this action; and

e)     For such other and further relief as this Court may deem just and proper.

7

Dated: New York, New York
       June 10, 2010

**MASTROPIETRO FRADE, LLC**
*Attorneys for Third Party Defendants*

By:_____
       John P. Mastropietro (JM 7248)
       111 Broadway, Suite 1403
       New York, New York 10006
       (212) 943-9079


TO:    Stephen H. Rittmaster, Esq.
      **TORRE, LENTZ, GAMELL, GARY**
      **& RITTMASTER, LLP**
      *Attorneys for Defendant/Third-Party Plaintiff*
      100 Jericho Quadrangle, Suite 309
      Jericho, New York 11753
      (516) 240-8900


      **BRYAN HA, ESQ.**
      *Attorneys for Plaintiff*
      799 Broadway, Suite 336
      New York, New York 10003
      (212) 537-6971

**A178**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS, INC.,

                                                    Index No. 600520/09

                    Plaintiff,

        -against-                                   **VERIFIED ANSWER**
                                                    **AND COUNTERCLAIMS**

MARCO MARTELLI ASSOCIATES, INC. and
VILLAGE CARE OF NEW YORK, INC.,

                    Defendants.
-----------------------------------------------------------------------X

        Defendant Marco Martelli Associates, Inc. ("MMA"), by its attorneys, Mastropietro-Frade,

LLC as and for its Verified Answer to Verified Complaint, states as follows:

        1.      Denies the allegations contained in Paragraphs "6" and "12" of the Verified

Complaint, and respectfully refers the Court to the subcontracts referenced therein for their true

terms, scope and legal effect.

        2.      Denies the allegations contained in Paragraphs "7", "8" and "13" of the Verified

Complaint, and respectfully refer the Court to the change orders referenced therein for its true terms,

scope and legal effect.

        3.      Denies the allegations contained in Paragraph "22" of the Verified Complaint, and

respectfully refers the Court to the subcontracts and General Business Law § 756-a referenced

therein for its true terms, scope and legal effect.

        4.      Admits the allegations contained in Paragraphs "2" through "5" and "17" of the

Verified Complaint.

        5.      Denies all other allegations contained in the Verified Complaint.

                    **AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

        6.      The Verified Complaint fails to state a claim upon which relief may be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

7.    To the extent the Verified Complaint is barred by the applicable statute of limitations, it must be dismissed.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

8.    Defendant MMA reserves the right to assert other affirmative defenses as may be warranted as discovery proceeds as well as any other counterclaims or cross-claims.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

9.    The claims asserted against defendant MMA are barred, in whole or in part, by the doctrines of waiver, estoppel, release and/or laches.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

10.    Plaintiff has failed to provide proper notice of claim, a required condition precedent under the terms of the applicable Subcontract.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

11.    If damages were sustained by plaintiff in the manner alleged in the Verified Complaint, such damages were attributable in whole or in part to plaintiff's breach of contract.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

12.    Plaintiff has been paid in full.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

13.    Plaintiff fails to state a claim for the recovery of attorney's fees.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

14.    Upon information and belief, plaintiff does not have legal capacity and/or authority to sue.

2

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE
### AND FIRST COUNTERCLAIM AGAINST PLAINTIFF

15.     Defendant MMA repeats and realleges each and every allegation contained in Paragraphs "1" through "14" of this Verified Answer and Counterclaims with the same force and effect as if fully set forth at length herein.

16.     Upon information and belief, the mechanic's lien filed by plaintiff was willfully exaggerated.

17.     By reason of the foregoing, and pursuant to Lien Law § 39, plaintiff's lien is void and it is entitled to no recovery under said lien.

18.     As a result of plaintiff's willful exaggeration of lien, and pursuant to Lien Law § 39-a, plaintiff is liable for damages to MMA, including the premiums paid and to be paid by MMA for the bond given to obtain the discharge of plaintiff's lien and reasonable attorney's fees for services in securing the discharge of said lien.

### AS AND FOR A SECOND COUNTERCLAIM AGAINST PLAINTIFF

19.     Defendant MMA repeats and realleges each and every allegation contained in Paragraphs "1" through "18" of this Verified Answer and Counterclaims with the same force and effect as if fully set forth at length herein.

20.     MMA was at all relevant times hereto and is a corporation organized and existing under the laws of the State of New York with a business address and principal place of business at 73 Third Street, New Rochelle, New York 10801.

21.     MMA, as general contractor, entered into a contract with the Village Nursing Home, as owner, for construction services located at 214-218 W. Houston Street, 50-56 Downing Street, New York, New York ("the Project").

3

22.     Thereafter, Metro as subcontractor, entered into a subcontract (the "Subcontract") with MMA, as general contractor, for certain shoring and foundation services in connection with the Project.

23.     Thereafter, on or about January 15, 2008 and in accordance with the terms of the Subcontract, MMA provided Metro with a Supplemental Notice to Cure.

24.     Thereafter, MMA declared Metro in default of its Subcontract and in accordance with the terms of the Subcontract, MMA terminated Metro's Subcontract for cause.

25.     In connection with Metro's default, MMA caused labor, materials, equipment and services to be furnished in connection with the completion of the Subcontract work at the Project.

26.     Metro's failure to perform its obligations in accordance with the terms of the Subcontract constitutes a breach thereof.

27.     By virtue of the foregoing, plaintiff Metro is indebted to MMA for the cost of completing the Subcontract work, which sum shall be determined at trial, together with interest thereon.

### AS AND FOR A THIRD COUNTERCLAIM AGAINST PLAINTIFF

28.     Defendant MMA repeats and realleges each and every allegation contained in Paragraphs "1" through "27" of this Verified Answer and Counterclaims with the same force and effect as if fully set forth at length herein.

29.     Metro breached the Subcontract in that, among other things, it failed to perform its work in a timely manner, failed to perform its work in a workman like manner, failed to provide sufficient manpower, failed to adhere to Project progress schedule, failed to follow direction from MMA, failed to pay its project suppliers and failed to complete its work under the Subcontract.

30.     As a direct and proximate result of Metro's breach of the Subcontract, MMA was required to complete and/or repair work at a cost in excess of the balance of the Subcontract.

4

31.     Defendant MMA is entitled to indemnification from Metro as a result of said breach.

32.     By virtue of the foregoing, plaintiff Metro is indebted to MMA for the cost of completing the Subcontract work, which sum shall be determined at trial, together with interest thereon.

**WHEREFORE**, defendant Marco Martelli Associates, Inc. demands judgment dismissing the Verified Complaint of plaintiff, and awarding it judgment against plaintiff as follows:

a)     on the first counterclaim, determining that plaintiff's lien is void, and awarding damages pursuant to Lien Law § 39-a including reimbursement of attorney's fees and premiums paid in connection with the discharge of said Lien;

b)     on the second and third counterclaims, in an amount to be determine at trial, together with interest thereon;

c)     for the attorney's fees, costs and disbursements of this action; and

d)     for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        April 7, 2009

                                        **MASTROPIETRO-FRADE, LLC**
                                        *Attorneys for Defendant*
                                        *Marco Martelli Associates, Inc.*

                                        By: _____
                                            Ronald E. Struhs
                                            111 Broadway, Suite 1403
                                            New York, New York  10006
                                            (212) 943-9079

TO:     **BRYAN HA, ESQ.**
        *Attorney for Plaintiff*
        271 Madison Avenue, 20th Floor
        New York, New York 10016

## VERIFICATION

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK )

RONALD E. STRUHS, ESQ., an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following under the penalties of perjury:

1.    I am an associate with the firm of Mastropietro-Frade, LLC, the attorneys of record for defendant Marco Martelli Associates, Inc. in the within action; I have read the foregoing Verified Answer and Counterclaims and know the contents thereof; the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The reason this Verification is made by me and not by said defendant is that Marco Martelli Associates, Inc.'s principal offices are outside of the county where your affirmant maintains his office.

2.    The grounds of my belief as to all matters not stated upon my own knowledge are as follows: conversations with clients; books and records of client.

Dated:        New York, New York
              April 7, 2009

_____
Ronald E. Struhs

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS, INC.,                    09-CV-6796 (JGK) (GWG)

                          Plaintiff,

          -against-

ARCH INSURANCE COMPANY,

                          Defendant.
------------------------------------------------------------------X
ARCH INSURANCE COMPANY,

                          Third-Party Plaintiff,

          -against-

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMAN and PATRICK QUIGLEY,

                          Third-Party Defendants.
------------------------------------------------------------------X

## DECLARATION OF FRANK DEMARTINO
## IN SUPPORT OF MOTION TO DISMISS

          FRANK DEMARTINO hereby declares under penalty of perjury that the following is

true and correct:

          1.     I am over the age of eighteen (18) years. I was plaintiff Metro Foundation

Contractors, Inc.'s ("Metro") Project Executive on the project to construct a nursing home

facility at 214-218 W. Houston Street, New York, New York (the "Project"). I make this

affidavit based upon my personal knowledge.

          2.     I respectfully submit this declaration in support of Metro's motion for an order:

(1) dismissing third-party defendant Marco Martelli Associates, Inc.'s ("MMA") claims against

Metro for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); or (2) alternatively, declining to exercise supplemental jurisdiction over MMA's claims pursuant to 28 U.S.C. § 1367(c).

3.    Metro is and was at all times relevant herein a corporation duly organized and existing under the laws of the State of New York with its principal offices located in Jamaica, New York.

4.    MMA was the general contractor/construction manager on the Project.

5.    MMA posted labor and material Payment Bond Number SUI03333 ("Payment Bond"), issued by defendant Arch Insurance Company ("Arch") as surety, in the amount of $29,292,754, in connection with the Project.

6.    On or about April 21, 2008, Metro and MMA entered into a written subcontract whereby Metro agreed to perform certain shoring construction work in connection with the Project for a lump sum payment of $275,000.00, subject to adjustments for extra work or alterations to the work ("Shoring Subcontract").

7.    On or about May 7, 2008, Metro and MMA entered into a written subcontract whereby Metro agreed to perform certain foundation construction work in connection with the Project for a lump sum payment of $2,500,000.00, subject to adjustments for extra work or alterations to the work ("Foundation Subcontract").

8.    On or about July 30, 2008, Metro and MMA entered into a change order agreement whereby Metro agreed to furnish, install and maintain a dewatering system for an additional lump sum payment of $1,044,762.40.

9.    On or about October 7, 2008, Metro and MMA entered into a change order agreement whereby Metro agreed to dispose of an estimated 8000 cubic yards of contaminated

2

soils from the Project site for an additional lump sum payment of $640,000.

10.    On or about November 15, 2008, Metro and MMA entered into a change order agreement whereby Metro agreed to perform extra shoring construction work necessitated by design changes and furnish extra labor, supplies, materials and equipments in connection therewith for an additional lump sum payment of $157,182.

11.    The total value of the Shoring Subcontract and the Foundation Subcontract, along with the change orders, was $4,616,944.40. (The Shoring Subcontract and the Foundation Subcontract and the change orders are sometimes referred to herein collectively as the "Subcontracts".)

12.    In addition, Metro performed other extra work and furnished other extra labor, supplies, materials and equipments in connection with the shoring and foundation construction work pursuant to other change orders.

13.    Pursuant to the Shoring Subcontract and Foundation Subcontract, Metro was entitled to additional compensation for the fair and reasonable value of the extra work that it performed and the extra labor, supplies, materials and equipments that it furnished, plus an overhead and profit allowance.

14.    Pursuant to the Subcontracts, Metro performed shoring and foundation and other related work on the Project and furnished supplies, equipment and materials for use in connection with the Project from February 2008 to January 26, 2009.

15.    By reason of the work that it performed and the supplies, equipment and materials that it furnished, there became due and owing to Metro the sum of $1,756,897.40, no part of which has been paid although duly demanded.

16.    MMA is obligated to pay the entire amount due and owing to Metro pursuant to

3

the Subcontracts, but has failed and refused to do so.

17.   As a subcontractor who furnished labor, materials and equipment for the Project,

Metro is a beneficiary under the Payment Bond and a "Claimant" within the meaning of the

bond.

18.   Pursuant to the Payment Bond, Arch is liable and obligated to pay Metro for the

labor, materials and equipment furnished by Metro for the Project.

19.   Metro duly provided notice to Arch of the amount due and owing to Metro and

demanded payment of same pursuant to the Payment Bond.

20.   Metro has fully complied with all the terms and conditions of the Payment Bond.

Dated: New York, New York
        February 23, 2011

<br>

_____
FRANK DEMARTINO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS, INC.,       09-CV-6796 (JGK) (GWG)

                Plaintiff,

     -against-                       **PLAINTIFF'S ANSWER
                                          TO THIRD-PARTY
ARCH INSURANCE COMPANY,             DEFENDANT'S CLAIMS**

                Defendant.
------------------------------------------------------------------X
ARCH INSURANCE COMPANY,

                Third-Party Plaintiff,

     -against-

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMAN and PATRICK QUIGLEY,

                Third-Party Defendants.
------------------------------------------------------------------X

      Plaintiff Metro Foundation Contractors, Inc. ("Metro"), by its attorney, as and for its

answer to the claims of third-party defendant Marco Martelli Associates, Inc. ("MMA") set forth

in MMA's Amended Answer with Claims as Against Metro Foundation Contractors, Inc.

("Amended Answer"), respectfully alleges as follows:

<u>**As to "First Claim"**</u>

      1.     As to the allegations set forth in paragraph "20" of the Amended Answer, no

response is required to the allegations set forth in paragraphs "1" through "19" of the Amended

Answer as those allegations are responses and affirmative defenses to the Third-Party Complaint

of Defendant Arch Insurance Company.  To the extent any response is required, deny each and

every allegation set forth in paragraphs "12" and "14" through "18" of the Amended Answer,

and denying having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "1" through "11", "13" and "19" of the Amended Answer.

2.      Admit upon information and belief the allegations set forth in paragraph "21" of the Amended Answer.

3.      Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "22" of the Amended Answer, except admit upon information and belief that MMA entered into a contract with Village Nursing Home.

4.      Admit the allegations set forth in paragraph "23" of the Amended Answer, and respectfully refer the Court to the subcontracts referenced therein for their true and accurate contents.

5.      Deny each and every allegation set forth in paragraph "24" of the Amended Answer.

6.      Deny each and every allegation set forth in paragraph "25" of the Amended Answer.

7.      Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "26" of the Amended Answer, and respectfully the Court to the documents referenced therein for their true and accurate contents.

8.      Deny each and every allegation set forth in paragraph "27" of the Amended Answer.

9.      Deny each and every allegation set forth in paragraph "28" of the Amended Answer.

10.      Deny each and every allegation set forth in paragraph "29" of the Amended Answer.

11.     Deny each and every allegation set forth in paragraph "30" of the Amended Answer.

12.     Deny each and every allegation set forth in paragraph "31" of the Amended Answer.

## As to "Second Claim"

13.     As to the allegations set forth in paragraph "32" of the Amended Answer, no response is required to the allegations set forth in paragraphs "1" through "19" of the Amended Answer as those allegations are responses and affirmative defenses to the Third-Party Complaint of Defendant Arch Insurance Company.  To the extent any response is required, deny each and every allegation set forth in paragraphs "12" and "14" through "18" of the Amended Answer, and denying having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "1" through "11", "13" and "19" of the Amended Answer. With respect to the allegations set forth in paragraphs "20" through "31" of the Amended Answer, repeat and reallege each and every allegation, admission, and/or denial made above in response to the allegations set forth in those paragraphs.

14.     Deny each and every allegation set forth in paragraph "33" of the Amended Answer.

15.     Deny each and every allegation set forth in paragraph "34" of the Amended Answer.

16.     Deny each and every allegation set forth in paragraph "35" of the Amended Answer.

17.     Deny each and every allegation set forth in paragraph "36" of the Amended Answer.

## As to "Third Claim"

18.    As to the allegations set forth in paragraph "37" of the Amended Answer, no response is required to the allegations set forth in paragraphs "1" through "19" of the Amended Answer as those allegations are responses and affirmative defenses to the Third-Party Complaint of Defendant Arch Insurance Company.  To the extent any response is required, deny each and every allegation set forth in paragraphs "12" and "14" through "18" of the Amended Answer, and denying having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "1" through "11", "13" and "19" of the Amended Answer. With respect to the allegations set forth in paragraphs "20" through "36" of the Amended Answer, repeat and reallege each and every allegation, admission, and/or denial made above in response to the allegations set forth in those paragraphs.

19.    Deny each and every allegation set forth in paragraph "38" of the Amended Answer.

20.    Deny each and every allegation set forth in paragraph "39" of the Amended Answer.

21.    Deny each and every allegation set forth in paragraph "40" of the Amended Answer.

22.    Deny each and every allegation set forth in paragraph "41" of the Amended Answer.

## As to "Fourth Claim"

23.    As to the allegations set forth in paragraph "42" of the Amended Answer, no response is required to the allegations set forth in paragraphs "1" through "19" of the Amended Answer as those allegations are responses and affirmative defenses to the Third-Party Complaint

of Defendant Arch Insurance Company. To the extent any response is required, deny each and every allegation set forth in paragraphs "12" and "14" through "18" of the Amended Answer, and denying having knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "1" through "11", "13" and "19" of the Amended Answer. With respect to the allegations set forth in paragraphs "20" through "41" of the Amended Answer, repeat and reallege each and every allegation, admission, and/or denial made above in response to the allegations set forth in those paragraphs.

24.    Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "43" of the Amended Answer.

25.    Deny each and every allegation set forth in paragraph "44" of the Amended Answer.

26.    Deny each and every allegation set forth in paragraph "45" of the Amended Answer.

27.    Deny each and every allegation set forth in paragraph "46" of the Amended Answer.

### First Affirmative Defense

28.    The Court lacks subject matter jurisdiction over MMA's claims against Metro.

### Second Affirmative Defense

29.    MMA fails to state a claim, in whole or in part, against Metro upon which relief can be granted.

### Third Affirmative Defense

30.    At all times relevant, Metro acted reasonably, properly, lawfully, and in good faith.

**A193**

### Fourth Affirmative Defense

31.     MMA's claims against Metro are barred, in whole or in part, by the doctrines of release, waiver, estoppel and/or laches.

### Fifth Affirmative Defense

32.     MMA failed to mitigate its damages, if any.

### Sixth Affirmative Defense

33.     If MMA sustained damages as alleged in its claims against Metro, such damages are attributable in whole or in part to MMA's own breach of contract.

### Seventh Affirmative Defense

34.     MMA is not entitled to recovery of any attorneys' fees.

### Eighth Affirmative Defense

35.     To the extent it seeks equitable relief, MMA is barred from doing so under the doctrine of unclean hands.

### Ninth Affirmative Defense

36.     MMA is not entitled to any of the relief sought in connection with the Counterclaims.

37.     Metro reserves the right to assert such other affirmative defenses as may be warranted in light of any new or additional information that it may obtain during the course of discovery in this case.

WHEREFORE, as to the claims of third-party defendant MMA, plaintiff Metro respectfully demands judgment against MMA dismissing all the claims and denying all relief requested therein.

Dated: New York, New York
      July 21, 2010


                              _____/s/_____
                                BRYAN HA
                                Attorney At Law
                                799 Broadway, Suite 336
                                New York, New York 10003
                                Tel: 212-537-6971
                                Fax: 212-981-6800
                                Attorney for Plaintiff
                                Metro Foundation Contractors, Inc.

Case 1:09-cv-06796-JGK   Document 54   Filed 03/09/11   Page 1 of 6

MASTROPIETRO-FRADE, LLC
Joshua D. Olsen (JO 1453)
*Attorneys for Third-Party Defendants*
111 Broadway, Suite 1403
New York, New York  10006
(212) 943-9079
(212) 943-9218 fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X

METRO FOUNDATION CONTRACTORS INC,                    Case No.:  09-cv-6796 (JGK)

                              Plaintiff,

          -against-

ARCH INSURANCE COMPANY,                              **AFFIRMATION OF**
                                                     **JOSHUA D. OLSEN**
                              Defendant,
--------------------------------------------------------------------------X
ARCH INSURANCE COMPANY,

                              Third-Party Plaintiff,

          -against-

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMANN and PATRICK QUIGLEY,

                              Third-Party Defendants.
--------------------------------------------------------------------------X

          Joshua D. Olsen, an attorney duly admitted to practice in the Courts of the State of New

York and before the United States District Court for the Southern District of New York, does

hereby affirm to be true under the penalties of perjury as follows:

          1.     I am associated with the law firm of Mastropietro-Frade, LLC, attorneys for

Third-Party Defendants Marco Martelli Associates, Inc. ("MMA") (incorrectly named as Marco

Martelli & Associates, Inc.), Martelli Real Estate, Inc., Marco Martelli, Madeline Martelli,

Ronald Kuhlmann, and Patrick Quigley (collectively referred to herein as "Third-Party Defendants").

2.      I submit this Affirmation in opposition to plaintiff Metro Foundation Contractors, Inc's ("Metro") motion for an Order: (1) dismissing third-party defendant Marco Martelli Associates, Inc.'s ("MMA") claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); or (2) alternatively, declining to exercise supplemental jurisdiction over MMA's claims pursuant to 28 U.S.C. § 1367(c).

### SUMMARY OF ARGUMENT

3.      Metro makes the instant motion nine (9) months after MMA's assertion of its claims as against Metro, five (5) months after Third-Party Defendants' first motion for sanctions as against Metro, two (2) months after this Court imposed sanctions as against Metro and merely days after Third-Party Defendants' second motion for sanctions as against Metro.

4.      The timing of Metro's instant motion, although technically permissible, clearly demonstrates a continued attempt to delay this litigation and provide an *ad hoc* justification for Metro's non-compliance with two (2) Orders of this Court.

5.      Simply stated, Metro's argument that this Court lacks subject matter jurisdiction over MMA's claims is baseless and without legal support. (*Third-Party Defendants' Memorandum of Law in Opposition ("Memo of Law"), Point I*).

6.      Metro's alternative argument – that this Court should decline to exercise supplemental jurisdiction – is similarly without merit. Metro's claims as against Arch Insurance Company ("Arch"), Arch's claims as against MMA, and MMA's claims as against Metro are so inextricably interwoven that it would be impossible to fully resolve the dispute between Metro and Arch and the dispute between Arch and Third-Party Defendants without resolving the claims asserted by MMA. (*Memo of Law, Point II*).

2

### SUMMARY OF PROCEEDINGS

7.      Plaintiff Metro commenced the related state court action as against defendant MMA on or about February 18, 2009.  (Exhibit "A").

8.      Plaintiff Metro commenced the instant action as against defendant Arch on or about July 31, 2009.  (Exhibit "B").

9.      Defendant/third-party plaintiff Arch commenced a third-party action as against Third-Party Defendants, including MMA, on or about September 15, 2009.  (Exhibit "C").

10.     Third-party defendant MMA asserted its claims as against plaintiff Metro on or about June 10, 2010.  (Exhibit "D").

11.     Thereafter, a discovery dispute quickly ensued.

12.     By notice of motion dated October 27, 2010, Third-Party Defendants moved this Court for (1) an Order barring Metro from introducing as evidence at trial any documents that have not, to date, been produced, including but not limited to, any proof to substantiate Metro's allegations that MMA made certain improper payments to Metro's vendors and/or subcontractors after MMA terminated Metro for cause; (2) an Order that all issues in connection with Metro's allegations that MMA made certain improper payments to Metro's vendors and/or subcontractors after Metro was terminated for cause be resolved in favor of Third-Party Defendants; and (3) an Order that Metro, or its attorney, pay the reasonable expenses incurred by Third-Party Defendants, including attorney's fees, as a result of Metro's failure to comply with this Court's September 2, 2010 discovery Order.  (Exhibit "E").

13.     By Memorandum and Order, dated January 6, 2011, this Court granted Third-Party Defendants' motion and required Metro "to produce any responsive documents, because those documents may be of assistance to the Third-Party Defendants," required that "[a]ny

3

Case 1:09-cv-06796-JGK   Document 54   Filed 03/09/11   Page 4 of 6

responsive documents must be produced by January 21, 2011," and required Metro to pay the sum of $3,850.00 to Third-Party Defendants. (Exhibit "F").

14.    To date, Metro has failed to comply with this Court's January 6, 2011 Order.

15.    As such, by notice of motion dated February 17, 2011, Third-Party Defendants moved this Court for: (1) an Order, pursuant to Rule 37 of the Federal Rules of Civil Procedure, rendering default judgment as against Metro based upon its repeated willful violations of the Orders of this Court; (2) an Order of Contempt as against Metro based upon its failure to comply with this Court's January 6, 2011 Order; and (3) an Order that Metro, or its attorney, pay the reasonable expenses incurred by Third-Party Defendants, including attorney's fees, as a result of Metro's failure to comply with the Order of this Court. (Exhibit "G").

16.    Metro's papers in opposition to Third-Party Defendants' second motion for sanctions were due on February 24, 2011.  Rather than timely submit opposition papers, Metro sought an extension from this Court and filed the instant motion to dismiss on February 23, 2011.

### ARGUMENT

#### POINT I

##### SUBJECT MATTER JURISDICTION OVER THIRD-PARTY DEFENDANT MMA'S CLAIMS IS CONFERRED BY 28 U.S.C. 1367

17.    28 U.S.C. 1367(a) provides that "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." (*Memo of Law, Point I*).

4

Case 1:09-cv-06796-JGK   Document 54    Filed 03/09/11   Page 5 of 6

18.    While it is true that §1367(b) "withdraws some of the jurisdiction that §1367(a) would otherwise allow," §1367(b) only withdraws jurisdiction over claims by the original plaintiff to the action or intervening plaintiffs and does not apply to claims asserted by defendants or third-parties. (*Memo of Law, Point I*).

19.    In the case at bar, third-party defendant MMA's claims are against the original plaintiff, Metro, and arise out of the same "case or controversy" as the claims asserted by Metro as against Arch as well as the claims asserted by Arch as against Third-Party Defendants. (*Memo of Law, Point I*).

20.    As such, this Court has jurisdiction, pursuant to 28 U.S.C. 1367(a), over third-party defendant MMA's claims as against plaintiff Metro. (*Memo of Law, Point I*).

### POINT II

#### THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE CLAIMS ASSERTED BY THIRD-PARTY DEFENDANT MMA AS AGAINST PLAINTIFF METRO

21.    In the case at bar, there are no "exceptional circumstances" warranting a declination of supplemental jurisdiction over third-party defendant MMA's claims. Further, third-party defendant MMA's claims do not "substantially predominate" over the claims which the Court has original jurisdiction. (*Memo of Law, Point II*).

22.    Specifically, third-party defendant MMA's claims are based upon the fact that if MMA prevails on its claims as against Metro, Arch would not be liable to Metro and, as such, MMA would not be liable to Arch.

23.    Clearly, Metro's claims as against Arch, Arch's claims as against MMA, and MMA's claims as against Metro are so inextricably interwoven that it would be impossible to fully resolve the dispute between Metro and Arch without resolving the claims asserted by MMA as against Metro.

24.     As such, it is respectfully requested that this Court issue an Order denying Metro's motion for an Order: (1) dismissing third-party defendant Marco Martelli Associates, Inc.'s ("MMA") claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); or (2) alternatively, declining to exercise supplemental jurisdiction over MMA's claims pursuant to 28 U.S.C. § 1367(c).

Dated: New York, New York
      March 9, 2011

                            **MASTROPIETRO-FRADE, LLC**
                            *Attorneys for Third-Party Defendants*

                            By: _____
                                  Joshua D. Olsen (JO 1453)
                            111 Broadway – Suite 1403
                            New York, New York 10006
                            (212) 943-9079

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS, INC.,

                Plaintiffs,

      -against-

MARCO MARTELLI ASSOCIATES, INC. and
VILLAGE CARE OF NEW YORK, INC.,

                Defendants.
-------------------------------------------------------------------X

Index No.:  09 /600520
Date Purchased:  2/18/09

**SUMMONS**

The basis of venue is:
Contractual provision and
residence of one of the parties

TO THE ABOVE-NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED to answer the verified complaint in this action and

to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance on the plaintiff's attorney within twenty (20) days after service of this

summons, exclusive of the date of service (or within thirty (30) days after the service is complete

if this summons is not personally delivered to you within the State of New York); and in case of

your failure to appear or answer, judgment will be taken against you by default, for the relief

demanded in the complaint.

Dated: New York, New York
      February 18, 2009

NEW YORK
COUNTY CLERK'S OFFICE

FEB 18

NOT COMPARED
WITH COPY FILED

BRYAN HA
Attorney At Law
271 Madison Avenue
20th Floor
New York, New York 10016
T: 212-537-6971
F: 212-382-3610

Attorney for Plaintiff
Metro Foundation Contractors, Inc.

TO:   Marco Martelli Associates, Inc.
      73 Third Street
      New Rochelle, New York 10801

      Village Care of New York, Inc.
      154 Christopher Street
      New York, New York 10014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS, INC.,

Index No.

Plaintiffs,

**VERIFIED COMPLAINT**

-against-

MARCO MARTELLI ASSOCIATES, INC. and
VILLAGE CARE OF NEW YORK, INC.,

Defendants.
-----------------------------------------------------------------------X

Plaintiff Metro Foundation Contractors, Inc. ("Metro"), by its attorney, as and for its

verified complaint against defendants Marco Martelli Associates, Inc. ("MMA") and Village

Care of New York, Inc. ("VCNY"), alleges as follows:

## PARTIES

1.     Plaintiff Metro is and was at all times relevant herein a corporation duly

organized and existing under the laws of the State of New York with its principal offices located

in Jamaica, New York.

2.     Upon information and belief, Defendant MMA is and was at all times relevant

herein a corporation duly organized and existing under the laws of the State of New York with

its principal offices located in New Rochelle, New York.

3.     Upon information and belief, Defendant VCNY is and was at all times relevant

herein a not-for-profit corporation duly organized and existing under the laws of the State of

New York with its principal offices located in New York, New York.

## FACTS

4.     MMA is and was at all times relevant herein the general contractor/construction

manager on a project to construct a nursing home for defendant VCNY at 214-218 W. Houston

Street, New York, New York (the "Project").

5.      VCNY is and was at all times relevant herein the owner of the Project.

## A.      The Subcontracts Entered Into Between Metro and MMA

### 1.      Foundation Subcontract

6.      On or about May 7, 2008, Metro and MMA entered into a written subcontract whereby Metro agreed to perform certain foundation construction work in connection with the Project for a lump sum payment of $2,500,000.00, subject to adjustments for extra work or alterations to the work.  ("Foundation Subcontract").  (A copy of the Foundation Subcontract is annexed hereto as Exhibit A.)

7.      On or about July 30, 2008, Metro and MMA entered into a change order agreement relative to the Foundation Subcontract whereby Metro agreed to furnish, install and maintain a dewatering system necessary for the foundation construction work for a lump sum payment of $1,044,762.40 ("Dewatering Change Order").  (A copy of the Dewatering Change Order is annexed hereto as Exhibit B.)

8.      On or about October 7, 2008, Metro and MMA entered into a change order agreement relative to the Foundation Subcontract whereby Metro agreed to perform certain additional work relative to the disposal of an estimated 8000 cubic yards of contaminated soils from the Project site for an additional lump sum payment of $640,000.00 ("Contaminated Soils Change Order").  (A copy of the Contaminated Soils Change Order is annexed hereto as Exhibit C.)

9.      The total value of the Foundation Subcontract with the Dewatering Change Order and the Contaminated Soils Change Order was $4,184,762.40.

10.     In addition, as further detailed below, Metro performed other extra work and

2

furnished other extra labor, supplies, materials and equipments in connection with the foundation construction work pursuant to other change orders.

11.     Pursuant to the Foundation Subcontract, Metro was entitled to additional compensation for the fair and reasonable value of the extra work that it performed and the extra labor, supplies, materials and equipments that it furnished, plus an overhead and profit allowance.

### 2.     Shoring Subcontract

12.     On or about April 21, 2008, Metro and MMA entered into a written subcontract whereby Metro agreed to perform certain shoring construction work in connection with the Project for a lump sum payment of $275,000.00, subject to adjustments for extra work or alterations to the work.   ("Shoring Subcontract"; the Shoring Subcontract and the Foundation Subcontract are sometimes referred to collectively herein as the "Subcontracts").   (A copy of the Shoring Subcontract is annexed hereto as Exhibit D.)

13.     On or about November 15, 2008, Metro and MMA entered into a change order agreement relative to the Shoring Subcontract whereby Metro agreed to perform extra shoring construction work necessitated by design changes and furnish extra labor, supplies, materials and equipments in connection therewith for a lump sum payment of $157,182.00 ("Shoring Design Change Order").   (A copy of the Shoring Design Change Order is annexed hereto as Exhibit E.)

14.     The total value of the Shoring Subcontract with the Shoring Design Change Order was $432,182.00.

15.     In addition, as further detailed below, Metro performed other extra work and furnished other extra labor, supplies, materials and equipments in connection with shoring construction work pursuant to other change orders.

3

16.    Pursuant to the Shoring Subcontract, Metro was entitled to additional compensation for the fair and reasonable value of the extra work that it performed and the extra labor, supplies, materials and equipments that it furnished, plus an overhead and profit allowance.

**B.    MMA's Willful Failure And Refusal To Pay Metro Despite Having Received Payment From The Owner On Metro's Behalf**

17.    Metro commenced work on the Project on February 2008.

18.    On October 21, 2008, Metro submitted to MMA final, negotiated and approved requisitions for payment for work performed that month ("October Requisitions"). (Copies of the October Requisitions are annexed hereto as Exhibit F.)

19.    MMA inexplicably failed to process the October Requisitions and, as a result, was unable to make the payment due and owing to Metro.

20.    MMA thereafter asked Metro to resubmit the requisitions together with the requisition for the following month, November.

21.    On November 18, 2008, Metro submitted to MMA a final, negotiated and approved requisition for payment in the sum of $774,031.45 less retainage for work performed in October and November 2008 ("October/November Requisition"[1]).    (A copy of the October/November Requisition is annexed hereto as Exhibit G.)

22.    Pursuant to the Subcontracts and New York General Business Law § 756-a, payment on the October/November Requisition was due from the owner VCNY to MMA within thirty (30) days of the submission of the requisition (which had been negotiated and approved and was final).  MMA in turn was required to pay Metro within seven (7) days of its receipt of

---

[1] A minor revision was later made to the requisition amount which all parties accepted and agreed to without any controversy.

4

payment from VCNY.

23.    On or about December 8, 2008, MMA Vice President Patrick Quigley represented and assured Metro's project executive that payment would be timely made in a week or two, on or before the due date.

24.    On December 18, 2008, the day the payment was due, Metro's accountant sent an e-mail to MMA inquiring about the status of the payment.

25.    MMA did not respond to the e-mail.

26.    On December 24, 2008, Metro's project executive sent Metro another email inquiring about the status of the overdue payment and notifying MMA that the payment on the October/November Requisition "must be timely to avoid interruption of work."

27.    MMA did not respond to this e-mail either.

28.    By late December 2008, payment still had not been made. MMA did not respond to Metro's inquiries about the status of the payment. It did not provide any explanation for the late payment. It did not provide any assurance or any indication that payment was forthcoming.

29.    On December 30, 2008, Metro submitted to MMA a final, negotiated and approved requisition for payment in the sum of $174,767.32 less retainage under the Shoring Subcontract and a final, negotiated and approved requisition for payment in the sum of $142,410.95 less retainage under the Foundation Subcontract for work performed during December 2008 (these requisitions are referred to collectively herein as "December Requisitions"). The total amount of these requisitions was $317,178.27.    (Copies of the December Requisitions are annexed hereto as Exhibit H.)

30.    On January 2, 2009, due to persistent non-payment and MMA's non-responsivens and failure to provide any assurance that payment was forthcoming, Metro was forced to reduce

its manpower on the Project. Importantly, although it had the right to do so at the time due to the non-payment, Metro did not stop work on the Project. It continued work on the Project without missing a single day and completed significant and critical work during this time.

31.    Upon information and belief, MMA has received payments from VCNY on behalf of Metro totaling $961,917.95 pursuant to the October/November Requisition and the December Requisitions. These are trust funds under Article 3-A of the New York Lien Law rightfully belonging to Metro.

32.    On or about January 15, 2009, Mr. Quigley discussed the late payment situation with Metro's project executive and promised him that payment would be made to Metro by January 21, 2009.

33.    MMA did not make payment as promised on January 21, 2009, nor at any time thereafter.

34.    On January 26, 2009, Metro was forced to stop work on the Project for non-payment. By that time Metro had been on the job for **116 days** without payment. (A copy of Metro's Notice to Stop Work for Non-Payment dated and sent on January 26, 2009, is annexed hereto as Exhibit I.)

35.    To date, Metro still has not received any payment from MMA on the October/November Requisition and the December Requisitions, despite the fact that MMA has received payment from VCNY.

36.    MMA is wrongfully and illegally withholding and diverting trust funds rightfully belonging to Metro.

C.    **MMA's Wrongful And Retaliatory Termination Of The Subcontracts**

37.    On January 27, 2009, one day after Metro stopped work on the Project for non-

6

payment, MMA purported to terminate Metro on the Subcontracts for cause.

38.   MMA did not have the requisite cause for the termination.

39.   The termination was baseless and, upon information and belief, relatiatory.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Wrongful Termination)

40.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

41.   Metro duly performed the work it was required to perform under the Subcontracts, which performance was workmanlike, in conformity with specifications, and free of defects.

42.   MMA failed and refused to pay Metro for the work performed by Metro, despite having received payment from VCNY for such work.

43.   By January 26, 2009, when Metro was forced to stop work on the Project for non-payment, Metro had been on the job for **116 days** without payment.

44.   On January 27, 2009, MMA elected to terminate Metro on the Subcontracts.

45.   MMA did not have the requisite cause for the termination.

46.   The termination was unjustified and wrongful.

47.   As a direct and proximate result of the unjustified and wrongful termination, Metro sustained damages in an amount to be determined at the time of trial but which, upon information and belief, shall be no less than $4,500,000.00.

### AS AND FOR A SECOND CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### Approved October/November Requisition

48.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

49.     Metro duly performed work pursuant to the Subcontracts throughout October and November 2008, which performance was workmanlike, in conformity with specifications, and free of defects.

50.     By reason of Metro's performance of such work and Metro's furnishing of labor, supplies, materials and equipments in connection therewith, there became due and owing to Metro the sum of $774,031.45.

51.     On November 18, 2008, Metro submitted to MMA a final, negotiated and approved requisition for payment in the sum of $774,031.45 (including retainage) for work performed in October and November 2008.

52.     Upon information and belief, MMA has received from VCNY payments on behalf of Metro pursuant to the October/November Requisition.

53.     However, despite due demand therefor, MMA has failed and refused to pay Metro any of the monies due and owing to Metro pursuant to the October/November Requisition.

54.     The total sum presently due and owing to Metro pursuant to the October/November Requisition is $774,031.45.

55.     MMA's failure and refusal to pay said sum constitutes a material breach of the Subcontracts.

56.     By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $774,031.45, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR A THIRD CAUSE OF ACTION
#### Breach of Contract – Failure To Pay
#### Approved And Paid December Requisitions

57.    Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

58.    Metro duly performed work pursuant to the Subcontracts throughout December 2008, which performance was workmanlike, in conformity with specifications, and free of defects.

59.    By reason of Metro's performance of such work and Metro's furnishing of labor, supplies, materials and equipments in connection therewith, there became due and owing to Metro the sum of $317,178.27.

60.    On December 30, 2008, Metro submitted to MMA final, negotiated and approved requisitions for payment in the sum of $317,178.27 (including retainage) for work performed in December 2008.

61.    Upon information and belief, MMA has received from VCNY payments on behalf of Metro pursuant to the December Requisitions.

62.    However, despite due demand therefor, MMA has failed and refused to pay Metro any of the monies due and owing to Metro pursuant to the December Requisitions.

63.    The total sum presently due and owing to Metro pursuant to the December Requisitions is $317,178.27.

64.    MMA's failure and refusal to pay said sum constitutes a material breach of the Subcontracts.

65.    By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $317,178.27, plus interest, to be determined at the time of trial. Additionally, insofar as

MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of Contract –
### Failure To Pay January Requisitions

66.    Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

67.    Metro duly performed work pursuant to the Subcontracts from January 2, 2009 to January 26, 2009, which performance was workmanlike, in conformity with specifications, and free of defects.

68.    By reason of Metro's performance of such work and Metro's furnishing of labor, supplies, materials and equipments in connection therewith, there became due and owing to Metro the sum of $462,178.10.

69.    After it stopped work on the Project, Metro submitted to MMA requisitions for payment in the sum of $462,178.10 (including retainage) for work performed from January 2, 2009 to January 26, 2009.

70.    Upon information and belief, MMA has or should have received from VCNY payments on behalf of Metro pursuant to the January Requisitions.

71.    However, despite due demand therefor, MMA has failed and refused to pay Metro any of the monies due and owing to Metro pursuant to the January Requisitions.

72.    The total sum presently due and owing to Metro pursuant to the December Requisitions is $462,178.10.

73.    MMA's failure and refusal to pay said sum constitutes a material breach of the Subcontracts.

74. By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $462,178.10, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR A FIFTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### For Additional Work To Manually Demolish
### Concrete Walls Performed In August 2008

75. Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

76. MMA requested and directed Metro to perform additional work to manually demolish unforeseen concrete walls in August 2008.

77. This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

78. Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

79. The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

80. The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $11,314.75.

81. Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $11,314.75 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

82.    Despite due demand, MMA has failed and refused to pay any part of the sum of $11,314.75 due and owing to Metro.

83.    MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

84.    By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $11,314.75, plus interest, to be determined at the time of trial.  Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR A SIXTH CAUSE OF ACTION
#### Breach of Contract – Failure To Pay
#### For Additional Work To Manually Demolish
#### Concrete Walls Performed In September 2008

85.    Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

86.    MMA requested and directed Metro to perform additional work to manually demolish unforeseen concrete walls in September 2008.

87.    This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

88.    Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

89.    The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

90.    The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $5,908.03.

91.    Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $5,908.03 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

92.    Despite due demand, MMA has failed and refused to pay any part of the sum of $5,908.03 due and owing to Metro.

93.    MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

94.    By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $5,908.03, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### For Additional Work To Manually Demolish
### Concrete Walls Performed In October 2008

96.    Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

97.    MMA requested and directed Metro to perform additional work to manually demolish unforeseen concrete walls in October 2008.

98.    This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

99.    Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

100.    The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

101.    The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $13,204.80.

102.    Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $13,204.80 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

103.    Despite due demand, MMA has failed and refused to pay any part of the sum of $13,204.80 due and owing to Metro.

104.    MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

105.    By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $13,204.80, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
#### Breach of Contract – Failure To Pay
#### For Additional Work To Manually Demolish
#### Foundation Walls At 58 Downing Street

106.    Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

107.    MMA requested and directed Metro to perform additional work to manually demolish foundation walls at 58 Downing Street.

108.    This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

14

109.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

110.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

111.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $12,709.45.

112.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $12,709.45 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

113.   Despite due demand, MMA has failed and refused to pay any part of the sum of $12,709.45 due and owing to Metro.

114.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

115.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $12,709.45, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A NINTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### For Additional Work To Manually Demolish
### Foundation Walls At 220 W. Houston Street

116.   Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

117.   MMA requested and directed Metro to perform additional work to manually demolish foundation walls at 220 W. Houston Street.

118.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

119.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

120.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

121.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $3,603.91.

122.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $3,603.91 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

123.   Despite due demand, MMA has failed and refused to pay any part of the sum of $3,603.91 due and owing to Metro.

124.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

125.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $3,603.91, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A TENTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### For Additional Masonry Patching Work
### At 220 W. Houston Street

126.    Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

127.    MMA requested and directed Metro to perform additional masonry patching work at 220 W. Houston Street.

128.    This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

129.    Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

130.    The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

131.    The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $4,446.41.

132.    Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $4,446.41 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

133.    Despite due demand, MMA has failed and refused to pay any part of the sum of $4,446.41 due and owing to Metro.

134.    MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

135.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $4,446.41, plus interest, to be determined at the time of trial.  Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
**Breach of Contract – Failure To Pay
For Additional Work To Manually Demolish
Foundation Walls At 204 W. Houston Street**

136.   Metro repeats and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

137.   MMA requested and directed Metro to perform additional work to manually demolish foundation walls at 204 W. Houston Street.

138.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

139.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

140.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

141.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $1,219.82.

142.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $1,219.82 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

143.   Despite due demand, MMA has failed and refused to pay any part of the sum of $1,219.82 due and owing to Metro.

144.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

145.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $1,219.82, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay For
### Additional Work To Winterize Dewatering Systems

146.   Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

147.   MMA requested and directed Metro to perform additional work to winterize the dewatering systems at the jobsite.

148.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

149.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

150.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

151.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $37,439.33.

152.    Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $37,439.33 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

153.    Despite due demand, MMA has failed and refused to pay any part of the sum of $37,439.33 due and owing to Metro.

154.    MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

155.    By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $37,439.33, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### For Additional Engineering Work

156.    Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

157.    MMA requested and directed Metro to perform additional engineering work.

158.    This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

159.    Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

160.    The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

161.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $19,057.50.

162.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $19,057.50 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

163.   Despite due demand, MMA has failed and refused to pay any part of the sum of $19,057.50 due and owing to Metro.

164.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

165.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $19,057.50, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION**
**Breach of Contract – Failure To Pay**
**For Additional Work To Relocate Telephone**
**And Electrical Cables For Drilling**

166.   Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

167.   MMA requested and directed Metro to perform additional work to relocate telephone and electrical cables for drilling.

168.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

169.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

21

170.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

171.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $5,129.23.

172.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $5,129.33 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

173.   Despite due demand, MMA has failed and refused to pay any part of the sum of $5,129.33 due and owing to Metro.

174.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

175.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $5,129.33, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
**Breach of Contract – Failure To Pay**
**For Additional Work To Excavate Undisclosed**
**Fuel Tanks Performed in October 2008**

176.   Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

177.   MMA requested and directed Metro to perform additional work to excavate undisclosed fuel tank in October 2008.

178.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

22

179.    Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

180.    The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

181.    The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $7,590.34.

182.    Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $7,590.34 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

183.    Despite due demand, MMA has failed and refused to pay any part of the sum of $7,590.34 due and owing to Metro.

184.    MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

185.    By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $7,590.34, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

<u>AS AND FOR A SIXTEENTH CAUSE OF ACTION</u>
**Breach of Contract – Failure To Pay**
**For Additional Work Relating To The**
**Excavation And Removal Of Undisclosed**
**Fuel Tanks Performed In November 2008**

186.    Metro repeat and reallege each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

187.   MMA requested and directed Metro to perform additional work relating to the excavation and removal of undisclosed fuel tanks in November 2008.

188.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

189   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

190.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

191.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $3,015.88.

192.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $3,015.88 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

193.   Despite due demand, MMA has failed and refused to pay any part of the sum of $3,015.88 due and owing to Metro.

194.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

195.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $3,015.88, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### For Additional Work Necessitated By
### Access Restrictions To The Jobsite

196.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

197.   MMA requested and directed Metro to perform additional work necessitated by access restrictions to the jobsite.

198.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

199.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

200.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

201.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $6,069.53.

202.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $6,069.53 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

203.   Despite due demand, MMA has failed and refused to pay any part of the sum of $6,069.53 due and owing to Metro.

204.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

205.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $6,069.53, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
### Breach of Contract – Failure To Pay
### For Additional Shoring Work

206.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

207.   MMA requested and directed Metro to perform additional work relating to the construction of the shoring.

208.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

209.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

210.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

211.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $31,203.06.

212.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $31,203.06 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

26

213.   Despite due demand, MMA has failed and refused to pay any part of the sum of $31,203.06 due and owing to Metro.

214.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

215.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $31,203.06, plus interest, to be determined at the time of trial.  Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR A NINTEENTH CAUSE OF ACTION
#### Breach of Contract – Failure To Pay
#### For Additional Work To Build
#### Sound Enclosure For Dewatering Pumps

216.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

217.   MMA requested and directed Metro to perform additional work to build a sound enclosure for the dewatering pumps.

218.   This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

219.   Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

220.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

221.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $3,140.78.

222.    Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $3,140.78 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

223.    Despite due demand, MMA has failed and refused to pay any part of the sum of $3,140.78 due and owing to Metro.

224.    MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

225.    By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $3,140.78, plus interest, to be determined at the time of trial.  Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

**AS AND FOR A TWENTIETH CAUSE OF ACTION**
**Breach of Contract – Failure To Pay**
**For Additional Work To Demolish And**
**Remove Unknown Subsurface Concrete Materials**

226.    Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

227.    MMA requested and directed Metro to perform additional work to demolish and remove unknown subsurface concrete materials.

228.    This was extra work for which Metro was entitled to additional compensation pursuant to the Subcontracts.

229.    Metro duly performed and completed the extra work and furnished extra labor, supplies, materials and equipment in connection with same with the knowledge, consent and approval of MMA.

230.   The work was performed and completed in a proper and workmanlike manner, which performance was duly accepted, approved of and acknowledged by MMA without objection.

231.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro is $3,380.78.

232.   Metro duly notified MMA of and submitted to MMA a claim for payment in the amount of $3,380.78 for the extra work that it performed and the extra labor, supplies, materials and equipment that it furnished.

233.   Despite due demand, MMA has failed and refused to pay any part of the sum of $3,380.78 due and owing to Metro.

234.   MMA's failure and refusal to pay constitute a material breach of the Subcontracts.

235.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $3,380.78, plus interest, to be determined at the time of trial. Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

## AS AND FOR A TWENTY-FIRST CAUSE OF ACTION
### Breach of Contract – Failure To Pay Retainage

236.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

237.   MMA is currently withholding retainage in the amount of $50,202.33 for work performed by Metro that has been approved and paid for by the owner.

238.   This retainage is due and owing to Metro.

239.   However, despite due demand therefor, MMA has failed and refused to pay Metro any of this retainage.

240.   MMA's failure and refusal to pay this retainage constitutes a material breach of the Subcontracts.

241.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $50,202.33, plus interest, to be determined at the time of trial.   Additionally, insofar as MMA entered into the Subcontracts as agent for VCNY and VCNY was a disclosed owner, VCNY is also directly liable to Metro for this amount.

### AS AND FOR A TWENTY-SECOND CAUSE OF ACTION
#### Breach Of The Implied Covenant
#### Of Good Faith And Fair Dealing

242.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

243.   In all contracts, there is an implied covenant of good faith and fair dealing.

244.   Under this covenant, the parties to a contract must deal with each other honestly and in good faith not only with respect to the performance of the contract, but also in their enforcement of the terms of the contract.

245.   MMA has acted in bad faith in failing to comply with the terms of the Subcontracts.

246.   MMA's conduct constitutes a breach of the covenant of good faith and fair dealing.

247.   By virtue of the foregoing, MMA is liable to Metro for damages in an amount not less than $4,500,000.00, plus interest, to be determined at the time of trial.

### AS AND FOR A TWENTY-THIRD CAUSE OF ACTION
#### Quantum Meruit – For Contract Work

248.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

249.    This cause of action is alleged in the alternative to the breach of contract claims set forth above in the event and to the extent relief is not available under the Subcontracts.

250.    Metro conferred a benefit upon defendants by performing work specified in the Subcontracts and furnishing labor, supplies, materials and equipments in connection therewith.

251.    Metro performed the work and furnished the labor, supplies, materials and equipments in good faith and with the expectation that it would be compensated therefor.

252.    Defendants knowingly and voluntarily accepted the benefit of the work and the labor, supplies, materials and equipments but, without basis, has failed and refused to pay Metro the full value of such benefit.

253.    Defendants continue to enjoy the benefit of the work and the labor, supplies, materials and equipments.

254.    The fair and reasonable value of the work performed and the labor, supplies, materials and equipments furnished by Metro that defendants have failed to pay for, including unpaid retainage, is $1,603,590.15.

255.    By virtue of the foregoing, defendants are liable to Metro for damages in an amount not less than $1,603,590.15, plus interest, to be determined at the time of trial.

### AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION
### Quantum Meruit – For Extra Work

256.    Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

257.    This cause of action is alleged in the alternative to the breach of contract claims set forth above in the event and to the extent relief is not available under the Subcontracts.

258.    Metro conferred a benefit upon defendants by performing extra work and furnishing extra labor, supplies, materials and equipment for the Project.

259.   Metro performed extra work and furnished extra labor, supplies, materials and equipment in good faith and with the expectation that it would be compensated therefor.

260.   Defendants knowingly and voluntarily accepted the benefit of the extra work and the extra labor, supplies, materials and equipment but, without basis, has failed and refused to pay Metro the full value of such benefit.

261.   Defendants continue to enjoy the benefit of the extra work and the extra labor, supplies, materials and equipment.

262.   The fair and reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro that defendants failed to pay for is $168,433.60.

263.   By virtue of the foregoing, defendants are liable to Metro for damages in an amount not less than $168,433.60, plus interest, to be determined at the time of trial.

## AS AND FOR A TWENTY-FIFTH CAUSE OF ACTION
### Unjust Enrichment

264.   Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

265.   This cause of action is alleged in the alternative to the breach of contract claims set forth above in the event and to the extent relief is not available under the Subcontracts.

266.   As set forth above, defendants have been unjustly enriched at Metro's expense in an amount not less than $1,772,023.75 for work specified in the Contract and extra work performed by Metro.

267.   It is against equity and good conscience to permit defendants to continue to enjoy the benefits of the work performed by Metro and the labor, supplies, materials and equipment furnished by Metro without paying for it.

268.    By virtue of the foregoing, defendants are liable to Metro for damages in an amount not less than $1,772,023.75, plus interest, to be determined at the time of trial.

### AS AND FOR A TWENTY-SIXTH CAUSE OF ACTION
**Tortious Interference With Contractual Relationships**

269.    Metro repeats and realleges each and every allegation contained in the previous paragraphs as if they were set forth at length herein.

270.    Metro has and at all times relevant herein had a contractual relationship with Moretrench American Corporation.

271.    Metro has and at all times relevant herein had a contractual relationship with PEI Disposal Group, Inc.

272.    Metro has and at all times relevant herein had a contractual relationship with Acqua Bella, Inc.

273.    MMA knew of Metro's relationship with each of these third parties.

274.    Upon information and belief, MMA intentionally interfered with Metro's relationship with each of these third parties.

275.    Upon information and belief, MMA intentionally and wrongfully diverted trust funds to one or more of these third parties.

276.    MMA's interference caused injury to Metro's relationship with each of these third parties.

277.    By virtue of the foregoing, defendants are liable to Metro for damages in an amount to be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Metro respectfully requests that the Court enter judgment as follows:

A. On the first cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the wrongful termination, the amount of which is to be determined at the time of trial but which shall be no less than $4,500,000.00, plus interest.

B. On the second cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $774,031.45, plus interest.

C. On the third cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $317,178.27, plus interest.

D. On the fourth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $462,178.10, plus interest.

E. On the fifth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $11,314.75, plus interest.

F. On the sixth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $5,908.03, plus interest.

G. On the seventh cause of action, awarding all direct, indirect, consequential, special,

34

Case: 13-556    Document: 26-2    Page: 76    04/11/2013    904405    125

**A237**

compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $13,204.80, plus interest.

H. On the eighth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $12,709.45, plus interest.

I. On the ninth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $3,603.91, plus interest.

J. On the tenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $4,446.41, plus interest.

K. On the eleventh cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $1,219.82, plus interest.

L. On the twelfth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $37,439.33, plus interest.

M. On the thirteenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $19,057.50, plus interest.

N. On the fourteenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $5,129.33, plus interest.

O. On the fifteenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $7,590.34, plus interest.

P. On the sixteenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $3,015.88, plus interest.

Q. On the seventeenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $6,069.53, plus interest.

R. On the eighteenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $31,203.06, plus interest.

S. On the nineteenth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $3,140.78, plus interest.

T. On the twentieth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $3,380.78, plus interest.

U. On the twenty-first cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of contract, the amount of which is to be determined at the time of trial but which shall be no less than $50,202.33, plus interest.

V. On the twenty-second cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the breach of the implied covenant of good faith and fair dealing, the amount of which is to be determined at the time of trial but which shall be no less than $4,500,000, plus interest.

W. On the twenty-third cause of action, awarding the reasonable value of the contract work performed and the labor, supplies, materials and equipment furnished by Metro, the amount of which is to be determined at the time of trial but which shall be no less than $1,603,590.15, plus interest.

X. On the twenty-fourth cause of action, awarding the reasonable value of the extra work performed and the extra labor, supplies, materials and equipment furnished by Metro, the amount of which is to be determined at the time of trial but which shall be no less than $125,191.14, plus interest.

Y. On the twenty-fifth cause of action, awarding the amount by which defendants are unjustly enriched, the amount of which is to be determined at the time of trial but which shall be no less than $1,772,023.75, plus interest.

Z. On the twenty-sixth cause of action, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the tortuous interference with Metro's contractual relationships with third parties, plus interest, the amount of which is to be determined at the time of trial.

AA.   On all causes of action, awarding punitive damages to the extent allowable under applicable law.

BB.   Granting attorneys' fees, interest, costs, disbursements, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
      February 18, 2009

BRYAN HA
Attorney At Law
271 Madison Avenue
20th Floor
New York, New York 10016
T: 212-537-6971
F: 212-382-3610

Attorney for Plaintiff
Metro Foundation Contractors, Inc.

## VERIFICATION

STATE OF NEW YORK )
                    ) ss.:
COUNTY OF QUEENS   )

Alfonso DeMartino, being duly sworn, deposes and says:

That I am an officer and owner of Metro Foundation Contractors, Inc., the plaintiff herein; that I have read and know the contents of the foregoing Verified Complaint; that the same is true of my own knowledge and belief, except as to those matters therein stated on information and belief, and as to those matters, I believe them to be true.

Alfonso DeMartino

Sworn to before me this
13 day of February 2009

Notary Public                         2/18/09

HARDAI P. DEEN
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
NO. 01DE6060263
MY COMMISSION EXPIRES 09-08-2011

Case 1:09-cv-06796-JGK   Document 56   Filed 03/09/11   Page 1 of 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
METRO FOUNDATION CONTRACTORS, INC.,                    CASE NO.
                                                       09CV-6796 (JGK)
                                Plaintiff,

            - against -

ARCH INSURANCE COMPANY,                                **AFFIDAVIT IN**
                                                       **OPPOSITION TO**
                                Defendant.             **METRO**
------------------------------------------------------------------- X   **FOUNDATION'S**
ARCH INSURANCE COMPANY,                                **MOTION TO**
                                                       **DISMISS MARCO**
                                Third-Party Plaintiff, **MARTELLI'S**
                                                       **CLAIMS**
            - against -

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMANN and PATRICK J. QUIGLEY,

                                Third-Party Defendants.
------------------------------------------------------------------- X

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NASSAU    )

        Steven H. Rittmaster, being duly sworn, deposes and says:

        1.    I am a member of the firm of Torre, Lentz, Gamell, Gary & Rittmaster,

LLP, attorneys for defendant and third-party plaintiff Arch Insurance Company ("Arch").

I submit this affidavit, based on my personal knowledge, in opposition to the motion by

plaintiff Metro Foundation Contractors, Inc. ("Metro") to dismiss the claims of third-

party defendant Marco Martelli & Associates ("MMA") against Metro.

2. Metro and its counsel have chartered an unusual litigation strategy by commencing a New York County Supreme Court action solely against MMA (the general contractor on the subject project) while at the same time prosecuting this action solely against Arch (the payment bond surety on that project).

3. In my eighteen years representing surety companies, I cannot recall another instance similar to this one where a subcontractor (Metro) simultaneously sued the general contractor (MMA) in one court and the surety in a separate court. The common practice, of course, is for a subcontractor to sue both the general contractor and surety in one action. While a bond claimant technically can sue a surety without joining the principal on the bond (MMA), this generally occurs, in practice, only where the principal is bankrupt or otherwise unworthy of pursuit by the subcontractor.

4. Accordingly, prior to the initial court conference in this action on December 8, 2009, I advised Metro's counsel, Mr. Ha, that Arch would consent to be added as a party defendant in Metro's pending State Court action. As I advised Mr. Ha, Arch considered it a waste of judicial resources for the same issues to be litigated in two separate forums. I also advised him that, since Arch had joined MMA as a third-party defendant, all the issues between Metro and MMA would be litigated twice, risking inconsistent judgments.

5. Mr. Ha declined to add Arch as a party to the State Court action. This issue was briefly discussed with the Court at the December 8, 2009 conference, where Mr. Ha advised of his intention to continue both actions.

6.     While I understand that under the law Metro has the right to pursue two separate actions, Metro should not be heard to complain now that it is being required to defend MMA's claims in both the State Court action and the instant action.  Metro unilaterally chose to commence two separate actions and rejected Arch's efforts to consolidate the dispute into one matter.

7.     As explained in the accompanying memorandum of law, under applicable law, MMA's counterclaims operate as a defense to Arch and Arch's liability can be no greater than that of its principal, MMA.  Arch's second defense in its Answer (ECF 7) states, in pertinent part, that Metro's "recovery under Arch's payment bond is limited to the amount, if any, found to be due from Marco," and Arch's fifth defense incorporates by reference all of MMA's defenses.  The fact that Metro may be required to litigate the issues raised by MMA in two actions is solely based on Metro's own decision how to pursue its claim.

WHEREFORE, Arch respectfully requests that this Court deny plaintiff Metro's motion in its entirety, together with such other and further relief that the court may deem just and proper.

_____
Steven H. Rittmaster

Sworn to before me
this 9th day of March, 2011

_____
Notary Public

**NANCY J. HUDSON**
**Notary** Public, State of New York
No. 01HU6226266
Qualified In Nassau County
**Commission Expires August 9, 20** _14_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

METRO FOUNDATION CONTRACTORS, INC.,

                    Plaintiff,                    09 CV 6796 (JGK)

          - against -                             OPINION AND ORDER

ARCH INSURANCE COMPANY,

                    Defendant.
_____

ARCH INSURANCE COMPANY,

          Third-Party Plaintiff,

          - against -

MARCO MARTELLI & ASSOCIATES, INC.,
ET AL.

          Third-Party Defendants.
_____

JOHN G. KOELTL, District Judge:

          The plaintiff, Metro Foundation Contractors, Inc.

("Metro"), brought this action for damages against Arch

Insurance Company ("Arch"). Metro claimed that it was entitled

to recover on a payment bond issued by Arch. Arch, the

defendant/third-party plaintiff, filed a third-party complaint

for indemnification against Marco Martelli Associates, Inc.,

Martelli Real Estate, Inc., Marco Martelli, Madeline Martelli,

Ronald Kuhlman, and Patrick Quigley (collectively "MMA" or

"third-party defendants"), the third-party defendants. Arch

claimed that it was entitled to be indemnified by MMA for any

payments that it was required to pay to Metro.  MMA then filed

breach of contract claims against Metro in its Amended Answer to

the complaint brought by Arch.  MMA claimed that Metro had

breached various contracts and was therefore not entitled to

recover the amounts it claimed under the payment bond.  Metro

now moves to dismiss MMA's claims for lack of subject matter

jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1).  Alternatively, Metro asks the Court to decline to

exercise supplemental jurisdiction over MMA's claims pursuant to

28 U.S.C. § 1367(c).  MMA and Arch oppose the motion.  In

addition, MMA moves for a default judgment against Metro

pursuant to Federal Rule of Civil Procedure 37, an Order of

Contempt and sanctions against Metro for noncompliance with this

Court's January 6, 2011 Order, and an Order requiring Metro to

pay the reasonable expenses incurred by MMA because of Metro's

failure to comply with the January 6, 2011 Order.

## I.

In defending a motion to dismiss for lack of subject matter

jurisdiction pursuant to Federal Rule of Procedure 12(b)(1), the

plaintiff bears the burden of proving the Court's jurisdiction

by a preponderance of the evidence.[1]  In considering such a

---

[1] An answer to the third-party complaint was filed in November 2009.
Therefore, the motion to dismiss should be treated as a motion for judgment
on the pleadings under Rule 12(c).  Patel v. Contemporary Classics of Beverly

motion, the Court generally must accept the material factual

allegations in the complaint as true.  See J.S. ex rel. N.S. v.

Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  The Court

does not, however, draw all reasonable inferences in the

plaintiff's favor.  Id.; Graubart v. Jazz Images, Inc., No. 02

Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006).

Indeed, where jurisdictional facts are disputed, the Court has

the power and the obligation to consider matters outside the

pleadings, such as affidavits, documents, and testimony, to

determine whether jurisdiction exists.  See Anglo-Iberia

Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero), 600 F.3d

171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d

Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922,

932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006,

1011 (2d Cir. 1986). In so doing, the Court is guided by that

body of decisional law that has developed under Federal Rule of

Civil Procedure 56. Kamen, 791 F.2d at 1011; see also Leyse v.

Bank of Am., N.A., No. 09 Civ. 7654, 2010 WL 2382400, at *1

(S.D.N.Y. June 14, 2010).

## II.

The following facts are undisputed, unless otherwise noted.

---

Hills, 259 F.3d 123, 126 (2d Cir. 2001).  No party has raised this issue and
the standards under Rule 12(c) are the same as under Rule 12(b)(6).  See
Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

In 2008 MMA was the general contractor/construction manager for the construction of a nursing home in New York City (the "Project"). Arch issued a bond to MMA in the amount of $29,292,754 (the "Payment Bond"), which was intended to cover the costs of labor and material for the Project. (DeMartino Decl. ¶¶ 3-5.)

MMA and Metro entered into a series of subcontracts and change order agreements in which Metro agreed to perform construction work on the Project in exchange for payments totaling $4,616,944.40, subject to adjustments for extra work or alterations to the work. (DeMartino Decl. ¶¶ 6-13.) Metro performed work and furnished materials for the Project from February 2008 to January 2009. Based on the work performed, Metro asserts that it is entitled to more than $1.7 million, which MMA has refused to pay. (DeMartino Decl. ¶¶ 14-16.) Metro claimed that it was a beneficiary of the Payment Bond and requested that Arch, as the issuer of the Payment Bond, pay the amount allegedly owed under the subcontracts. Arch denied Metro's claim.

Sometime prior to April 7, 2009, Metro filed an action against MMA in the New York State Supreme Court, New York County, in which it seeks to recover directly against MMA for the amounts it claims are due for the work it allegedly performed on the construction subcontracts. (Ha Decl. Ex. E.)

Metro then filed its complaint in this action against Arch on July 30, 2009. It claims that Arch breached its contract by failing to pay the amount due under the Payment Bond and that Arch breached the covenant of good faith and fair dealing when it allegedly denied Metro's claim without conducting an independent investigation. (Ha Decl. Ex. A ("Metro Complaint") ¶¶ 34-48.) On September 14, 2009, Arch filed an answer to Metro's complaint and a third-party complaint for indemnification against MMA and other defendants. (Ha Decl. Exs. B & C.) MMA filed an Amended Answer to the third-party complaint brought by Arch on June 10, 2010. The Amended Answer alleged that Metro breached the subcontracts and asserted claims for breach of contract, indemnification, and attorney's fees against Metro. (Ha Decl. Ex. D.) MMA alleges, among other things, that Metro breached the construction subcontracts by failing to perform its work in a timely and workmanlike manner and by failing to complete its work under the subcontracts. MMA claims that Metro is liable for the cost of completing the subcontract work. MMA also alleges that claims against Arch were improper and that it is entitled to indemnification for having to defend itself against Arch. Metro now argues that the claims alleged by MMA in the Amended Answer should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Throughout the course of this litigation, Metro has failed
to comply with discovery requests by MMA. Following refusals by
Metro to produce documents responsive to MMA's Rule 34 request
for documents, on September 2, 2010, this Court issued an Order
requiring Metro to produce all documents responsive to
outstanding discovery requests and to answer all outstanding
interrogatories by September 17, 2010. (Metro Found.
Contractors, Inc. v. Arch Ins. Co., Order, Sept. 2, 2010, Docket
No. 27 (the "September 2 Order").) Metro failed to comply with
this Order, and, as a result, in an order dated January 6, 2011
(the "January 6 Order"), the Court imposed sanctions by
prohibiting Metro from introducing documents that were
responsive to the document requests and were not produced, and
awarded costs and attorneys' fees in the amount of $3,850 to
MMA. Metro Found. Contractors, Inc. v. Arch Ins. Co., No. 09
Civ. 6796, 2011 WL 70561, at *2 (S.D.N.Y. Jan. 6, 2011).[2] The
Court imposed those sanctions only after Metro made it clear
that it had not produced the documents and was continuing to
refuse to produce them. The Court explained:

> Metro, in blatant disregard of [the September 2
> Order], chose not to produce documents, but to rely on
> newly asserted objections. Moreover, in its current
> papers, Metro makes clear that it is continuing to
> refuse to produce documents, although ordered to do

---

[2] The parties advised the Court at the argument of the current motions that
there is no longer any issue with respect to Metro's responses to
interrogatories.

6

so, because it has unilaterally determined that those documents, although called for, are not relevant.

Id.  The Court also ordered Metro to produce all outstanding responsive documents by January 21, 2011.

Despite the sanction and new order, Metro continued to disobey the Court's orders and has continued to refuse to produce the documents.  Metro has failed to produce certain outstanding responsive documents and did not pay any part of the sum owed to MMA under the January 6 Order.  On February 16, 2010, the Court held a telephone conference call to address Metro's noncompliance.  Counsel for Metro admitted the following:

> THE COURT: [I]s it correct that you've failed to comply with the Court's January 6, 2011 order in that Metro has not produced any additional documents and has not paid the sum of $3,850.  Is that correct?
>
> COUNSEL FOR METRO: Yes.  That is correct.  Metro has not made that payment.  Has not produced any additional documents.
>
> . . .
>
> THE COURT: First question.  Have you complied -- have you and your client complied with the Court's January 6, 2011 order?  The answer to that is no, you have not complied.  Correct?
>
> COUNSEL FOR METRO: That is correct, Judge.

(Tr. at 3, 5).  Counsel for Metro indicated that he could not represent whether his client would comply with the court's order:

7

THE COURT: All right.  So the answer is you can't
answer whether they will comply with the order because
you're still discussing it with your client.  Is that
correct?

COUNSEL FOR METRO: That's fair, Judge.

(Tr. at 6.)  The Court stressed the seriousness of Metro's

failure to comply and the range of escalating sanctions

available for continued failure to comply with the Court's

orders, and counsel for Metro indicated that he understood:

COUNSEL FOR METRO: Judge, I do understand.  I do fully
understand the seriousness of this and the need --
necessity of complying with the Court's order.  And
again, without going to attorney-client
communications, I'm doing everything I can to impress
that upon them.

(Tr. at 7.)  On February 17, 2011, MMA filed a motion seeking

sanctions and the reasonable expenses incurred by MMA, including

attorney's fees, as a result of Metro's continued noncompliance

with the discovery requests and Court orders, and requested a

default judgment pursuant to Rule 37(b)(2)(A) based on Metro's

violations of the September 2 and January 6 Orders.   (MMA Mot.

for Sanctions, Docket No. 43; Olsen Aff. ¶2.)  At the argument

of the current motions, Metro conceded that it has continued to

refuse to produce the documents and has not complied with the

Court orders requiring that it produce them.  Metro also has not

paid the outstanding award of $3,850 in costs and attorney's

fees owed to MMA.

Metro has responded to the motion for sanctions and has also filed a motion to dismiss the third-party complaint based on a purported lack of subject matter jurisdiction. The third-party complaint was pending for more than a year and a half before the motion to dismiss was filed.

### III.

#### A.

Metro asserts that the Court lacks subject matter jurisdiction over MMA's claims because MMA failed to plead jurisdiction, and because MMA and Metro are not diverse. MMA does not argue that diversity jurisdiction exists over its claims against Metro.[3] Instead, MMA argues that subject matter jurisdiction exists based on the Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

Subsection (a) of § 1367 states:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

---

[3] The parties do not dispute that Metro is a corporation organized under the laws of New York with its principal place of business in New York. Arch is a corporation organized under the laws of Missouri with its principal place of business in Missouri. Defendants who comprise the MMA group of defendants are citizens of New York or Florida.

9

28 U.S.C. § 1367(a).  In this case, MMA's claims against Metro
are part of the "same case or controversy" as those claims
asserted by Metro against Arch.  Metro's two causes of action
against Arch are based on Metro's allegation that work it
performed for MMA was uncompensated.  MMA's breach of contract
claims against Metro arise from the same construction project
and are intended "to demonstrate that MMA does not owe a debt to
Metro and that it is actually Metro that owes a debt to MMA."
(MMA's Opp. to Mot. to Dismiss ("MMA's Opp.") at 6.)  These
claims are so related that they easily fall within the same case
or controversy for purposes of § 1367(a), and Metro does not
appear to contest this conclusion.

    Metro argues that MMA is precluded from relying on
supplemental jurisdiction under § 1367(a) because of the
exclusion provided in § 1367(b).  That provision states that in
cases, such as this case, where original jurisdiction is founded
solely on diversity of citizenship, "the district courts shall
not have supplemental jurisdiction under subsection (a) over
claims by plaintiffs against persons made parties under Rule 14
[providing for third party practice] . . . when exercising
supplemental jurisdiction over such claims would be inconsistent
with jurisdictional requirements of [diversity of citizenship
jurisdiction]."  28 U.S.C. § 1367(b) (emphasis added).

Metro argues that MMA is a "plaintiff" or third-party
plaintiff for the purposes of its third-party complaint and
that, because there is no diversity of citizenship between MMA
and Metro, there can be no supplemental jurisdiction over the
third-party complaint by MMA against Metro.  Metro seriously
misreads § 1367(b).  Section 1367(b) is a limitation on the
filing of additional claims by original plaintiffs after
additional parties have been added in order to avoid an end-run
around the requirement that original plaintiffs be completely
diverse from all defendants for all claims at the time the
original complaint is brought.  An original plaintiff should not
be able to withhold asserting certain obvious claims until a
party is joined and then use supplemental jurisdiction to assert
claims against that party.  See Viacom Int'l, Inc. v. Kearney,
212 F.3d 721, 726-27 (2d Cir. 2000).  By contrast, "[b]ecause
defendants are involuntarily brought into court, their [claims
a]re not deemed as suspect as those of the plaintiff, who is
master of his complaint."  Id. at 727 (internal quotation marks
omitted) (alterations in original).  "Significantly, § 1367(b)
reflects Congress' intent to prevent original plaintiffs — but
not defendants or third parties — from circumventing the
requirements of diversity."  Id. at 726-27.  While MMA is
asserting affirmative claims for relief in this instance, that
does not make it a plaintiff under § 1367(b).  Indeed, MMA was

11

brought into the case as a third-party defendant.  The
limitations of § 1367 only apply to the original plaintiff in
the action.  Id. at 727; see also Barefoot Architect, Inc. v.
Bunge, 632 F.3d 822, 836-37 (3d Cir. 2011); State Nat'l Ins. Co.
v. Yates, 391 F.3d 577, 580 (5th Cir. 2004); Grimes v. Mazda N.
Am. Operations, 355 F.3d 566, 572 (6th Cir. 2004); United
Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 492-93 (4th Cir.
1998).

    Metro argues that this case is distinguishable from Viacom
because the claims MMA is asserting against Metro are not
necessary to protect MMA's interests in this case.  Metro points
out that in Viacom the defendant moved to dismiss because a
fourth-party defendant could not be joined in the defendant's
counterclaims against Viacom, and the defendant argued that the
fourth-party defendant was a "necessary party" under Rule 19(a).
However, in Viacom, the Court of Appeals assumed, without
deciding, that the fourth-party defendant was a necessary party.
The construction of § 1367(b) did not depend at all on whether
the fourth-party defendant was a necessary party.  Nor does the
language in Viacom relating to Rule 19 alter the court's
interpretation that § 1367(b) applies only to original
plaintiffs, and is irrelevant to claims brought by third-party
defendants such as MMA.  Because § 1367(b) does not apply to

MMA's claims, the Court has supplemental jurisdiction over them
under § 1367(a).

### B.

Metro requests that the Court decline to exercise
jurisdiction under § 1367(c).  The Court of Appeals for the
Second Circuit has held that a district court's exercise of
supplemental jurisdiction is mandatory over any claim that
satisfies the elements of 28 U.S.C. § 1367(a) unless the claim
also falls within one of the exceptions enumerated in § 1367(c).
Itar-Tass Russ. News Agency v. Russ. Kurier, Inc., 140 F.3d 442,
447 (2d Cir. 1998).

District courts may decline to exercise supplemental
jurisdiction over a claim if "(1) the claim raises a novel or
complex issue of State law, (2) the claim substantially
predominates over the claim or claims over which the district
court has original jurisdiction, (3) the district court has
dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling
reasons for declining jurisdiction."  28 U.S.C. § 1367(c).
Moreover, "[o]nce a court identifies one of the factual
predicates which corresponds to one of the subsection 1367(c)
categories, the exercise of discretion is informed by whether
remanding the pendent state claims comports with the underlying

13

objective of most sensibly accomodat[ing] the values of economy, convenience, fairness, and comity." Itar-Tass, 140 F.3d at 446 (internal quotation marks omitted) (alteration in original).

Metro argues that this case presents "exceptional circumstances" because MMA's state law claims are virtually identical to claims that MMA had previously asserted in response to Metro's state court action. Courts have found exceptional circumstances justifying a decision to decline to exercise supplemental jurisdiction under § 1367(c)(4) where the "claims raised in parallel state and federal actions are duplicative and the exercise of federal jurisdiction would frustrate judicial economy." SST Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 459 (S.D.N.Y. 2003); see also Philip Morris Inc. v. Heinrich, No. 95 Civ. 0328, 1998 WL 122714, at *2 (S.D.N.Y. Mar. 19, 1998). While there is substantial overlap between this action and the claims brought in state court, the duplication does not constitute an "exceptional circumstance" within the context of judicial economy, because it is not clear that judicial resources would be preserved by declining to exercise supplemental jurisdiction over the state claims in this case. See SST Global, 270 F. Supp. 2d at 467. The same factual issues will have to be considered to address Metro's claims against Arch and Arch's claims against MMA, even if supplemental jurisdiction is not exercised over MMA's claims against Metro.

14

Moreover, this would not be an appropriate case for the Court to find "exceptional circumstances" and to decline to exercise supplemental jurisdiction. It is Metro who has multiplied the proceedings by bringing one action against the Payment Bond insurer in this Court and a separate action against the general contractor in state court. It cannot now assert the existence of multiple proceedings -- which it brought about -- as a reason to limit the available claims of third-party defendants who were brought into this lawsuit which it commenced.

Metro also argues that MMA's claims substantially predominate over its claims against Arch, and therefore supplemental jurisdiction should be declined pursuant to § 1367(c)(2). This exception does not apply. MMA's claims against Metro are directly related to Metro's claims against Arch. If MMA prevails on its claims against Metro, then Arch, as MMA's surety, will prevail in its defenses to Metro's claims against it. The outcome of both Metro's action against Arch and MMA's claims against Metro hinge on a determination of the underlying contractual dispute between Metro and MMA. MMA's claims against Metro do not substantially predominate over the issues underlying Metro's claims against Arch; they are inextricably intertwined.

Because none of the other exceptions in § 1367(c) apply, the Court will exercise supplemental jurisdiction.

### IV.

MMA moves for this Court to issue an Order of Contempt requiring Metro to pay the reasonable expenses incurred as a result of Metro's failure to comply with this Court's orders and produce responsive documents requested by MMA in the course of discovery.  MAA also moves for a default judgment pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) based on Metro's failure to comply with the Court's orders.

Federal Rule of Civil Procedure 37(b)(2)(A) provides that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," which may include "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A).  The Rule further provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

16

The imposition of sanctions under Rule 37 is a matter of judicial discretion informed by three primary factors: (1) the defendant's fault or willfulness; (2) the adequacy of notice; and (3) the efficacy of lesser sanctions. Sanctions should be tailored to the offensive conduct. See Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007). Although "[s]tanding alone, a single pretrial violation, such as a failure to timely respond to a document request, 'would not ordinarily result in an imposition of a sanction of such finality as . . . entering judgment by default,'" a "continuing saga of dilatory conduct" will meet the threshold requirement for entering a default judgment under Rule 37. Microsoft Corp. v. Computer Care Ctr., Inc., No. 06 Civ. 1429, 2008 WL 4179653, at *4 (E.D.N.Y. Sept. 10, 2008) (quoting U.S. Freight Co. v. Penn Cent. Transp. Co., 716 F.2d 954, 954-55 (2d Cir. 1983)).

Metro has declined to participate further in discovery and has blatantly disregarded multiple warnings and orders. The Court has already sanctioned Metro for this conduct, but Metro continues to disregard the Court's orders. The Court has already precluded Metro from relying on the documents it has continuously and willfully failed to produce. Metro has suggested no sanction short of a default judgment on liability that will remedy its egregious failures to produce documents and its failure to comply with the Court's orders. In short,

17

Metro's conduct is plainly willful.  It has continued despite the Court's warnings of severe and escalating sanctions.  At this point, no lesser sanction has been suggested or reasonably appears feasible.  Metro's conduct "demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents."  Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 640 (1976).  Therefore, extreme sanctions are justified, and the Court is inclined to grant MMA's motion for entry of a default judgment on liability on MMA's claims against Metro.  However, the Court is prepared to give Metro yet another chance to produce the required discovery materials.  Any responsive documents must be produced by June 30, 2011.  If these materials are not produced by that time, the Court will enter a default judgment on liability in favor of MMA on MMA's claims against Metro.

Because these sanctions are available under Rule 37, the Court declines to issue a finding of contempt against Metro at this time.  Contempt should only be used when necessary and the Court does not find that it is necessary yet to begin the contempt process.  See, e.g., Patterson, Belknap, Webb & Tyler, LLP v. Regia Mgmt. Corp., 97 Civ. 2624, 1998 WL 788798, at *1 (S.D.N.Y. Nov. 10, 1998).

Pursuant to Rule 37(b)(2)(C), MMA is also entitled to the costs of the current motion, including reasonable attorney's

18

fees.   Those costs are set out with particularity in the motion
papers, in the amount of $3,155.82.   (Olson Reply Aff. ¶¶ 9-11.)
Those costs are reasonable and will thus be awarded and assessed
against Metro.

### CONCLUSION

For the reasons explained above, Metro's motion to dismiss
MMA's claims alleged against it in the Amended Answer is **denied**.
MMA's motion is **granted** to the extent that Metro is required to
pay $7,005.82 to MMA by June 30, 2011, and to produce responsive
documents not yet produced by June 30, 2011.   If Metro fails to
comply with this Order, MMA should notify the Court, in which
event a default judgment on liability will be entered in favor
of MMA on MMA's claims against Metro.   MMA's motion is otherwise
**denied**.   The Clerk is directed to close Docket Nos. 43 and 46.
SO ORDERED.

Dated:      New York, New York
            May 27, 2011

                                    John G. Koeltl
                                    United States District Judge

19

Case 1:09-cv-06796-JGK    Document 77    Filed 10/07/11    Page 1 of 2

MASTROPIETRO-FRADE, LLC
Joshua D. Olsen (JO 1453)
*Attorneys for Third-Party Defendants*
The Chancery
190 Willis Avenue
Mineola, New York 11501
(516) 279-6699
(516) 279-6698 fax

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: __10- 7-11__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

METRO FOUNDATION CONTRACTORS INC,                    Case No.: 09-cv-6796 (JGK)

                    Plaintiff,

        -against-

ARCH INSURANCE COMPANY,                              **ORDER**

                    Defendant,
-------------------------------------------------------------------X
ARCH INSURANCE COMPANY,

                    Third-Party Plaintiff,

        -against-

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMANN and PATRICK QUIGLEY,

                    Third-Party Defendants.
-------------------------------------------------------------------X

        **UPON** the Opinion and Order of the Hon. John G. Koeltl, dated May 27, 2011, the

Affirmation of Joshua D. Olsen, dated July 5, 2011, the Declaration of Bryan Ha, dated July 8,

2011, and the Order of the Hon. John G. Koeltl, dated September 9, 2011; and after due

deliberation having been held thereon,

**ORDERED**, that an Order and Judgment of default is granted on the issue of liability in favor of third-party defendant Marco Martelli Associates, Inc. ("MMA") (incorrectly named in this action as "Marco Martelli & Associates, Inc.") and as against plaintiff Metro Foundation Contractors, Inc. ("Metro") in connection with the claims asserted by MMA by way of third-party defendants MMA, Martelli Real Estate, Inc., Marco Martelli, Madeline Martelli, Ronald Kuhlman and Patrick Quigley's (collectively "Third-Party Defendants") Amended Answer with Claims as against Metro, to wit, Third-Party Defendants' (1) first claim as against Metro for breach of contract, (2) second claim as against Metro for indemnification, (3) third claim as against Metro for indemnification and (4) fourth claim as against Metro for attorneys' fees.

IT IS FURTHER ORDERED, that an inquest shall be had at ~~time~~ designated by this Court to ascertain MMA's damages as against Metro; and *that the inquest be deferred at this point because of ongoing proceedings in this case;*

IT IS FURTHER ORDERED AND ADJUDGED, that, in connection with the monetary sanctions imposed as against Metro by way of the Opinion and Order of the Hon. John G. Koeltl, dated May 27, 2011, Third-Party Defendants are granted ~~Partial~~ *Partial* Judgment in the sum of $7,005.82, as against Metro, ~~with interest thereon from June 30, 2011~~, and that Third-Party Defendants ~~have~~ *[can]* execution thereon. *Because there is no just reason for delay, a final partial judgment should be entered.*

Dated: ~~September~~ *October 5, 2011* *for this amount in favor of Third Party Defendants and against Metro pursuant to Fed. R. Civ. P. 54(b)*

ENTER:

/s/ John G. Koeltl
Hon. John G. Koeltl

10/5/11

2

Case 1:09-cv-06796-KBF   Document 79   Filed 11/10/11   Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS, INC.,

                                                            09-cv-6796 (JGK)

               Plaintiff,

      -against-                       **NOTICE OF APPEAL**

ARCH INSURANCE COMPANY,

               Defendant.
-----------------------------------------------------------------------X
ARCH INSURANCE COMPANY,

               Third-Party Plaintiff,

      -against-

MARCO MARTELLI & ASSOCIATES, INC.,
ET AL.,

               Third-Party Defendants.
-----------------------------------------------------------------------X

      PLEASE TAKE NOTICE that plaintiff Metro Foundation Contractors, Inc. ("Metro")

hereby appeals to the United States Court of Appeals, Second Circuit, from the order and

judgment of the United States District Court, Southern District of New York (Koeltl, J.) entered

in the above-captioned action on October 11, 2011. This appeal is taken from each and every

part of said order and judgment by which Metro is aggrieved.

Dated: New York, New York
       November 8, 2011

                                     BRYAN HA
                                     Attorney At Law
                                     799 Broadway, Suite 336
                                     New York, New York 10003
                                     Tel: (212) 537-6971
                                     Fax: (212) 981-6800
                                     Attorney for Plaintiff-Appellant
                                     Metro Foundation Contractors, Inc.

**Intentionally Left Blank Page**
**Appendix Continues on Next Page A300**

Case 1:09-cv-06796-KBF   Document 97   Filed 03/28/12   Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED MAR 2 8 2012
```

METRO FOUNDATION CONTRACTORS, INC.,

                    Plaintiff,                    09 Civ. 6796 (KBF)

        -v-                                        ORDER

ARCH INSURANCE COMPANY,

                    Defendant,

----------------------------------------- X

ARCH INSURANCE COMPANY,

                    Third-Party Plaintiff,

        -v-

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATES, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMANN and PATRICK QUIGLEY,

                    Third-Party Defendants.

----------------------------------------- X

KATHERINE B. FORREST, District Judge:

    On February 17, 2012, this Court ordered the parties to

complete all document discovery by March 22, 2012 and stated

that failure to abide by the deadline may result in sanctions

including striking an answer or dismissal of the action.  Having

received a letter from third-party defendants stating that

plaintiffs have failed to abide by this Court's February 17,

2012 Order,

Plaintiff is ORDERED TO SHOW CAUSE why the Court should not dismiss its action pursuant to Rule 37 of the Federal Rules of Civil Procedure.

The parties shall appear for a hearing on this matter, and Metro's current corporate status, on April 3, 2012, at 12:00 p.m.

SO ORDERED.

Dated:     New York, New York
           March 28, 2012

K— B. Forrest

KATHERINE B. FORREST
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
METRO FOUNDATION CONTRACTORS, INC.,          Case No. 09-cv-6796 (KBF)

                              Plaintiff,

          -against-

ARCH INSURANCE COMPANY,

                              Defendant.
------------------------------------------------------------------------X

## DECLARATION OF BRYAN HA IN
## RESPONSE TO ORDER TO SHOW CAUSE

          BRYAN HA, an attorney duly licensed to practice law in the State of New York,
affirms the following to be true under penalty of perjury:

          1.      I am counsel for plaintiff Metro Foundation Contractors, Inc. ("Metro") in the
above-referenced matter. I make this affirmation based on my personal knowledge and the files
and records I maintain in connection with this matter and communications with my client.

          2.      I respectfully submit this declaration on behalf of Metro in response to the order
to show cause issued by the Court on March 28, 2012, pursuant to a letter from third-party
defendants' counsel sent to the Court on March 27, 2012. (Metro responded to the letter from
third-party defendants' counsel on March 28, 2012, within the 72-hour time limit for responding
to such letters provided in the Court's Individual Practice Rule 2.F. However, the Court had
already issued the order to show cause before receiving Metro's response. A true and correct
copy of Metro's letter response sent to the Court on March 28, 2012, with the cover e-mail, is
attached hereto as Exhibit A).

### A. Metro Has Fully Responded To Defendant And Third-Party Defendants' Supplemental Discovery Demands

3.     On March 22, 2012, in response to defendant Arch Insurance Company's

("Arch") and third-party defendants' supplemental document demands, Metro's representative

Frank DeMartino submitted a declaration in which he stated, among other things, the following:

3. At the time of the Project, Metro had two offices, one located at 138-01 Springfield Boulevard, Jamaica, New York, and one located at 105-11 Crossbay Boulevard, Ozone Park, New York. Over the past couple of years, both of these offices were closed. Metro currently has an office located at 137 Liberty Avenue, Suite 2D, Brooklyn, New York.

4. I have conducted a diligent search for the vendor/subcontractor files associated with the Project that have been requested by Arch and third party defendants. I have searched through all the boxes of documents that we have in our possession, custody or control. However, I have not been able to locate these files. I believe that they were either lost, misplaced, or inadvertently disposed of during the closing down and moving of Metro's offices. As I recall, there were approximately five (5) of these vendor/subcontractor files. The last time I saw these files were when I delivered all the files for the Project to my attorney Bryan Ha, with the exception of these vendor/subcontractor files, sometime in or about July or August 2010.

5. Further, in reviewing the discovery materials that have been produced by Arch to date, it appears that Metro also no longer has the Arch correspondence file where all the letters between Metro and Arch concerning the Project were kept. In particular, there is one or two letters from Metro to Arch that I believe have not been produced. I recall specifically a letter which outlined a summary of financial losses incurred by MMA which impacted their ability to meet their obligations.

6. With regard to estimating and cost files, Metro did not maintain such files in connection with the Project. Metro's detailed proposals memorialize how Metro estimated and approached the Project.

7. It should be noted that Metro did not use its contracts with its vendors/subcontractors as a basis for determining the value of the work that Metro performed on the Project under its contract with MMA that is at issue in this case. Costs are not a measure of work performed. The value of the work that Metro performed under its contract with MMA was negotiated and determined based on Metro and MMA's contract and scope of work alone, measured by percentage of work performed through the

        professional opinions and experiences of myself and opposing parties at
        MMA. Metro's vendors/subcontractors were not involved in this
        requisition negotiation process with MMA, and their scope of work did
        not correspond to the scope of work in Metro's contract with MMA. The
        values of the work performed by Metro were arrived at through
        negotiations between Metro and MMA which were subsequently adjusted,
        approved, and certified by the bank and the architect. The approved
        values by the bank and architect represent the amounts due and owing to
        Metro for its work on the Project under its contract with MMA.

    8. All of Metro's project files for the Project (except for the
        vendor/subcontractor files discussed above) have previously been
        produced. All documents concerning the work and extra work performed
        by Metro pursuant to its contract and any change orders have previously
        been produced.

(A true and correct copy of Mr. DeMartino's declaration served on March 22, 2012, is attached

hereto as Exhibit B).

    4.     Thus Metro has fully responded to Arch's and third-party defendants' document

demands. To the extent Arch's and third-party defendants' counsel question Mr. DeMartino's

statements, even though they really have no basis to do so, that can be explored at Mr.

DeMartino's deposition, where they can query him about his statements and his knowledge of

the documents and his efforts to locate them.

    5.     Moreover, it is also Metro's position that there is no prejudice to Arch or third-

party defendants from not having the vendor/subcontractor files that Metro has not been able to

produce. As stated in Metro's previous submissions to the Court, earlier in the litigation there

was an issue as to the offset, if any, that third-party defendant Marco Martelli Associates, Inc.

("MMA") may be entitled to for the payments that it made directly to Metro's subcontractors/

vendors using trust funds that it had received from the project owner for Metro's work.[1] Metro

---

[1] In its answer, Arch purports to incorporate by reference the defenses asserted by MMA in its
answer in the state court action, Metro Foundation Contractors, Inc. v. Marco Martelli
Associates, Inc., N.Y. Sup. Ct., N.Y. County, Index No. 600520/09 (Schweitzer, J.) ("State Court
Action"). However, not all the defenses are applicable, and Arch does not specify which

3

disputed the propriety and amount of the payments, arguing among other things that the funds
were wrongfully withheld from Metro in violation of the Prompt Pay Act and that the payments
to the subcontractors/vendors constituted diversion of trust funds in violation of Article 3-A of
the New York Lien Law.

6.      These issues have now been resolved, however. On January 14, 2011, as a result
of Metro's failure to produce documents relating to its subcontractors/vendors, the state court
issued an order barring Metro "from introducing as evidence at trial any proof to substantiate its
allegations that [MMA] made certain improper payments to [Metro'] vendors and/or
subcontractors[.]" (A true and correct copy of the state court's decision issued on January 14,
2011, is attached hereto as Exhibit C). This decision, which effectively barred Metro from
disputing the amount or the propriety of the payments allegedly made by MMA to Metro's
subcontractors/vendors in connection with the Project, should be accorded preclusive effect in
this Court under the Full Faith and Credit Clause and under the doctrine of collateral estoppel.
See Burgos v. Hopkins, 14 F.3d 787, 790 (2rd Cir. 1994) ("Under the Constitution's Full Faith
and Credit Clause . . . federal courts must accord state court judgments the same preclusive effect
as other courts within the state"; plaintiff's issues "precluded by collateral estoppel" because "a
court has already decided the issues he now raises"). Moreover, as a result of the same failure by
Metro to produce documents relating to its subcontractors/vendors, Judge Koeltl entered an order
in this action precluding Metro from relying on these documents and subsequently granted a
default judgment as to liability in favor of MMA on its claims against Metro. (A true and correct

particular defense(s) it seeks to incorporate. Nor does Arch attach a copy of MMA's answer in
the State Court Action. Under these circumstances, Arch's attempt to incorporate MMA's
defenses is improper and fails to meet Fed.R. Civ. P. 8(a)'s pleading requirement, and Metro
intends to cross-move for an order dismissing or striking same in connection with its upcoming
opposition to Arch's motion for summary judgment.

4

copy of the order and judgment entered by Judge Koeltl on October 7, 2011, is attached hereto as Exhibit D).

7.      Accordingly, the issues concerning the propriety and the correctness of the amount of the payments to Metro's subcontractors/vendors have been resolved against Metro. Importantly, in light of Arch failure to properly incorporate MMA's defenses (see supra fn.1), it would appear that there is no basis for Arch to claim any offset based on its principal MMA's payments to Metro's subcontractors/vendors. As noted above, Metro intends to cross-move for an order striking or dismissing Arch's answer to the extent it purports to incorporate MMA's defenses.

8.      It should also be noted that Metro has perfected an appeal to the Second Circuit Court of Appeals challenging the Court's exercise of subject matter jurisdiction over MMA's claims against Metro. Metro Foundation Contractors, Inc. v. Arch Ins. Co., Second Cir. Ct. of App. Dkt. No. 11-4775. This appeal, which is currently pending, impacts the default judgment in favor of MMA and the discovery orders relating to MMA's claims that have been entered by the Court (as well as Arch's pending motion for summary judgment, as it relies on the default judgment entered in favor of MMA).

**B.      Metro's Current Corporate Status**

9.      Metro was "dissolved by proclamation" on or about January 25, 2012, due to the fact that it had not filed corporate tax returns in recent years. A corporation dissolved by proclamation as Metro was may be reinstated upon application to the Department of State. Metro will make this application and fully expects to be reinstated

10.     Metro's current corporate status has no bearing on its standing and capacity to maintain this action. New York Business Law § 1006 provides, in pertinent part:

5

(a) A dissolved corporation . . . may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place, except as otherwise provided in this chapter or by court order. In particular, and without limiting the generality of the foregoing:

. . .

(4) The corporation may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it.

(5) The dissolution of a corporation shall not affect any remedy available to or against such corporation . . . for any right or claim existing or any liability incurred before such dissolution [except in one circumstance not applicable here].

See 172 East 122 Street Tenants Assoc. v. Schwarz, 73 N.Y.2d 340 (N.Y. Ct. Appeals 1989)

(under N.Y. Bus. Law § 1006, a corporation that had been dissolved by proclamation "was

entitled to pursue any remedy available to it" concerning property "it owned prior to the

dissolution"); Independent Inv. Prot. League v. Time, Inc., 50 N.Y.2d 259, 264 (N.Y. Ct.

Appeals 1980) (under N.Y. Bus. Law § 1006, the "rights and remedies of the shareholders

existing prior to dissolution are viewed as if the dissolution never occurred").

11.     For the foregoing reasons, Metro respectfully submits that there is no basis for

dismissing this action pursuant to Fed. R. Civ. P. 37.

Dated: New York, New York
        April 2, 2012

BRYAN HA

6

Bryan Ha <bhanyc@gmail.com

 **Metro Foundation Contractors, Inc. v. Arch Ins. Co. 09 CV 6796 (KBF)**
4 messages

Bryan Ha <bhanyc@gmail.com>                                      Wed, Mar 28, 2012 at 4:22 PI
To: ForrestNYSDChambers@nysd.uscourts.gov
Cc: "Novak, Lawrence" <lnovak@tlggr.com>, Josh Olsen <jdo@mflawllc.com>

Please see attached response to the letter of third-party defendants' counsel dated March 27, 2012.

Respectfully submitted,

Bryan Ha
Attorney for Plaintiff
Metro Foundation Contractors, Inc.

--

The preceding e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s) named above. If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete all copies of it from your computer system. Any use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

 **LtrJudgeForrest-3-28-12.pdf**
640K

# BRYAN HA

ATTORNEY AT LAW
1515 BROADWAY, 11ᵀᴴ FL.
NEW YORK, NEW YORK 10036
TELEPHONE: (212) 537-6971  MOBILE: (646) 245-7443  FACSIMILE: (212) 981-6800
E-MAIL: bhanyc@gmail.com

March 28, 2012

**By E-Mail: ForrestNYSDChambers@nysd.uscourt.gov**
Honorable Katherine B. Forrest
U.S. District Judge, SDNY
United States Courthouse
500 Pearl Street
New York, New York 11201

Re: Metro Foundation Contractors, Inc. v. Arch Ins. Co., 09 CV 6796 (KBF)

Dear Judge Forrest:

I represent plaintiff Metro Foundation Contractors, Inc. ("Metro") in the above-referenced matter. I respectfully write in response to counsel for the third-party defendants' letter to the Court dated March 27, 2012, which requests a telephone conference to discuss discovery.

Rule 2.F of the Court's Individual Practices states that "[a]ny party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute." On March 27, 2012, I participated in a conference call with third-party defendants' counsel and counsel for defendant Arch Insurance Company ("Arch") to discuss their purported issues with Metro's discovery response. During the call some questions were raised which required me to consult with my client before I could provide a response. I informed counsel that I would consult with my client that day and get back to them. They agreed. However, before I could do so, and without any further communication, third-party defendants' counsel sent his letter to the Court that very day requesting a conference. I believe that this conduct violates Rule 2.F's requirement that the parties "confer in good faith . . . in an effort to resolve the dispute." It appears that counsel viewed the meet-and-confer as some perfunctory exercise and had no real intention of making any effort to resolve the dispute before seeking court intervention. Given this failure to comply with Rule 2.F, the request for a conference should be denied.

In any event, counsel's letter fails to identify any discovery issue that requires a conference. In response to Arch's and third-party defendants' supplemental document demands, Metro's representative Frank DeMartino submitted a declaration in which he stated, among other things, the following:

> 3. At the time of the Project, Metro had two offices, one located at 138-01 Springfield Boulevard, Jamaica, New York, and one located at 105-11 Crossbay Boulevard, Ozone Park, New York. Over the past couple of years, both of these offices were closed. Metro currently has an office

Honorable Katherine B. Forrest
Page 2 of 4
March 28, 2012

located at 137 Liberty Avenue, Suite 2D, Brooklyn, New York.

4. I have conducted a diligent search for the vendor/subcontractor files associated with the Project that have been requested by Arch and third party defendants. I have searched through all the boxes of documents that we have in our possession, custody or control. However, I have not been able to locate these files. I believe that they were either lost, misplaced, or inadvertently disposed of during the closing down and moving of Metro's offices. As I recall, there were approximately five (5) of these vendor/subcontractor files. The last time I saw these files were when I delivered all the files for the Project to my attorney Bryan Ha, with the exception of these vendor/subcontractor files, sometime in or about July or August 2010.

5. Further, in reviewing the discovery materials that have been produced by Arch to date, it appears that Metro also no longer has the Arch correspondence file where all the letters between Metro and Arch concerning the Project were kept. In particular, there is one or two letters from Metro to Arch that I believe have not been produced. I recall specifically a letter which outlined a summary of financial losses incurred by MMA which impacted their ability to meet their obligations.

6. With regard to estimating and cost files, Metro did not maintain such files in connection with the Project. Metro's detailed proposals memorialize how Metro estimated and approached the Project.

7. It should be noted that Metro did not use its contracts with its vendors/subcontractors as a basis for determining the value of the work that Metro performed on the Project under its contract with MMA that is at issue in this case. Costs are not a measure of work performed. The value of the work that Metro performed under its contract with MMA was negotiated and determined based on Metro and MMA's contract and scope of work alone, measured by percentage of work performed through the professional opinions and experiences of myself and opposing parties at MMA. Metro's vendors/subcontractors were not involved in this requisition negotiation process with MMA, and their scope of work did not correspond to the scope of work in Metro's contract with MMA. The values of the work performed by Metro were arrived at through negotiations between Metro and MMA which were subsequently adjusted, approved, and certified by the bank and the architect. The approved values by the bank and architect represent the amounts due and owing to Metro for its work on the Project under its contract with MMA.

8. All of Metro's project files for the Project (except for the

Honorable Katherine B. Forrest
Page 3 of 4
March 28, 2012

> vendor/subcontractor files discussed above) have previously been
> produced. All documents concerning the work and extra work performed
> by Metro pursuant to its contract and any change orders have previously
> been produced.

(A true and correct copy of Mr. DeMartino's declaration is attached hereto, without the exhibits, for ease of reference). Thus Metro has fully responded to the document demands. To the extent Arch's and third-party defendants' counsel question Mr. DeMartino's statements, even though they really have no basis to do so, that can be explored at Mr. DeMartino's deposition, where they can query him about his statements and his knowledge of the documents and his efforts to locate them. A conference is not necessary.

Finally, third-party defendants' counsel notes that Metro was "dissolved by proclamation" on or about January 25, 2012. Counsel then asserts, without any citation, that "Metro's current status would be a bar to the maintenance of this action by Metro." Counsel apparently did not do any research on this issue before making this representation to the Court. New York Business Law § 1006 provides, in pertinent part:

> (a) A dissolved corporation . . . may continue to function for the purpose of
> winding up the affairs of the corporation in the same manner as if the
> dissolution had not taken place, except as otherwise provided in this
> chapter or by court order. In particular, and without limiting the generality
> of the foregoing:
> . . .
> (4) The corporation may sue or be sued in all courts and participate in
> actions and proceedings, whether judicial, administrative, arbitrative or
> otherwise, in its corporate name, and process may be served by or upon it.
>
> (5) The dissolution of a corporation shall not affect any remedy available
> to or against such corporation . . . for any right or claim existing or any
> liability incurred before such dissolution [except in one circumstance not
> applicable here].

See 172 East 122 Street Tenants Assoc. v. Schwarz, 73 N.Y.2d 340 (N.Y. Ct. Appeals 1989) (under N.Y. Bus. Law § 1006, a corporation that had been dissolved by proclamation "was entitled to pursue any remedy available to it" concerning property "it owned prior to the dissolution"); Independent Inv. Prot. League v. Time, Inc., 50 N.Y.2d 259, 264 (N.Y. Ct. Appeals 1980) (under N.Y. Bus. Law § 1006, the "rights and remedies of the shareholders existing prior to dissolution are viewed as if the dissolution never occurred").

Thus Metro's "current status" has no bearing on its standing and capacity to maintain this action. It should be noted that a corporation dissolved by proclamation as Metro was may be reinstated upon application to the Department of State. Metro will make this application and fully expects to be reinstated.

Honorable Katherine B. Forrest
Page 4 of 4
March 28, 2012


      For the reasons stated above, Metro respectfully submits that opposing counsel's request for a conference should be denied.

      Thank you for Your Honor's consideration of this matter.

          Respectfully submitted,

          Bryan Ha

Attachment
cc: Lawrence Novak (via e-mail)
    Joshua Olsen (via e-mail)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

METRO FOUNDATION CONTRACTORS, INC.,                    09-CV-6796 (KBF)

                                    Plaintiff,

                    -against-

ARCH INSURANCE COMPANY,

                                    Defendant.
-----------------------------------------------------------------X
ARCH INSURANCE COMPANY,

                                    Third-Party Plaintiff,

                    -against-

MARCO MARTELLI & ASSOCIATES, INC.,
MARTELLI REAL ESTATE, INC., MARCO
MARTELLI, MADELINE MARTELLI, RONALD
KUHLMAN and PATRICK QUIGLEY,

                                    Third-Party Defendants.
-----------------------------------------------------------------X

## DECLARATION OF FRANK DEMARTINO

FRANK DEMARTINO hereby declares the following to be true under penalty of perjury:

1.      I am over the age of eighteen (18) years.  I was plaintiff Metro Foundation

Contractors, Inc.'s ("Metro") Project Executive on the project to construct a nursing home facility at

214-218 W. Houston Street, New York, New York (the "Project").  I make this declaration based

upon my personal knowledge.

2.      I respectfully submit this declaration in response to plaintiff Arch Insurance

Company's ("Arch") and third-party defendants Marco Martelli Associates, Inc.'s ("MMA"),

Martelli Real Estate, Inc.'s, Marco Martelli's, Madeline Martelli's, Ronald Kuhlmann's and Patrick

Quigley's (collectively, "third-party defendants") supplemental demands for production of documents.

3.    At the time of the Project, Metro had two offices, one located at 138-01 Springfield Boulevard, Jamaica, New York, and one located at 105-11 Crossbay Boulevard, Ozone Park, New York. Over the past couple of years, both of these offices were closed. Metro currently has an office located at 137 Liberty Avenue, Suite 2D, Brooklyn, New York.

4.    I have conducted a diligent search for the vendor-subcontractor files associated with the Project that have been requested by Arch and third party defendants. I have searched through all the boxes of documents that we have in our possession, custody or control. However, I have not been able to locate these files. I believe that they were either lost, misplaced, or inadvertently disposed of during the closing down and moving of Metro's offices. As I recall, there were approximately five (5) of these vendor/subcontractor files. The last time I saw these files were when I delivered all the files for the Project to my attorney Bryan Ha, with the exception of these vendor/subcontractor files, sometime in or about July or August 2010.

5.    Further, in reviewing the discovery materials that have been produced by Arch to date, it appears that Metro also no longer has the Arch correspondence file where all the letters between Metro and Arch concerning the Project were kept. In particular, there is one or two letters from Metro to Arch that I believe have not been produced. I recall specifically a letter which outlined a summary of financial losses incurred by MMA which impacted their ability to meet their obligations.

6.    With regard to estimating and cost files, Metro did not maintain such files in

2

connection with the Project. Metro's detailed proposals memorialize how Metro estimated and approached the Project.

7.    It should be noted that Metro did not use its contracts with its vendors/subcontractors as a basis for determining the value of the work that Metro performed on the Project under its contract with MMA that is at issue in this case. Costs are not a measure of work performed. The value of the work that Metro performed under its contract with MMA was negotiated and determined based on Metro and MMA's contract and scope of work alone, measured by percentage of work performed through the professional opinions and experiences of myself and opposing parties at MMA. Metro's vendors/subcontractors were not involved in this requisition negotiation process with MMA, and their scope of work did not correspond to the scope of work in Metro's contract with MMA. The values of the work performed by Metro were arrived at through negotiations between Metro and MMA which were subsequently adjusted, approved, and certified by the bank and the architect. The approved values by the bank and architect represent the amounts due and owing to Metro for its work on the Project under its contract with MMA.

8.    All of Metro's project files for the Project (except for the vendor/subcontractor files discussed above) have previously been produced. All documents concerning the work and extra work performed by Metro pursuant to its contract and any change orders have previously been produced.

9.    Attached hereto for production are the following documents:

   (a)    Letter from State of New York Insurance Department to Metro dated May 11, 2009.

3

(b)    Letter from Metro's counsel to the State of New York Insurance Department dated May 28, 2009.

(c)    Letter from the owner of the Project, Village Care of New York ("VCNY"), to Metro dated March 4, 2011.

(d)    E-mail from Metro to VCNY dated May 4, 2011.

Date:   Queens, New York
        March 22, 2012

FRANK DEMARTINO

4



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**

David A. Paterson
Governor

Eric R. Dinallo
Superintendent

METRO FOUNDATION CONTRACTORS
ANTHONY LAZZARO
138-01 SPRINGFIELD BLVD, 2ND FLOOR
JAMAICA, NY 11413

May 11, 2009

RE: Dept. File #: CSB-657545.
      Your Complaint Against:

Dear Sir/Madam:

This letter refers to the complaint you filed with this Department.

The information received indicates that you have retained an attorney to act on your behalf in connection with this matter. As a result, we require a letter from your attorney authorizing us to pursue the investigation of your complaint.

Please also provide the name of the licensed insurance company involved.

Please **RETURN THIS LETTER AND ANY ENCLOSED MATERIAL** with the authorization letter.

We will not take any further action until we receive this information.

Sincerely,

CONSUMER SERVICES BUREAU
PROCESSING UNIT
212 480-6411
212-480-4736 (Fax)

25 Beaver Street    New York, New York 10004    http://www.ins.state.ny.us

# BRYAN HA

ATTORNEY AT LAW

271 MADISON AVENUE, 20TH FLOOR
NEW YORK, NEW YORK 10016
TELEPHONE: (212) 537-6971   MOBILE: (646) 245-7443   FACSIMILE: (212) 382-3610
E-MAIL: bhanyc@gmail.com

May 28, 2009

VIA FACSIMILE: 212-480-4735
Consumer Services Bureau
Processing Unit
State of New York Insurance Department
25 Beaver Street
New York, New York 10004

> Re:   Metro Foundation Contractors, Inc. v. Marco Martelli Assocs. Inc.
> N.Y. Sup. Ct., N.Y. Co., Index No. 600520/09

Dear Sir or Madam:

I am writing in response to a letter from your office dated May 11, 2009, concerning a complaint against Arch Insurance Group ("Arch") filed by Metro Foundation Contractors, Inc. ("Metro") with the Insurance Department (Dept. File # CSB-657545). A copy of the letter is enclosed herewith for ease of reference.

Please be advised that I have not been retained to represent and do not and have not at any time represented Metro in connection with that complaint. To my knowledge, no attorney has been retained to represent Metro in connection with that complaint. For your information, I am currently representing Metro in a litigation matter pending in New York Supreme Court titled Metro Foundation Contractors, Inc. v. Marco Martelli Assocs., Inc., N.Y. Sup. Ct., N.Y. Co., Index No. 600520/09 (Schweitzer, J.). Arch is not named as a party in that action and there is no claim against Arch in that action. That action is solely against Marco Martelli Associates, Inc., the principal on a surety bond issued by Arch in connection with the underlying construction project. There is no surety bond claim asserted in that action.

Accordingly, there is no need for any "authorization" from me for the Insurance Department to pursue an investigation of Metro's complaint against Arch. Metro filed the complaint on its own behalf and is proceeding on its own behalf on that complaint.

Very truly yours,

Bryan Ha

Enclosure