# 15-3105

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

———————————

**ANDREW CARLIN,**
individually and on behalf of a class,

Plaintiff-Appellant,

**-v.-**

**DAVIDSON FINK LLP**

Defendant-Appellee.

———————————

On Appeal from the United States District Court for the
Eastern District of New York, No. 2:13-cv-06062
(Hon. Joanna Seybert, U.S.D.J.)

———————————

**PLAINTIFF-APPELLANT ANDREW CARLIN'S
REPLY BRIEF**

———————————

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    DAVIDSON WAS ACTING AS A DEBT COLLECTOR. . . . . . . . . . 3

        A.    Contrary to Its Argument, Davidson Asked for Money. . . . . . . 4

        B.    The Weight of Authority Supports Plaintiff, not Davidson. . . . . 7

        C.    There is no FDCPA Exemption for Persons Trying to Collect Secured Debt. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.    The "Conditional" Nature of the Request for a Deficiency Does Not Make it Any Less an Attempt to Collect Money. . . . . . . . 15

        E.    There is No FDCPA Exemption for Debt Collector Conduct Following the Filing of a Lawsuit. . . . . . . . . . . . . . . . . . . . . . 16

        F.    Defendant's Arguments Based on the New York Real Property Law Are Meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    II.    DAVIDSON'S ALTERNATIVE GROUNDS FOR AFFIRMANCE LACK MERIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        A. There Was an "Initial Communication". . . . . . . . . . . . . . . . . . 23

            1. The "notice of debt". . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

            2. Carlin's July 12, 2013 letter to Davidson. . . . . . . . . . . . . 25

            3. Davidson's letter with "payoff amount". . . . . . . . . . . . . . 27

        B. Davidson Never Provided the Correct "Amount of the Debt" Presently Due Together with the Other §1692 Disclosures. . . . . . . . . 27

    III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE REQUIRED BY Rule 32(a). . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

## CASES

*Alibrandi v. Financial Outsourcing Services, Inc.,* 333 F.3d 82, 87 (2d Cir. 2003)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11, 23

*Beadle v. Haughey*, 04-272, 2005 WL 300060 (D.N.H., Feb. 9, 2005). . . . . . . . . . 8

*Bernstein v. Howe*, IP 02–192–C–K/H,  2003 WL 1702254, *5 (S.D.Ind., March
31, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Birster v. American Home Mortgage Servicing, Inc.,* 11-13574, 2012
U.S.App.LEXIS 14660  (11th Cir., July 18, 2012). . . . . . . . . . . . . . . . . . . . . . . . 8

*Boyd v. J. E. Robert Co.*, 05cv2455, 2013 WL 5436969 (E.D.N.Y., Sept. 27, 2013)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Calvert v. Alessi & Koenig,*  2:11cv00333,  2013 WL 592906 (D.Nev. Feb. 12,
2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Carubia v. Cohen & Slamowitz*, 1:14cv501,   2015 WL 348205 (N.D.N.Y., Jan.
23, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Castro v. Green Tree Servicing LLC, supra*, No. 10–CV–7211 (ER), 2013 WL
4105196, *6 (S.D.N.Y., Aug. 14, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Cocco v. Bank of America Home Loans*, 1:12cv1576, 2012 WL 6021326
(N.D.N.Y. Dec. 3, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Connecticut ex rel. Blumenthal v. U.S. Dept. of Interior*, 228 F.3d 82, 88 (2d Cir.
2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Davis v. Midland Funding, LLC*, 2:13cv2316, 2014 WL 3889971 (E.D.Cal., Aug.
7, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Derisme v. Hunt Leibert Jacobson P.C.,* 880 F.Supp.2d 311 (D.Conn. 2012),
reconsideration denied, No.l 3:10cv23, 2013 WL 1187853 (D.Conn., Mar. 21,
2013), appeal dismissed, 13-1545 (2d Cir., Jan. 15, 2014). . . . . . . . . . . . . . . 16, 20

*Deutsche Bank Trust Co. Americas v. Vitellas*,  131 A.D.3d 52, 13 N.Y.S.3d 163,
172-73  (2d Dept. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Doughty v. Holder*,  2:13cv295, 2014 WL 220832 (E.D.Wash., Jan. 21, 2014). . . . 8

*Flushing Sav. Bank, FSB v. Bitar*, 25 N.Y.3d 307, 33 N.E.3d 1282, 12 N.Y.S.3d 12 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Freire v. Aldridge Connors, LLP*, 994 F.Supp.2d 1284 (S.D.Fla. 2014). . . . . . . . 24

*Fritz v. Resurgent Capital Services, LP*, No. 11–CV–3300 FB VVP, 2013 WL 3821479, *4 (E.D.N.Y. July 24, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Gabriele v. American Home Mortg. Servicing, Inc.,* 503 Fed.Appx. 89, 95-96 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Garfield v. Ocwen Loan Servicing*, LLC, No. 15–527, 2016 WL 26631 (2d Cir., Jan. 4, 2016).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010). . . . . . . . . . . . 8

*Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 455, 461 (6th Cir. 2013)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12, 13

*Hart v. FCI Lender Services, Inc.,* 797 F.3d 219 (2d Cir. 2015). . . . . . . . . . . . . . 23

*Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). . . . . . . . . . . . . . . . . . . . 2, 16, 18

*Hooks v. Forman Holt Eliades & Ravin LLC*, 11Civ.2767, 2015 WL 5333513, *10 (S.D.N.Y., Sept. 14, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hulse v. Ocwen Federal Bank,* 195 F.Supp.2d 1188 (D.Ore. 2002). . . . . . . . . . . . 8

*In re Ganas*, 513 B.R. 394, 402 (Bankr.E.D.Cal. 2014). . . . . . . . . . . . . . . . . . . 9

*In re Humes*, 468 B.R. 346 (Bankr.E.D.Ark. 2011), later opinion, 496 B.R. 557 (Bankr.E.D.Ark. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kaltenbach v. Richards,* 464 F.3d 524, 529 (5th Cir. 2006). . . . . . . . . . . . . . . . . 7

*Kropelnicki v. Siegel*, 290 F.3d 118 (2nd Cir.2002). . . . . . . . . . . . . . . . . . . . . 20

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Muldrow v. EMC Mortg. Corp.*, 657 F.Supp.2d 171, 175 (D.D.C. 2009). . . . . . . . 9

*Natividad v. Wells Fargo Bank, N.A.*, 3:12cv3646, 2013 WL 2299601 (N.D.Cal., May 24, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Nikkel v. Wakefield & Associates, Inc.*, 10cv2411, 2011 WL 4479109 (D.Colo., Sept. 26, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 24

*Overton v. Foutty & Foutty, LLP*, 1:07cv0274, 2007 WL 2413026 (S.D.Ind., Aug. 21, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Pettway v. Harmon Law Offices, P.C.,* 03cv10932, 2005 WL 2365331, *6 (D.Mass., Sept. 27, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) . . . . . . 16

*Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 233-36 (3d Cir. 2005). . . . . . . 7

*Proa v. Wells Fargo Bank*, 13cv0759, 2013 WL 4508364 (S.D.Cal. Aug. 22, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed.Appx. 254 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Rinaldi v. Green Tree Servicing LLC,* 14cv8351, 2015 WL 5474115 (S.D.N.Y., June 8, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Romea v. Heiberger & Assocs.,* 163 F.3d 111, 116 (2d Cir. 1998). . . . . 5, 11, 22, 24

*Roth v. CitiMortgage Inc.*, 12cv2446, 2013 WL 5205775 (E.D.N.Y., Sept. 11, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . 7

*Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 123 (Colo. 1992). . . . . 8, 10, 11, 12

*Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D.Minn. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

v

*Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n. 9 (2004). . . . . . . . . . . . . . . . . . 11

*Spencer v. Hendersen-Webb, Inc.*, 81 F.Supp.2d 582, 591 (D.Md. 1999). . . . . . . 27

*Stamper v. Wilson & Assoc., PLLC*, 3:09cv270, 2010 WL 1408585 (E.D.Tenn., March 31, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc). . . . . . . . 19

*Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70 (2d Cir. 2015). . . . . 2, 19

*Tolentino v. Friedman*, 833 F.Supp. 697, 698-99 (N.D.Ill. 1993), aff'd in pertinent part, 46 F.3d 645 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 27

*Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323 (6th Cir. 2012). . . . . . . . . 7

*Walsh v. Law Offices of Howard Lee Schiff, P.C.,* 3:11cv1111, 2012 WL 4372251 (D.Conn. Sept. 24, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006). . . . . . 7

## RULES, STATUTES, AND REGULATIONS

15 U.S.C. §1692 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 U.S.C. §1692a(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15 U.S.C. §1692a(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10-13

15 U.S.C. §1692a(6)(F)(iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. §1692(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15 U.S.C. §1692e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 17, 24

15 U.S.C. §1692e(11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15 U.S.C. §1692e(15). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 23

15 U.S.C. §1692f(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 U.S.C. §1692g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 U.S.C. §1692g(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 U.S.C. §1692i. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 13, 18

15 U.S.C. §1692i(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

H.R. Rep. 99-405, 1986 U.S.C.C.A.N. 1752, 1757. . . . . . . . . . . . . . . . . . . 18

McKinney's Uniform Commercial Code § 9-604. . . . . . . . . . . . . . . . . . . 14

*Note, The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors the Protection They Deserve From Abusive Foreclosure Practices*, 94 Minn. L.Rev. 1269, 1297–98 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Repairing a Broken System, Protecting Consumers in Debt Collection Litigation and Arbitration,* Federal Trade Commission, July 2010, p. i . . . . . . . . . . . . . . . 21

RPAPL §1301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

RPAPL §1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## SUMMARY OF THE ARGUMENT

Davidson's entire brief is based on a false factual premise, that Davidson was not collecting a debt in its foreclosure suit. Davidson clearly sought to collect money. Davidson's foreclosure complaint referred to a deficiency judgment, sought attorney's fees, and gratuitously included a "notice of debt" repeatedly referring to "the debt." Davidson then sent Carlin a letter enclosing a "payoff statement" seeking $205,281.79.

Davidson's legal arguments also lack merit. There is no implicit exemption for mortgage foreclosures in the third sentence of 15 U.S.C. §1692a(6) – "For the purpose of section 1692f(6) of this title, such term ['debt collector'] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." The quoted language makes clear that repossession agencies repossessing automobiles and other collateral without communication with consumers are covered by the FDCPA for certain purposes. It does not create an exemption or remove from the scope of the FDCPA anyone engaged in "debt collection" within the ordinary meaning of that term.

Seeking $205,281.79 on a consumer loan is "debt collection." The fact that recovery of a deficiency is "contingent" on the value of the property and the foreclosure plaintiff prevailing does not negate its character as "debt collection." Collection litigation is covered by the FDCPA, even if the defendant prevails and the debt collector recovers nothing.

1

There is also no merit to Davidson's argument that collection activity after the filing of a lawsuit is subject to some sort of nonstatutory FDCPA exemption. The FDCPA expressly regulates litigation conduct.    The Supreme Court and this Court have  held, consistently with the legislative history of the FDCPA,  that filing collection lawsuits is "debt collection" covered by the statute.    *Heintz v. Jenkins*, 514 U.S. 291, 292  (1995);  *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70 (2d Cir. 2015).    *Heintz* would have been decided the other way if Davidson's argument that court rules provide sufficient protection during the course of litigation was correct.

Finally, Davidson's "alternative grounds for affirmance" represent a meritless effort to have the Court authorize debt collectors to engage in an extended series of communications with defendants in consumer collection lawsuits without ever complying with 15 U.S.C. §1692g.

2

## ARGUMENT

## I.  DAVIDSON WAS ACTING AS A DEBT COLLECTOR

Davidson admits that it's complaint sought "the costs and reasonable attorneys' fees incurred directly from and solely because of the Foreclosure Action (if provided for in the note/loan agreement or mortgage)." (Def.Br., p. 2) Paragraph 6(E) of the note Davidson sought to enforce does require the borrower to pay costs and attorney's fees. (App. 26)

Davidson also acknowledges that its foreclosure complaint asked (request for relief, ¶6) the state court to have the selling officer to "specify the amount of [such] deficiency in his report of sale so that plaintiff may thereafter be able to make application to this Court . . . for a judgment against the defendant(s) . . . for any deficiency . . . ." (Def.Br., p. 3; App. 18)

Davidson does not dispute that three pages after the "conditional" request for a deficiency (App. 21), it attached to the foreclosure complaint a "notice of debt" purporting to comply with §1692g, that the notice repeatedly referred to "the debt," and that it stated that "the debt described in the complaint attached hereto will be assumed to be valid by the creditor's law firm, unless the debtor, within thirty (30) days after the receipt of this notice, disputes the validity of the debt or some portion thereof." One of the two intervening pages is mostly blank and the other is a verification, so that a consumer reading through the complaint would read the "notice of debt" immediately after the request for a deficiency. Under §1692g(d), the "notice of debt" was not required to be attached to the complaint,

and its provision was gratuitous.

Davidson admits that in response to this notice, Carlin requested verification of the debt, and that Davidson in turn sent Carlin a letter enclosing a "payoff statement." (Def.Br., p. 6) The "payoff statement" asked for $205,281.79 "funds" in the form of a wire transfer or certified check.

Davidson nevertheless contends that this activity does not constitute "debt collection" within the meaning of the FDCPA because the definition of "debt" in the FDCPA implicitly excludes enforcement of a "security interest" (Def.Br., p. 16). Davidson argues that "a majority of courts have determined the enforcement of a security interest through a foreclosure action that does not seek a monetary judgment against the debtor is not debt collection for purposes of the FDCPA." (Def.Br., p. 19) It claims that the request for a deficiency in the complaint was not an attempt to collect a debt because the request was conditional.

Davidson is wrong.

### A. Contrary to Its Argument, Davidson Asked for Money

Initially, Davidson's entire argument is based on a false factual premise. There is no question that after serving the foreclosure complaint Davidson sent a letter enclosing a "payoff statement" seeking $205,281.79. A request for a certified check or wire transfer is a request for money, not the conveyance of real estate.

There is no question that Davidson's complaint sought attorney's fees and costs, in money. There is also no question that its complaint referred to a

4

deficiency and the request for a deficiency was followed three pages later by a "notice of debt" repeatedly referring to "the debt."

Not only did Davidson repeatedly refer to the payment of money by Carlin, but as pointed out in *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 461 (6th Cir. 2013), " every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt). As one commentator has observed, the existence of redemption rights and the potential for deficiency judgments demonstrate that the purpose of foreclosure is to obtain payment on the underlying home loan. Such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment. See Eric M. Marshall, *Note, The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors the Protection They Deserve From Abusive Foreclosure Practices*, 94 Minn. L.Rev. 1269, 1297–98 (2010). Accordingly, mortgage foreclosure is debt collection under the FDCPA."

The reasoning of *Glazer* is the same as that of this Court in *Romea v. Heiberger & Assocs.,* 163 F.3d 111 (2nd Cir. 1998), where this Court held that the statutory notice that precedes the filing of an eviction is an attempt to collect a debt even if only eviction is sought, because the proceeding must be terminated if the consumer tenders money, and at bottom the landlord wants money. (163 F.3d

5

at 116)  Certainly, that reasoning is sound if there are explicit requests for money.

Davidson points to the fact that  ¶6 of the prayer for relief in the foreclosure complaint stated that it did not apply to "any defendant who has been discharged in bankruptcy from the subject debt".  (Def.Br., p. 3)  However, Davidson does not claim Carlin had been discharged in bankruptcy, and for a non-bankrupt the exception actually reinforces the proposition that the consumer faces monetary liability for any deficiency.

Davidson cites several cases for the proposition that the sending of notices required by the FDCPA does not make the sender a "debt collector." (Def.Br., pp. 31-33)  While an original creditor or servicer does not bring itself within the FDCPA by putting an FDCPA notice on a letter, *Roth v. CitiMortgage Inc.*, 12cv2446, 2013 WL 5205775 (E.D.N.Y., Sept. 11, 2013), aff'd, 756 F.3d 178 (2d Cir. 2014), this Court has held that inclusion of the FDCPA notices must be considered with respect to FDCPA issues within the control of the debt collector or creditor, such as whether a debt is treated as being in default.  *Alibrandi v. Financial Outsourcing Services, Inc.,* 333 F.3d 82 (2d Cir. 2003).  Here, Davidson is not an original creditor or servicer, and the issue is whether the "least sophisticated consumer" would conclude that Davidson was attempting to collect money.  Whether the least sophisticated consumer would think that Davidson was merely seeking to acquire real estate and not money is obviously affected by the inclusion of a "notice of debt" containing repeated references to a "debt" in close proximity to a prayer for relief requesting a deficiency judgment, attorney's fees

6

and costs.

Under *Alibrandi*, Davidson cannot avoid the impact of its FDCPA notice. Indeed, the prayer for a deficiency and attorney's fees and costs plus the "notice of debt" coupled with the later "payoff statement" amount to "debt collection" as a matter of law. A "least sophisticated consumer" reading these documents could not help but think that Davidson was trying to collect money. It truly requires "the astuteness of a 'Philadelphia lawyer'", *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996), to contrive any other meaning from Davidson's words. Finally, since the notice was wholly unnecessary under §1692g(d), Davidson cannot argue that it was merely attempting to avoid liability.

### B. The Weight of Authority Supports Plaintiff, not Davidson

As noted in our opening brief (pp.19-21), every appellate court to have addressed the issue has held that there is no exception for secured consumer credit in the FDCPA, that foreclosure of a residential mortgage is "debt collection" subject to the FDCPA because its principal objective is to coerce the homeowner to pay money, and that lawyers and others regularly engaging in mortgage and lien foreclosures are subject to the FDCPA. *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 233-36 (3d Cir. 2005); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006); *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed.Appx. 254 (4th Cir. 2012) (replevin of personal property); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006); *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323 (6th Cir. 2012); *Glazer v. Chase Home Finance,*

*LLC*, 704 F.3d 453, 455 (6ᵗʰ Cir. 2013); *Gburek v. Litton Loan Servicing LP*, 614

F.3d 380 (7th Cir. 2010); *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678

F.3d 1211, 1217-18 (11ᵗʰ Cir. 2012); *Birster v. American Home Mortgage*

*Servicing, Inc.*, 11-13574, 2012 U.S.App.LEXIS 14660  (11ᵗʰ Cir., July 18, 2012);

*Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992).

Davidson's supposed "majority" consists of:

1.      District court decisions holding that mortgage foreclosures are

covered by the FDCPA only if money is sought.  These do not support Davidson

because Davidson did seek money from Carlin.  *E.g., Overton v. Foutty & Foutty,*

*LLP*, 1:07cv0274,  2007 WL 2413026 (S.D.Ind., Aug. 21, 2007).

2.      District court decisions dealing with nonjudicial foreclosures

where a money recovery cannot result.  *E.g., Natividad v. Wells Fargo Bank, N.A.*,

3:12cv3646, 2013 WL 2299601 (N.D.Cal., May 24, 2013) (nonjudicial foreclosure

is not debt collection unless the defendant's communications with the debtor go

beyond the statutorily-required notices); *Hulse v. Ocwen Federal Bank,* 195

F.Supp.2d 1188 (D.Ore. 2002);  *Beadle v. Haughey*, 04-272, 2005 WL 300060

(D.N.H., Feb. 9, 2005).

3.      A district court decision involving a foreclosure complaint that

expressly waived any right to recover money.  *Doughty v. Holder*,  2:13cv295,

2014 WL 220832 (E.D.Wash., Jan. 21, 2014).

4.      A district court decision in a *pro se* lawsuit against a pre-

default mortgage servicer in which the court first held that the defendant was not a

debt collector under any definition and then stated that "Defendants' actions in initiating nonjudicial foreclosure proceedings do not constitute debt collection activity within the scope of § 1692e," *Proa v. Wells Fargo Bank*, 13cv0759, 2013 WL 4508364 (S.D.Cal. Aug. 22, 2013).

       5.    District court decisions from circuits, such as the Sixth, where the Courts of Appeal later held that residential mortgage foreclosures are "debt collection." *Stamper v. Wilson & Assoc., PLLC*, 3:09cv270, 2010 WL 1408585 (E.D.Tenn., March 31, 2010).

Davidson does not include a single appellate decision in its "majority."

Davidson does cite a few district court decisions which support it. However, there are also many trial court decisions which support Carlin's position. *Hooks v. Forman Holt Eliades & Ravin LLC*, 11Civ.2767, 2015 WL 5333513, *10 (S.D.N.Y., Sept. 14, 2015); *Rinaldi v. Green Tree Servicing LLC,* 14cv8351, 2015 WL 5474115 (S.D.N.Y., June 8, 2015); *In re Ganas*, 513 B.R. 394, 402 (Bankr.E.D.Cal. 2014); *Muldrow v. EMC Mortg. Corp.*, 657 F.Supp.2d 171, 175 (D.D.C. 2009).

The decisions relied upon by Davidson contain logical inconsistencies. For example, *Overton v. Foutty & Foutty, LLP*, 1:07cv0274, 2007 WL 2413026 (S.D.Ind., Aug. 21, 2007), states that a mortgage foreclosure which seeks no monetary relief is subject only to 15 U.S.C. §§1692f(6) and 1692i. However, §1692i only applies if the defendant is a "debt collector." Persons whose principal business is enforcing security interests are made "debt collectors" subject to the

FDCPA only for purposes of §1692f(6). Section 1692i is not mentioned in the third sentence of §1692a(6). The proposition that foreclosure attorneys are not subject to the FDCPA unless they seek monetary relief produces anomalous results.

Section 1692i (a)(1) applies to "any" legal "action to enforce an interest in real property securing the consumer's obligation," not just one in which a deficiency is sought. "Any" also does not suggest it is limited to actions by lawyers who also collect money, i.e., less than "any." *Shapiro*, *supra*, 823 P.2d at 123 (proceeding to authorize sale under power of sale is covered).

Similarly, some of the cases Davidson cites first postulate that the third sentence in §1692a(6) – "For the purpose of section 1692f(6) of this title, such term ['debt collector'] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests" – creates an implicit exemption in the basic FDCPA definition of "debt collector" for persons enforcing secured debt, and then broadly construe the implicit exemption. *Natividad v. Wells Fargo Bank, N.A.*, *supra*. As discussed below, there is no basis for either creating the exemption or for construing it broadly.

This Court should hold either that all mortgage foreclosures are "debt collection," or that they are "debt collection" if the defendant makes any reference to the payment of money.

### C.  There is No FDCPA Exemption for Persons Trying to Collect Secured Debt

The FDCPA definitions of "debt" and "debt collector" do not exclude secured debt and persons who attempt to collect secured debt.  The notion that the third sentence in §1692a(6)  creates an exemption is untenable.

This Court has held that FDCPA has "broad, pro-debtor objectives," *Alibrandi, supra*, 333 F.3d at 87, and that FDCPA exemptions are narrowly construed to protect consumers, *Romea*, 163 F.3d at 117.  Here, there is nothing amounting to an exemption at all.  The plain meaning of the third sentence is to create an ***addition*** to the persons included within the definition of "debt collector," not a ***limitation*** or ***exemption.***   *Shapiro*, *supra*, 823 P.2d at 123-24.

The wording of the third sentence stands in contrast to the very next sentence, which states that "The term [debt collector] does not include" specified categories of persons.  Clearly, Congress knew how to create an exclusion from the definition of "debt collector" when it so desired.  That is not what it did in the third sentence.  Where Congress uses different language in two parts of a statute, the court assumes different meanings were intended.  *Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n. 9 (2004).

Moreover, one of the categories excluded in the fourth sentence is persons who collect "a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor" (15 U.S.C. §1692a(6)(F)(iv)), so Congress was specifically thinking about the enforcement of security interests.  Congress was also thinking about the judicial enforcement of security interests in

11

real property when it enacted 15 U.S.C. §1692i, which regulates where such actions may be filed.   Given that concern, it is not credible that Congress created by implication an amorphous exemption for the enforcement of mortgages by judicial proceedings in §1692a(6).

Davidson's argument was discussed at length and correctly rejected in *Glazer*, where the court held that the "third sentence in the definition does not except from debt collection the enforcement of security interests; it simply 'make[s] clear that some persons who would be without the scope of the general definition are to be included where §1692f(6) is concerned.'"   (704 F.3d at  463) The "third sentence" thus makes clear that the FDCPA covers repossession agents without removing anything otherwise covered by the FDCPA.  (704 F.3d at 463-4) *Accord*, *Shapiro*, *supra*, 823 P.2d at 124.

Construing the quoted sentence as creating an exemption for persons collecting secured debts, as Davidson suggests, "would create a loophole in the FDCPA. A  big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of §1692e by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security

12

interest. A 'debt' is still a 'debt' even if it is secured." *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012). Mortgages, automobile paper, and personal property secured debts comprise a large proportion of all consumer debt, and if Congress meant the FDCPA to not apply to such debts, it would have said so expressly. Congress addressed the filing of lawsuits on mortgages in 15 U.S.C. §1692i, so it was not a question of oversight.

Contrary to Def.Br., p. 20, and such cases as *Boyd v. J. E. Robert Co.*, 05cv2455, 2013 WL 5436969 (E.D.N.Y., Sept. 27, 2013), the construction of the FDCPA adopted in *Glazer* and urged by plaintiff would not make the third sentence of §1692a(6) "surplusage" on the theory that "any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts." Repossession agents enforce security interests, but do not communicate with the consumer or seek or accept money. Indeed, they prefer to operate at night, so as to avoid contact with hostile consumers. The extrajudicial seizure of collateral without contact with the consumer is probably not "debt collection" by a person who physically performs the seizure and does nothing else. (Any demands or notices are generally sent by the secured party or its counsel, not the repossession agent.) Thus, the third sentence is necessary to insure coverage of repossession agents. The existence of a substantial repossession industry when the FDCPA was enacted requires rejection of Davidson's "surplusage" argument. The prohibitions of §1692f(6) linked to the third sentence of §1692a(6) are specifically concerned with the activities of

13

repossession agents.

The existence of a repossession industry also requires rejection of Davidson's argument that the third sentence gives rise to an inference that the judicial enforcement of security interests was not considered part of "debt collection." The only reasonable inference is that Congress did not consider the typical conduct of repossession agents to be "debt collection." Davidson's actions in commencing a foreclosure suit in which a deficiency judgment could be requested and which would be terminated upon tender of payment, serving a "notice of debt," corresponding with the consumer, and providing a payoff statement is not comparable to the conduct of a repossession agent taking a car at midnight.

Davidson's reliance on the UCC in support of its argument (Def.Br., p. 16) is even farther afield. The FDCPA definition of "debt" does not refer to the UCC at all. The reason the UCC doesn't include real estate security within its definition of "security interest" is that it does not cover either recordation of security interests in real estate or their enforcement. See McKinney's Uniform Commercial Code § 9-604, addressing the modest overlap between the UCC and the law of real property in the case of fixtures.

Davidson also claims that plaintiff's argument is based on the "incorrect assumption that there always is a debt to collect through foreclosure" postulating that otherwise post-bankruptcy enforcement of mortgages would be precluded (Def.Br., pp. 29-31). It is Davidson's premise that is incorrect. After bankruptcy

14

the debt and the security continue in existence; the discharge merely bars a personal judgment against the mortgagor. The error is apparent from a decision cited at Def.Br., p. 30, *Deutsche Bank Trust Co. Americas v. Vitellas*, 131 A.D.3d 52, 13 N.Y.S.3d 163, 172-73 (2d Dept. 2015), where the court stated: "A mortgage secures an obligation . . . However, it is not necessary that an obligation involve personal liability in order for a mortgage to remain valid after a bankruptcy discharge. Here, Stefanos obtained a personal discharge in bankruptcy; thus, his personal liability for the obligation was released . . . This did not affect the mortgage securing the note. Post-bankruptcy, the mortgage still secures an obligation; it is simply no longer personal, but in rem . . . ." This language appears immediately prior to that cited at Def.Br., p. 30, and requires a conclusion regarding the existence of an obligation directly opposite to that drawn by Davidson.

Moreover, Davidson's argument ignores the fact that it sought payment of money through its prayer for relief, notice of debt and "payoff statement".

### D. The "Conditional" Nature of the Request for a Deficiency Does Not Make it Any Less an Attempt to Collect Money.

Davidson seeks to distinguish some of the Court of Appeals decisions relied upon by Carlin (Def.Br., p. 33) on the ground that the defendants therein "demanded payment or sought a money judgment in the action itself." Davidson thus repeats its argument that it didn't "really" ask for money in its lawsuit.

This argument is both factually false and legally ill-founded. The notion that a request for monetary relief in a complaint does not constitute "debt

15

collection" if it is somehow "conditional" is simply wrong. The Supreme Court has held that filing collection lawsuits is "debt collection" covered by the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). All collection lawsuits are "conditional," because sometimes consumers prevail. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (FDCPA claim based on unsuccessful prosecution of time-barred collection lawsuit in state court). That hardly makes the debt collector's attempt to get the consumer to pay money something other than debt collection. And while in the case of a foreclosure the entry of a money judgment is also "conditional" on the security being insufficient to satisfy the debt, the fact remains that what the mortgagee desires is the payment of money, not the acquisition of real estate.

The source of the "condition" argument appears to be the decision in a *pro se* case, *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F.Supp.2d 311 (D.Conn. 2012), reconsideration denied, No. 3:10cv23, 2013 WL 1187853 ( D.Conn., Mar. 21, 2013), appeal dismissed, 13-1545 (2d Cir., Jan 15, 2014). The plaintiff's papers in that case did not cite any of the appellate decisions in point, did not analyze the FDCPA, and were frankly incomprehensible, referring to the "Moorish Holy Temple of Science of the World" (see 3:10cv23, dkt. 193-1, filed Dec. 5, 2011).

### E.     There is No FDCPA Exemption for Debt Collector Conduct Following the Filing of a Lawsuit

Davidson seeks to distinguish the Court of Appeals decisions relied upon by Carlin (Def.Br., p. 33) on the ground that in each "a law firm sent correspondence

to a debtor demanding payment without commencing a foreclosure action, sent correspondence demanding payment prior to commencing the action, or demanded payment or sought a money judgment in the action itself."

The first two grounds of "distinction" focus on the timing of the request for money vis-a-vis the filing of suit. But nothing in the FDCPA suggests that once a lawsuit is filed, a debt collector has carte blanche to engage in communications without regard to the FDCPA. On the contrary, the FDCPA expressly prohibits (15 U.S.C. §1692e(15)) "[t]he false representation or implication that documents are not legal process forms or do not require action by the consumer," which encompasses post-filing communications designed or likely to bring about a default judgment. Since the communications prohibited by §1692e(15) are one example of a "false, deceptive, or misleading representation or means in connection with the collection of any debt" (§1692e, introductory sentence), it is clear that the communications and "means" covered by the FDCPA do not cease upon the filing of suit. There is simply no textual basis in the FDCPA for excluding post-filing communications from its scope. Furthermore, the proposed exemption, like that for the collection of secured debt, would create by implication a gaping loophole in the protection afforded by Congress.

Collection attorneys have repeatedly sent consumers misleading or abusive documents together with or following service of a summons and complaint. *Tolentino v. Friedman*, 833 F.Supp. 697, 698-99 (N.D.Ill. 1993), aff'd in pertinent part, 46 F.3d 645 (7th Cir. 1995); *In re Humes*, 468 B.R. 346 (Bankr.E.D.Ark. 2011), later opinion, 496 B.R. 557 (Bankr.E.D.Ark. 2013). Given this history,

17

there is no reason why the filing of a lawsuit should create a non-statutory FDCPA exemption. On the contrary, the fact that Congress carefully limited the §1692g exemption to a "formal pleading in a civil action" (15 U.S.C. §1692g(d)), indicates that other communications are covered. *Nikkel v. Wakefield & Associates, Inc.*, 10cv2411, 2011 WL 4479109 (D.Colo., Sept. 26, 2011).

Davidson postulates that court rules of procedure furnish sufficient protection for consumers once a lawsuit is filed. (Def.Br., p. 53-55) This assertion is directly contrary to:

      1. The Supreme Court decision in *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995), which held that collection litigation is covered by the FDCPA. *Heintz* would have been decided the other way if Davidson's argument that court rules provide sufficient protection during the course of litigation was correct.

      2. The Congressional determination that "Existing laws and procedures for redressing these injuries [against which the FDCPA is intended to protect] are inadequate to protect consumers" (15 U.S.C. §1692(b)). H.R. Rep. 99-405, 1986 U.S.C.C.A.N. 1752, 1757, explaining the 1986 removal of the attorney exemption, stated, "One of the basis for the attorney exemption was a belief that bar associations would adequately police attorney violations. That has proven not to be the case."

      3. FDCPA provisions which specifically regulate litigation abuses (15 U.S.C. §§1692e(15), 1692i). Since any communication suggesting "that documents are not legal process forms or do not require action by the consumer" would necessarily take place after the filing of suit, Davidson's proposed

18

nonstatutory exemption for post-suit communications would make §1692e(15) applicable to nothing. That is not an appropriate "construction" of any statute, *Connecticut ex rel. Blumenthal v. U.S. Dept. of Interior*, 228 F.3d 82, 88 (2d Cir. 2000), much less "a remedial strict liability statute which was intended to be applied in a liberal manner" to protect consumers, *Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D.Minn. 2001).

       4.    This Court's decision in *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70 (2d Cir. 2015), which applied the FDCPA to collection court litigation abuses. Numerous other decisions have likewise noted abusive practices in collection courts, particularly those with high volumes of cases. *E.g., Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011).

While Carlin may have been able to secure counsel, the fact is that more than 95% of New York collection defendants either fail to appear or are unrepresented, *Debt Weight: The Consumer Credit Crisis in New York City and Its Impact on the Working Poor*, pp. 16-17 (The Urban Justice Center, October 2007),[1] and application of the FDCPA after a lawsuit is filed curbs practices that take advantage of such persons.

Most of the cases cited by Davidson in support of its argument were decided prior to *Sykes* and furnish scant support for its argument:

       1.    In *Gabriele v. American Home Mortg. Servicing, Inc.,* 503

---

[1] https://cdp.urbanjustice.org/sites/default/files/CDP.WEB.doc_Report_Debt%20Weight_200710.pdf

19

Fed.Appx. 89, 95-96 (2d Cir. 2012), the court concluded the statements at issue were immaterial. "These filings, even if false, would not mislead the least sophisticated consumer, particularly represented by counsel, as here, into believing that he had already received an exhibit he had not received, that he had not filed counterclaims that he had filed three months before, or that he was not under consideration for a program he was in mediation to address. . . . Within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA."

      2.    *Kropelnicki v. Siegel*, 290 F.3d 118 (2nd Cir.2002), held that a letter to A could not be the subject of an FDCPA claim by B just because B read it. Davidson relies on dicta that "Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior. However, this is not an issue on which we need to rule today."

      3.    *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010), involved an FDCPA claim based on a false proof of claim filed in a bankruptcy proceeding initiated by the consumer, through counsel. It was substantially limited by *Garfield v. Ocwen Loan Servicing*, LLC, No. 15–527, 2016 WL 26631 (2d Cir., Jan. 4, 2016), to cases where the bankruptcy case is actually pending.

      It is true that several district court cases, starting with the same *Derisme* case discussed above, and often involving *pro se* plaintiffs, have stated that the FDCPA does not apply "when a debtor is instead protected by the court system

20

and its officers." *Cocco v. Bank of America Home Loans*, 1:12cv1576, 2012 WL 6021326 (N.D.N.Y. Dec. 3, 2012); *Carubia v. Cohen & Slamowitz*, 1:14cv501, 2015 WL 348205 (N.D.N.Y., Jan. 23, 2015); *Calvert v. Alessi & Koenig,* 2:11cv00333, 2013 WL 592906 (D.Nev. Feb. 12, 2013); *Walsh v. Law Offices of Howard Lee Schiff, P.C.,* 3:11cv1111, 2012 WL 4372251 (D.Conn. Sept. 24, 2012). Such statements evidence a lack of familiarity with practices in high-volume collection courts, see *Repairing a Broken System, Protecting Consumers in Debt Collection Litigation and Arbitration,* Federal Trade Commission, July 2010, p. i ("Based on its extensive analysis, the Federal Trade Commission . . . concludes that neither litigation nor arbitration currently provides adequate protection for consumers. The system for resolving disputes about consumer debts is broken."), and are expressly contrary to the stated intent of Congress in removing the attorney exemption from the FDCPA.

In any event, here the violation occurred upon receipt of the complaint, and involves the initiation of a series of communications without providing disclosures specifically required by statute. It is not exempt from the FDCPA.

**F.    Defendant's Arguments Based on the New York Real Property Law Are Meritless**.

Davidson's arguments based on the New York Real Property Law are both incorrect and besides the point. They are besides the point because Davidson unquestionable communicated requests for money. Since the definition of "debt" in 15 U.S.C. §1692a(5) includes "alleged" obligations, the request triggers the FDCPA even if totally unfounded. *Davis v. Midland Funding, LLC*, 2:13cv2316,

21

2014 WL 3889971 (E.D.Cal., Aug. 7, 2014) (attempt to collect from wrong person).

The arguments are incorrect because, contrary to the statement at Def.Br., p. 11, a mortgagee in New York does not have to "elect" between obtaining the property and enforcing the mortgagor's personal liability. The prohibition in RPAPL §1301 is against maintaining multiple or duplicative actions on the note and mortgage. There is no question that it is proper to ask for a deficiency in a New York foreclosure suit. *Flushing Sav. Bank, FSB v. Bitar*, 25 N.Y.3d 307, 33 N.E.3d 1282, 12 N.Y.S.3d 12 (2015).

Furthermore, Davidson's contrary argument is the same as that rejected by this Court in *Romea v. Heiberger & Assocs.,* 163 F.3d 111 (2d Cir. 1998), where this Court held that the statutory notice that precedes the filing of an a eviction is an attempt to collect a debt even if only eviction is sought, because at bottom the landlord wants money. (163 F.3d at 116) While, as pointed out at Def.Br., p. 34, the statutory eviction notice in *Romea* specified the amount of the past due rent, both the foreclosure complaint and the payoff statement sent by Davidson stated (inaccurately) the amounts due on the note and mortgage, and RPAPL §1341 provides that upon tender of the amount due, as well as fees and costs, the foreclosure case shall be dismissed. There is accordingly no distinction between *Romea* and this case.

## II. DAVIDSON'S ALTERNATIVE GROUNDS FOR AFFIRMANCE LACK MERIT

### A. There Was an "Initial Communication"

Davidson argues that none of the several communications between it and Carlin was an "initial communication." If accepted, Davidson's arguments would mean that a debt collector can engage in a series of communications with a consumer, with extensive potential for overreaching and deception, without being subject to the FDCPA, negating its "broad, pro-debtor objectives," *Alibrandi, supra*, 333 F.3d at 87,

#### 1. The "notice of debt."

Davidson admits that if the "notice of debt" attached to the complaint had been placed in an envelope and mailed to Carlin, it would be an "initial communication" triggering §1692g. (Def.Br., p. 51). *Hart v. FCI Lender Services, Inc.,* 797 F.3d 219 (2d Cir. 2015), compels that conclusion. However, Davidson argues that since the summons and complaint are "formal pleadings" exempt from §1692g under §1692g(d), any other paper that is transmitted with a summons and complaint somehow acquires the same immunity.

This argument is a dangerous *non sequitur*. As noted above, debt collectors have attached all sorts of improper communications to summonses and complaints. The FDCPA itself specifically prohibits (§1692e(15)) "The false representation or implication that documents are not legal process forms or do not require action by the consumer," which is likely to be effected by correspondence sent with the "legal process forms." For example, a debt collector could include with a

23

summons a letter representing that the debtor need not appear if he is engaged in settlement discussion with the collector, and then take a default judgment.

The phrases "formal pleading made in connection with a legal action" and "formal pleading in a civil action" appear twice in the FDCPA (§§1692e(11), 1692g(d)). The words "formal pleading" are obviously much narrower than "communication" and "representation," which appear throughout the FDCPA. Their plain meaning does not include a paper which has nothing to do with asserting a claim or defense or acquiring jurisdiction over a party, is not an exhibit supporting a claim or defense, and is not issued or required by a court. Furthermore the policy of liberal construction of the FDCPA in favor of the consumer, *Romea*, requires narrow construction of exemptions and militates against any notion that a debt collector can immunize non-pleading communications by serving them with a formal pleading.

Even a gratuitously provided §1692g notice, included with a summons and complaint where it is not required, should therefore be treated as the initial communication and must comply with §1692g. *Freire v. Aldridge Connors, LLP*, 994 F.Supp.2d 1284 (S.D.Fla. 2014); *Nikkel v. Wakefield & Assocs. Inc.,* Case No. 10cv02411, 2001 WL 4479109 (D. Colo., Sept. 26, 2011).

Furthermore, if Davidson's "notice of debt" is not treated as a §1692g communication, it is misleading and violates §1692e. It tells Carlin that he has 30 days from receipt to dispute the debt. If, as Davidson now argues, the 30 day period never began running, that is a misrepresentation.

24

### 2. Carlin's July 12, 2013 letter to Davidson

Although Carlin's July 12, 2013 letter to Davidson was clearly in response to the "notice of debt" included with the complaint, Davidson cites district court cases to the effect that "communications initiated by debtors" do not trigger §1692g. (Def.Br., p. 52)

A response by a consumer to an invitation to communicate from the debt collector is not a "communication initiated by debtors." The District Court in its Memorandum and Opinion of September 23, 2014 correctly rejected Davidson's contention on this ground. "The July 12th Letter was hardly an unsolicited request for information. To the contrary, Plaintiff states a plausible claim that he contacted Davidson only because of the Debt Collection Notice that Davidson included as an exhibit to the Foreclosure Complaint." (App. 289-290).

Moreover, the language of §1692g ("initial communication with a consumer in connection with the collection of any debt") is not limited based on who initiates the contact. Again, Davidson's argument seeks to create a very large and ill-defined loophole. A consumer served with a summons and complaint, exempt under §1692g(d), is likely to initiate a communication to the debt collector in response. A consumer may also contact a debt collector after seeing its "tradeline" on a credit report, after contacting the creditor and being informed that the debt is now in the hands of a debt collector, with whom the consumer must now deal, because the debt collector contacted family or friends or work associates of the consumer in an effort to locate the consumer, or because upon being sued the consumer received ads from bankruptcy attorneys offering their services.

25

The subject of the resulting communication between the consumer and the debt collector is likely to be either objections to the debt or payment of the debt. There is an obvious potential for overreaching, and a consumer having such discussions with the debt collector ought to be furnished with the §1692g "notice of debt" mandated by Congress.

Furthermore, the exception proposed by Davidson is very amorphous. Assume that in response to a summons or credit report "tradeline" the consumer calls the debt collector, is unable to speak to anyone, and leaves a voicemail message. The debt collector calls back the next business day. Is that within Davidson's exempt category of "communications initiated by debtors"? More importantly, what purpose is served by such an exemption other than to make it more difficult to enforce the FDCPA and facilitating abuse by debt collectors seeking to engage in it?

Debt collectors keep careful track of "right party contacts," meaning communications with the person they are trying to collect from. It is not difficult for debt collectors to adopt a procedure whereby any "right party contact" triggers the sending of a §1692g notice if one has not already been provided.

This Court should hold that §1692g applies without regard to who initiates the communication. Alternatively, it should that §1692g applies if a communication from a consumer to the debt collector follows any act by the debt collector.

### 3. Davidson's letter with "payoff amount"

Davidson argues that post-lawsuit communications with consumers are not covered because the court system protects them. (Def.Br., p. 55) As discussed at §I.E., above, this is not a valid argument.

### B. Davidson Never Provided the Correct "Amount of the Debt" Presently Due Together with the Other §1692g Disclosures.

Davidson claims that its August 9, 2013 letter enclosing a payoff statement was sufficient compliance with §1692g. It was not, for multiple reasons:

1. Section 1692g contemplates one document containing all of the disclosures. *Castro v. Green Tree Servicing LLC, supra*, No. 10–CV–7211 (ER), 2013 WL 4105196, *6 (S.D.N.Y., Aug. 14, 2013). It is undisputed that no such document was ever furnished.

2. Neither a document which omits portions of the debt, nor a document including estimated future fees, costs, additional payments or escrow disbursements which are not yet been incurred and are not yet due, discloses the "amount of the debt." Schedule C to the complaint, referred to in the "notice of debt," states the original loan amount and the principal balance owing, but not "interest, taxes, assessments, water rates, insurance premiums, escrow and/or other charges." Compare *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). The "payoff statement" provides a "Total Amount Due" which "may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff

27

Statement is issued." Overstating the debt in this manner does not comply any more than understating it. *Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003); *Spencer v. Hendersen-Webb, Inc.*, 81 F.Supp.2d 582, 591 (D.Md. 1999); *Bernstein v. Howe*, IP 02–192–C–K/H, 2003 WL 1702254, *5 (S.D.Ind., March 31, 2003); *Pettway v. Harmon Law Offices, P.C.*, 03cv10932, 2005 WL 2365331, *6 (D.Mass., Sept. 27, 2005); *Fritz v. Resurgent Capital Services, LP*, No. 11–CV–3300 FB VVP, 2013 WL 3821479, *4 (E.D.N.Y. July 24, 2013).

Thus, there is no single document which contained all of the disclosures mandated by §1692g, including an accurate statement of the debt.

## III.    CONCLUSION

For the reasons stated above and in our initial brief, the Court should reverse the judgment below and hold that plaintiff's complaint stated a claim.

Respectfully submitted,

/s/Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

28

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:   According to the word count feature of the program by which it was prepared, this brief contains  6975 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:  This brief was prepared in proportionally spaced typeface using Word Perfect X6, in Times New Roman, font size 14.

Dated: January 19, 2016

Respectfully submitted,


s/Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## CERTIFICATE OF SERVICE

I, Tiffany N. Hardy, hereby certify that on January 19, 2016, a copy of the foregoing document was filed electronically using the Court's CM/ECF system.

I further certify that six copies of the foregoing were sent to the Clerk of the Second Circuit Court of Appeals pursuant to Local Rule 31.1 and one copy was sent to the following via U.S. Mail:

**Matthew J. Bizzaro**
L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue
Garden City, New York 11530

**Andrew M. Burns**
Davidson Fink, L.L.P.
28 East Main Street, Suite 1700
Rochester, New York 14614

Respectfully submitted,

s/Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com