## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 13-2784-cv

Caption [use short title]

**Motion for:** Emergency Stay

Set forth below precise, complete statement of relief sought:

Relief from District Court's Orders of 12/9/13 denying

Movants'-Appellants' Motion for Stay and ordering

Microsoft to comply with Chevron's subpoena by

Monday, December 16, 2013 at 5:00 pm.

Chevron Corp., Plaintiff-Appellee,

v.

Non-Party John Does, Movants-Appellants,

v.

Steven Donziger, et al., Defendants.

**MOVING PARTY:** Non-Party John Doe Movants

- [ ] Plaintiff
- [x] Appellant/Petitioner
- [ ] Defendant
- [ ] Appellee/Respondent

**OPPOSING PARTY:** Chevron Corp., Plaintiff-Appellee

**MOVING ATTORNEY:** Nathan Cardozo

**OPPOSING ATTORNEY:** Howard S. Hogan

[name of attorney, with firm, address, phone number and e-mail]

Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
415.436.9333 x146, nate@eff.org

Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC 20036
202.955.8500, hhogan@gibsondunn.com

Court-Judge/Agency appealed from: USDC ND NY District Judge Lewis A. Kaplan

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
- [x] Yes [ ] No (explain): _____

Opposing counsel's position on motion:
- [ ] Unopposed [x] Opposed [ ] Don't Know

Does opposing counsel intend to file a response:
- [x] Yes [ ] No [ ] Don't Know

Is oral argument on motion requested? [ ] Yes [x] No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [x] No  If yes, enter date: _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below? [x] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [x] No
Requested return date and explanation of emergency: 12/16/13 2:00pm

A stay is needed to ensure the status quo pending

appellate review.

**Signature of Moving Attorney:**
/s/ Nathan Cardozo    **Date:** 12/11/2013    Service by: [x] CM/ECF  [ ] Other [Attach proof of service]

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____    By: _____

**Form T-1080** (rev. 7-12)

# 13-2784-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHEVRON CORPORATION,

PLAINTIFF-APPELLEE,

v.

NON-PARTY JOHN DOE simeontegel@hotmail.com, NON-PARTY JOHN DOE mey_1802@hotmail.com, NON-PARTY JOHN DOE pirancha@hotmail.com, NON-PARTY JOHN DOE duruti@hotmail.com,

MOVANTS-APPELLANTS,

v.

STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, DONZIGER & ASSOCIATES, PLLC, JAVIER PIAGUAJE, HUGO GERARDO, CAMACHO NARANJO,

DEFENDANTS.

On Appeal from the United States District Court
for the Northern District of New York
Honorable Lewis A. Kaplan, U.S. District Judge

## EMERGENCY MOTION TO TEMPORARILY STAY PRODUCTION PENDING RESOLUTION OF THIS APPEAL

## RELIEF REQUESTED NO LATER THAN
## 2:00 P.M. MONDAY, DECEMBER 16, 2013

Nathan Cardozo
nate@eff.org
Cindy Cohn
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333

Richard Herz
rick@earthrights.org
Michelle Harrison
Marco Simons
EARTHRIGHTS, INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Tel: (202) 466-5188

*Counsel for Non-Party John Doe Movants/Appellants*

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................2

SUMMARY OF ARGUMENT .............................................................3

ARGUMENT .........................................................................................5

    A.    Absent a Stay, Movants Will Suffer Irreparable Harm........................6

    B.    Appellants Have Shown a Substantial Possibility of Success .............8

        1.    The Information Chevron Seeks is Irrelevant to Their Claims ..9

        2.    The District Court Erred in Holding that Non-Citizens are
            Entitled to No First Amendment Protection Based Solely on
            Their Status ...............................................................................9

        3.    Email Addresses Are Protected by the First Amendment
            Right to Speak Anonymously ...................................................10

        4.    Chevron's Request for the IP Logs of Its Critics in Order to
            Inquire into the Critics' Associations Clearly Implicates
            Those Critics' Right to Free Association .................................11

        5.    The District Court Erred in Noting that Chevron's Subpoena
            is Likely Overbroad but Failing to Limit It ..............................13

        6.    The District Court's Finding that the Appellants Lack Third-
            Party Standing to Challenge Chevron's Subpoena as a Whole
            Is Contrary to the Law .............................................................14

    C.    Chevron Will Not Be Harmed By a Stay............................................16

    D.    The Public Interest Favors a Stay ......................................................17

CONCLUSION .....................................................................................17

# TABLE OF AUTHORITIES

## Federal Cases

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ......................................................... 10

*Arizona Right to Life Political Action Comm. v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003) ..................................................... 15

*Campbell v. Louisiana*,
  523 U.S. 392 (1998) .................................................................... 15

*Center for Int'l Environmental Law v. OUSTR*,
  240 F. Supp. 2d 21 (D.D.C. 2003) ................................................ 7

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,
  10 CV 2262 DRH ARL, 2013 WL 3094955 (E.D.N.Y. June 18, 2013) ..... 13

*Chevron Corp. v. Donziger, et al.*,
  Case No. 11-cv-0691 (LAK) (S.D.N.Y.) .................................... 1, 9

*Chevron Corp. v. Donziger*,
  No. 13-16920 (9th Cir. Oct. 25, 2013) ......................................... 6

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ........................................................ 6, 8

*Cooper v. Town of East Hampton*,
  83 F.3d 31 (2d Cir. 1996) ............................................................. 6

*DKT Mem. Fund v. Agency for Int'l Dev.*,
  887 F.2d 275 (D.C. Cir. 1989) .................................................... 10

*Doe v. 2theMart.com, Inc.*,
  140 F. Supp. 2d 1088 (W.D. Wash. 2001) .................................. 10

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965) .................................................................... 15

*Five Borough Bicycle Club v. City of New York*,
    684 F. Supp. 2d 423 (S.D.N.Y. 2010) ......................................... 16

*Jock v. Sterling Jewelers, Inc.*,
    738 F. Supp. 2d 445 (S.D.N.Y. 2010) ........................................... 6

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 2002) ............................................................ 8

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ..................................................................... 12

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................... 6, 16, 17

*Providence Journal Co. v. FBI*,
    595 F.2d 889 (1st Cir. 1979) .................................................... 7, 16

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984) ..................................................................... 11

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .......................................................... 17

*United States v. Jones*,
    132 S. Ct. 945 (2012) ................................................................... 12

*United States v. Phillip Morris, Inc.*,
    314 F.3d 612 (D.C. Cir. 2003) ...................................................... 7

## Federal Rules

Federal Rule of Appellate Procedure 8 ................................................ 1

Federal Rule of Appellate Procedure 27 .............................................. 1

Federal Rule of Civil Procedure 26 ................................................... 14

Federal Rule of Civil Procedure 45 ..................................................... 1

## Local Rules

Second Circuit Local Rule 27.1(d) ......................................................................... 1

## Constitutional Provisions

U.S. Const., amend. I ........................................................................ *passim*

# INTRODUCTION

The Non-Party Movants-Appellants ("Appellants") respectfully request an emergency stay under Federal Rules of Appellate Procedure 8 and 27, and Local Rule 27.1(d), to prevent a district court's order, issued less than two days ago, from partially mooting what will on Monday be a fully briefed appeal.

The underlying dispute is about a Federal Rule of Civil Procedure 45 subpoena issued to Microsoft Corporation ("Microsoft") through which Appellee Chevron Corporation ("Chevron") demands over eight years of information about the identities, associations, and movements of thirty of its critics. As such, the subpoena raises substantial First Amendment and overbreadth concerns. The district court ordered Microsoft to comply by <u>Monday December 16, 2013</u>, thereby requiring this Court's urgent attention.

Chevron seeks this information for a trial that is now over,[1] so there is no emergent need for these documents that could somehow supersede Appellants' right to appeal. Indeed, there is no apparent need for the information at all. Accordingly, Appellants seek a brief stay to allow this Court to rule on the merits of whether the subpoenas should have been quashed.[2]

---

[1] *Chevron Corp. v. Donziger, et al.*, Case No. 11-cv-0691 (LAK) (S.D.N.Y.) (Kaplan, J.).

[2] Pursuant to Local Rule 27.1(d)(1), Appellants informed Appellee and the Clerk of the Court of their intent to file this motion. Chevron has refused to consent to even a brief stay and intends to oppose this motion.

# BACKGROUND

Chevron's subpoena demands documents identifying thirty non-party Hotmail email account holders (whose identities Chevron has repeatedly claimed it already knows), as well as computer usage information associated with the creation of, and every subsequent login to, each account. This information will allow Chevron to determine the non-parties' general physical location every time they checked or logged into their email over a nine-year period. Thus, in addition to identifying them, the information sought by Chevron could reveal the movements and the personal and political associations of these thirty non-parties, over those same nine years.[3]

Appellants, four of the non-parties targeted by Chevron, moved to quash the subpoena on behalf of themselves and the other twenty-six email users, asserting that the subpoena was overbroad and violated their First Amendment rights to anonymous speech and association.[4] The district court – Judge Kaplan, sitting by designation in the Northern District of New York – denied Appellants' motion to quash on August 16, 2013. Appellants timely filed a notice of appeal. Chevron

---

[3] The subpoena was one of three, that in total sought identifying and location information about 101 people, all but a handful of whom are non-parties to the underlying litigation.

[4] Appellants are the owners of the email accounts simeontegel@hotmail.com, mey_1802@hotmail.com, pirancha@hotmail.com, and duruti@hotmail.com, the same non-parties who moved to quash in the district court.

moved to compel on October 4, 2013, less than two weeks before trial, and Appellants applied to the district court for a stay of enforcement pending appeal on October 7, 2013. The district court did not act on either motion for more than two months.

During this period the trial in the underlying action began on October 15, 2013, and ended on November 26, with all issues, save one, taken under submission. That same day, Judge Kaplan ordered the record closed.

On December 9, 2013, the district court granted Chevron's motion to compel, denied Appellants' application for a stay (order denying stay attached hereto as Exhibit 2), and ordered Microsoft to comply with its subpoena by Monday, December 16, 2013. *See* Exhibit 1 ("Order"). Notwithstanding its failure to order production before the conclusion of the trial, the district court reasoned that prompt production was important "so that an appropriate application to expand the record . . . may be made before the case is decided." *Id.* at 2.

## SUMMARY OF ARGUMENT

To preserve the status quo, the Court should briefly stay enforcement of the subpoena pending its determination of the appeal, which will be completely briefed as of the production deadline. All of the relevant factors strongly favor granting a stay in this case.

First, absent a stay, movants will suffer irreparable harm; Chevron will be given the very documents the disclosure of which is contested on appeal. Once Chevron learns the movants' identities and location information, that information cannot be unlearned, even if this Court later deems production unconstitutional or otherwise unwarranted.

Second, movants have made a strong showing that they are likely to succeed on the merits. In seeking movants' identities and information that would allow Chevron to track their movements over the course of nine years, the subpoena is overbroad on its face and violates Appellants' First Amendment rights to anonymity and association. Moreover, Chevron's subpoena was never – and is certainly not now – likely to lead to the discovery of relevant evidence.  Rather than seeking information important to its case, Chevron's continued insistence on production, long past the eleventh hour, highlights the Appellants' argument that the subpoena is simply an effort by Chevron to intimidate the non-parties it believes were sympathetic to the defendants in the underlying matter.

Third, a stay will cause Chevron no harm. Its sole justification for this subpoena – and the sole justification for the motion to compel – was Chevron's claimed need for the discovery at trial. That trial has now ended, Chevron has introduced its exhibits, and the record is closed. *See* Exhibit 1 at ¶ 4. While the district court has suggested that it might entertain a motion to reopen the record,

there is no apparent deadline for such a motion, and no emergency that would require forfeiture of movants' right to appeal. Briefing on the merits of this appeal will be complete and ripe for argument and decision less than a week from today. If Chevron ultimately prevails on appeal, it will still have the opportunity to move the district court to reopen the record.[5] Given the complete lack of an exigent need for this discovery, there will be no prejudice to Chevron if production is stayed for the brief period before this Court rules on the merits of the appeal.

Finally, a stay preserving the non-parties' constitutional rights pending appellate review would serve the public interest since this appeal presents important and novel questions about the appropriate bounds of discovery and privacy in the internet age.

All relevant factors thus favor briefly staying the district court's Order until this Court can rule on the important constitutional issues presented by the appeal, briefing for which will be complete in five days.

## ARGUMENT

Courts consider four factors in determining whether to grant a stay pending appeal: (1) "whether the movant has shown a substantial possibility, although less

---

[5] While the district court potentially could rule on the merits of the trial before this Court rules on the appeal, it presumably would do so only if it concludes that the information Chevron seeks is not central. In that case, Chevron could hardly claim prejudice. In fact, the information Chevron seeks is irrelevant, which is one of the reasons Chevron is not entitled to it. *See* Section B. 4 below.

than a likelihood, of success on appeal," (2) "whether the movant will suffer irreparable injury absent a stay," (3) "whether the opposing party will suffer substantial injury if a stay is granted," and (4) "the public interests that may be affected." *Cooper v. Town of East Hampton*, 83 F.3d 31, 36 (2d Cir. 1996); *see also Nken v. Holder*, 556 U.S. 418, 426 (2009); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 37 (2d Cir. 2010). The first two factors "are the most critical." *Nken*, 556 U.S. at 434.

Although Appellants need only show that the balance of factors favors a stay, here, all of these factors favor a stay. Indeed, after the Northern District of California quashed a similar subpoena with respect to many but not all of the email addresses, the Ninth Circuit partially stayed the order mandating disclosure pending appeal, finding *inter alia* that "there appears to be a substantial question on the merits under the First Amendment." *See Chevron Corp. v. Donziger*, No. 13-16920, ECF No. 10 (9th Cir. Oct. 25, 2013).

## A.   Absent a Stay, Movants Will Suffer Irreparable Harm.

To be granted a stay, an Appellant must show a particularized harm – for example, that the Appellant would be prejudiced in a way that might bar her from relief in the event that her appeal was ultimately successful. *Jock v. Sterling Jewelers, Inc*., 738 F. Supp. 2d 445, 448 (S.D.N.Y. 2010)*.*

This case clearly meets the standard for irreparable harm. If Microsoft is forced to disclose the information, Appellants' privacy can never be fully regained and their constitutional rights will have been violated. [6] As one court observed in another context, "the irreparable harm to [movants] lies in the fact that 'once the documents are surrendered pursuant to [this Court's] order, confidentiality will be lost for all time. The status quo could never be restored . . . Failure to grant a stay will entirely destroy appellants' rights to secure meaningful review.'" *Center for Int'l Environmental Law v. OUSTR*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (quoting *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979)); *see also, e.g., United States v. Phillip Morris, Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) ("disclosure of privileged documents to an adverse party" constitutes "irreparable harm").

Moreover, the extent of the threatened irreparable harm here is serious. The IP logs that Chevron seeks have the potential to map the movements of the account holders over a nine-year period, revealing to Chevron their professional, political, religious, and intimate associations. *See* Appellants Opening Brief, ECF No. 34-1 at 39-40 (October 31, 2013).

---

[6] Unlike the court in the Northern District of California, Judge Kaplan has declined even to order that production occur under a protective order. Without a stay, nothing will prevent Chevron from making Appellants' personally identifying information, including their home addresses, public.

**B.    Appellants Have Shown a Substantial Possibility of Success.**

The "substantial possibility" factor does not require "a showing that the movant is 'more likely than not' to succeed on the merits," *Citigroup Global Markets*, 598 F.3d at 37. Instead, the likelihood of success is balanced against the degree of harm threatened, such that a stay may be granted, for example, "where the likelihood of success is not high but the balance of hardships favors the applicant." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002).

This factor weighs heavily in appellants' favor. Appellants have a substantial possibility of successfully challenging the district court's underlying ruling. First, the information Chevron seeks is irrelevant. Second, the court erred by holding that non-citizens always lack First Amendment rights, in contravention of Supreme Court precedent that aliens are entitled to constitutional protections where, as here, they have "substantial connections" to this country.  Third, the district court erred in holding that the anonymity of people using email addresses are not protected by the First Amendment. Fourth, it erred in holding that the individuals' associations with the Ecuador campaign are not protected by the First Amendment. Fifth, even if some of information is relevant, the court erred in ordering compliance with a subpoena that is patently overbroad. Finally, the district court erred in finding that the subpoena as a whole could not be quashed, regardless of its validity and

constitutionality, unless all those named in the subpoena participate in the motion to quash.

### 1.    The Information Chevron Seeks is Irrelevant to Their Claims.

Now that trial is over, Chevron should be able to identify how this information would help them, but their justifications are pretextual.

As Chevron acknowledges, the subpoenaed information would not tell Chevron anything about the specific content accessed, created or emailed during any login. Thus, contrary to its claim, the IP logs would not tell Chevron whether the email addresses were used to assist the defendants in sharing documents.[7]

### 2.    The District Court Erred in Holding that Non-Citizens are Entitled to No First Amendment Protection Based Solely on Their Status.

The district court erroneously held that movants must prove their citizenship or else they have no First Amendment rights. While one movant did so, the district

---

[7] In particular, the IP logs would not support the only witness for Chevron that truly matters, disgraced former Judge Guerra, who claims that the judgment was written by the defendants and later transmitted to the issuing judge. The IP logs of the *non-party* Does could not provide any evidence of ghostwriting, since they reflect the location of the user at login, but not content. And nothing in the requested information could rehabilitate Guerra, since none of it would change the fact that Guerra is an admitted liar whom Chevron has paid or promised to pay almost $500,000 dollars to testify. Guerra has admitted to taking numerous bribes while serving as a judge, S.D.N.Y. Case No. 11-cv-0691 (LAK), ECF No. 1640 at 1, and testified that he lied to Chevron on multiple occasions about the LAPs in order to improve his bargaining position. *See e.g. id*. at 13; ECF No. 1422 at 16-17 (citing multiple instances in which Guerra admitted he lied to Chevron).

court refused to consider whether Chevron's subpoena violates the First Amendment rights of the other three solely because they did not make such showing. That was error, because, as Chevron itself admits, non-citizens have standing to bring First Amendment claims if they have "substantial connections" to this country. Chevron's Answering Brief, ECF No. 75 ("Chevron Br.") at 29; *DKT Mem. Fund v. Agency for Int'l Dev.*, 887 F.2d 275, 283-85 (D.C. Cir. 1989) (non-resident alien must have substantial connections to this country to claim protection under the First Amendment).

There is at least a serious question whether the non-movants have such connections here, since this appeal involves a subpoena issued by a United States District Court to an American email provider, seeking data located within the United States, and which *Chevron itself* claims is justified by Appellants' and non-movants' voluntary connections with the United States: Chevron asserts that the information will tend to show Appellants' connections with a campaign "designed by U.S. lawyers, carried out largely in the United States, and directed at a U.S." corporation. Chevron Br. at 36-37.

### 3. Email Addresses Are Protected by the First Amendment Right to Speak Anonymously.

The district court erred by asserting, with no supporting authority, that the facts here do not implicate the First Amendment. JA254. In the first published case addressing Internet anonymity of non-parties, *Doe v. 2theMart.com, Inc.,* the court

observed, "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas." 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (recognizing that the First Amendment applies to online anonymous speakers and that "a court should quash or modify a subpoena designed to breach anonymity").

In this case, Chevron seeks the identities of the account-holders of certain email addresses because it wants to know the identities of people it believes were working with the defendants in the Chevron-Ecuador litigation. [8] This compelled revelation of the identities of those who wish to communicate and associate privately unquestionably implicates the First Amendment.[9]

### 4. Chevron's Request for the IP Logs of Its Critics in Order to Inquire into the Critics' Associations Clearly Implicates Those Critics' Right to Free Association.

The Supreme Court has made clear that infringements on freedom of association may survive constitutional scrutiny only when they "serve compelling

---

[8] In a telling omission, both Chevron and the district court fail to include any analysis of the anonymity of two Appellants here, the owners of duruti@hotmail.com and pirancha@hotmail.com. No party contends, nor did the district court find, that either address contains its owner's name or even any suggestion of that name. Nonetheless, the district court found that all four appellants had waived their anonymity. The district court's order should therefore be stayed while this Court reviews the lower court's analysis, or lack thereof.

[9] As noted above, in substantially granting an analogous emergency motion to stay production of Chevron's subpoenas to Google and Yahoo, the Ninth Circuit rejected Chevron's argument, adopted wholesale by the district court here, that the First Amendment does not apply. *Chevron Corp. v. Donziger*, No. 13-16920, Dkt. 10 (9th Cir. Oct. 25, 2013).

state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984); *see also United States v. Jones*, 132 S. Ct. 945, 954 (2012) (Sotomayor, J., concurring) (continual location monitoring over a prolonged period "reflects a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations").

The district court erred in disregarding Appellants' constitutional interests based on a mere allegation that *others*, namely the parties Chevron chose to name as defendants, may have engaged fraud. But Appellants must not be denied their First Amendment rights simply because they have associated with others who might have acted unlawfully. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908, 915, 919–20, 934 (1982). First Amendment rights will be denied only to those who *themselves* had "a specific intent to further an unlawful aim." *Id.* at 925-26; *accord id.* at 920, 933.

Chevron's burden to show illegal intent was "heavy." *Id*. at 934. And the district court was under "a special obligation" to examine Chevron's allegations "critically" and with "extreme care." *Id.* at 915-16, 926-27. But the district court undertook no such analysis, and Chevron did not meet its burden. Instead, the district court would allow Chevron to obtain information that Chevron admits it seeks because of the alleged participation of the Appellants in a "media campaign."

12

Chevron Br. at 20. Allowing this type of discovery into such core First Amendment activity without engaging in the required First Amendment analysis, or indeed any First Amendment analysis, is clear error.

### 5. The District Court Erred in Noting that Chevron's Subpoena is Likely Overbroad but Failing to Limit It.

Appellants are also substantially likely to succeed because the subpoenas are significantly overbroad. By demanding years' worth of detailed email usage information that would catalog the account holders' daily movements. Chevron's demand is not limited to the IP data regarding specific logins, or specific dates, or communications with the defendants, or even specific non-defendants. Instead, it wants information about every login. Chevron has no need to know where anyone was when he emailed birthday wishes to his cousin, or asked his mom for a recipe, or tried to catch up with a friend or did any of the innumerable other things that people do by email every day.

The district court admitted the subpoena is overbroad but nevertheless refused to quash. It recognized that "[n]ot all of the subpoenaed information . . . is significant" and limited Chevron's subpoena as it applied to the owner of a single email address. JA253. But the Court did not limit the subpoena with respect to the other email addresses. Nor did it limit the subpoena to *relevant* logins.

The subpoena's clear overbreadth justified quashing in and of itself, and justifies a brief stay while this Court considers its vast reach. But it is particularly

problematic in light of the First Amendment and privacy interests at stake. *See Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,* 10 CV 2262 DRH ARL, 2013 WL 3094955 (E.D.N.Y. June 18, 2013) (once a party makes a prima facie case that a subpoena seeks discovery into First Amendment protected activity, the burden seeks to the party seeking discovery to show a compelling need for the discovery). Notably, however, even if the district court had been correct that non-citizens lack standing to assert First Amendment claims, there is no argument that non-citizens lack standing to challenge a subpoena that seeks irrelevant information.

> **6.      The District Court's Finding that the Appellants Lack Third-Party Standing to Challenge Chevron's Subpoena as a Whole Is Contrary to the Law.**

Finally, the district court erred in finding that the Appellants could challenge Chevron's subpoena only as to the email addresses they own. Third-party standing arguments are irrelevant with respect to overbreadth and relevance, because the district court had an independent obligation to ensure that the discovery sought is relevant. Fed. R. Civ. P. 26(b)(2)(C) (where the burden of discovery exceeds the benefit, the court "on its own . . . must limit" discovery).  Nonetheless, the court ordered Chevron's subpoenas enforced with respect to the non-movants' addresses, without considering whether the information ordered disclosed was discoverable. That was error.

14

Moreover, it is well settled that, in First Amendment cases, there are "unique standing considerations" that tilt dramatically toward a finding of standing. *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)) (the First Amendment provides an "exception to the usual rules governing standing"). The subpoena clearly burdens speech – it was issued to identify and track the location of those who allegedly participated in the Ecuador campaign's "legal and public relations strategies." And the chilling effect of this strategy is clear even as to those who could not move to quash. As with other judicial orders that facially violate First Amendment rights, the subpoena should not be enforced by this Court regardless of who the Appellants are.

Moreover, it is settled law that a "common interest" can give rise to third-party standing. *Campbell v. Louisiana*, 523 U.S. 392, 393 (1998). Chevron's own briefing makes clear that unrepresented targets of its subpoena share close, indeed identical, interests with Appellants. Chevron alleges that each of its targets participated in a single campaign of expressive activity aimed at holding Chevron accountable for the destruction of portions of the Ecuadorian Amazon. Chevron Br. at 36, JA28. Indeed it alleges that they were all part of the same fraud. *Id.* Because Chevron seeks the same categories of information from each target, and because

15

they are being targeted for identical reasons, Appellants' interests are identical to those of the unrepresented non-parties.

### C.    Chevron Will Not Be Harmed By a Stay.

Courts also consider whether a stay will substantially injure the other parties in the proceeding. *See, e.g., Nken*, 556 U.S. at 426. "Weighing this . . . hardship against the total and immediate divestiture of [movants'] rights to have effective review in [the court of appeals]," there is no doubt that "the balance of hardship . . . favor[s] the issuance of a stay." *Providence Journal Co.*, 595 F.2d at 890.

A stay pending appeal will not harm Chevron. Even if Chevron has some need for the information, the need is not pressing. The trial has been concluded and the evidence has been closed. There is no pending deadline regarding when a motion to augment the record can be filed. And given the complexity of the docket, the legal issues and the trial itself – which involved at least thirty-one witnesses, most of whose direct testimony was submitted in writing, plus twenty in-court days of additional testimony – there is little reason to believe that Judge Kaplan's decision in the matter is imminent. *See e.g., Five Borough Bicycle Club v. City of New York*, 684 F. Supp. 2d 423 (S.D.N.Y. 2010) (Kaplan, J.) (approximately one week bench trial in was completed in May 2009 and decided in February 2010).

As to the Appellants' identities, Chevron has claimed that it already knows who the Appellants are – repeatedly and confidently. *See, e.g*., JA28. Chevron has

16

made no argument that it was unable to carry its burden of proof at trial with regard to these unnamed parties (which is impossible, as Chevron was required to prove nothing regarding non-parties at trial).

### D.    The Public Interest Favors a Stay.

The fourth factor the Court must consider is whether a stay is in the public interest. *See, e.g., Nken*, 556 U.S. at 426. A compelling interest exists in protecting against the loss of constitutionally-protected rights, and First Amendment rights in particular. *See*, *e.g.*, *Salinger v. Colting,* 607 F.3d 68, 82 (2d Cir. 2010). In the absence of a specific showing of a compelling interest in this information that trumps the interest of the Appellants in enjoying the protection of the Constitution, the public interest favors preserving the status quo until a final determination of Appellants claims has been made.

### CONCLUSION

All factors weigh in favor of a brief stay of enforcement of the district court's Order pending appeal. Briefing on the merits of the appeal will be complete in less than a week. As such, Appellants respectfully request a brief stay of enforcement pending this Court's determination on the merits.

Dated:  December 11, 2013                Respectfully submitted,

By:   /s/ Nathan D. Cardozo
Nathan D. Cardozo
Cindy Cohn

ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333

Richard Herz
rick@earthrights.org
Michelle Harrison
Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Tel: (202) 466-5188

*Counsel for Non-Party John Doe
Movants/Appellants*

# Exhibit 1

# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                   Plaintiff,

      -against-                            1:12-MC-00065-LAK-CFH

STEVEN DONZIGER, et al.,

                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

Lewis A. Kaplan, *District Judge.*

       The Court notes the following with respect to Microsoft's submission in opposition to Chevron's motion to compel Microsoft to comply with the subpoena:

       1.     Insofar as the appeal purports to go to the materials relating to the email accounts of twenty seven of the thirty email address owners, it is entirely frivolous, as no one involved in this matter has standing to assert the rights, if any, of those account owners. As the Court's order of even date relates, the Ninth Circuit in related litigation only recently held that account owners challenging similar subpoenas had no standing to challenge the subpoenas insofar as they sought information regarding accounts of others.

       2.     There is no serious basis for asserting that there are any First Amendment rights at issue insofar as the accounts other than that of the owner of simeontegel@hotmail.com are concerned because even now – after the issue has been called to the Does' attention – none of the owners of any of the other accounts even claims to be a U.S. citizen or advances any other serious claim to entitlement to the protection of the First Amendment.

       3.     It is essentially obvious that Chevron already knows the identities of all three of the owners of the email addresses who moved to quash. For example, PX 1096 at the trial of the underlying action explicitly gives the name of the owner of mey_1802@hotmail.com and the owner of lupetadeheredia@yahoo.com appears surely to be Lupeta de Heredia, both individuals who worked with the defendants in Ecuador. The suggestion that there is some right to anonymous speech at issue in this circumstances is risible.

       4.     While the taking of evidence has been concluded in the underlying case in

2

respect of which this subpoena was served, post-trial briefing is underway.  It remains important that the documents be produced promptly so that an appropriate application to expand the record, should either side think that advisable, may be made before the case is decided.   Further delay is extremely undesirable.

Accordingly, Chevron's motion [DI 61] is granted to the extent that Microsoft shall produce the responsive documents on or before December 16, 2013.

SO ORDERED.

Dated:          December 9, 2013

Lewis A. Kaplan
United States District Judge

# Exhibit 2

# Exhibit 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                                    Plaintiff,

                -against-                                               1:12-MC-00065-LAK-CFH

STEVEN DONZIGER, et al.,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER

LEWIS A. KAPLAN, *District Judge.*

        Non-Party Movants seek a stay of enforcement pending appeal of the Court's June 25, 2013 order granting in part and denying in part motions to quash (the "June Order") and its July 29, 2013 order granting reconsideration thereof in part (the "July Order"). DI 50, 57. The term "Non-Party Movants" is not defined in the motion [DI 62], but appears to be limited – as it must be given the record – to the three owners of three of the thirty email accounts at issue who actually moved to quash.

        This all began with a subpoena to Microsoft to provide certain limited information with respect to thirty identified email accounts. Three John Does, who claim to own three of the thirty email addresses, and the defendants in the New York action to which this controversy relates, moved to quash the subpoenas. The three John Does who filed the motion to quash purported to do so on behalf of the unidentified owners of the other twenty seven email accounts. Following the June Order, these three John Does – plus the unidentified alleged owner of a fourth email account mentioned in the subpoena – filed a notice and an amended notice of appeal, again presumably purporting to represent the interests of the owners of the more than two dozen account owners who never sought relief in this Court.

        In any case, these individuals now seek a stay pending appeal.

        There is no need to write extensively on this point. The standards governing such applications are set out in *Nken v. Holder,* 5566 U.S. 418, 419 (2009). Substantially for the reasons advanced in Chevron's papers opposing the motion [DI 63], the Court is unpersuaded by the appellants' arguments. It writes to note only this:

        1.      There is no substantial reason to suppose that the three John Does who moved to quash before this Court had or have standing to assert any claimed rights or interests of anyone other than themselves. Indeed, only last month, the Ninth Circuit denied a stay pending appeal with respect to those parts of the contested subpoenas that related to email account information with respect to accounts that were not owned by the litigants in a closely related and highly similar case, writing:

"The remainder [of the email addresses] are addresses for which appellants have not claimed ownership. We are not presented with a facial challenge to an allegedly overbroad statute, where First Amendment concerns may justify a lessening of prudential limitations on standing ([citations omitted]), but rather, an as-applied challenge to two specific subpoenas. Appellants have not raised a substantial question on the merits with respect to the district court's holding that appellants lack standing to quash the subpoenas as to these email addresses." *Chevron Corp. v. Donziger,* No. 13-16920 (9th Cir. filed Oct. 25, 2013, at 3).

Appellants' contrary argument is frivolous.

2.  The suggestion that this "Court erred by holding that there is an affirmative duty to plead citizenship in a First Amendment case, even in the absence of any party having challenged standing" [DI 62, at 4], is frivolous, as the Court held no such thing. Rather, the Court held that, as the Supreme Court has held, "any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry,* 133 S.Ct. 2652, 2661 (2013). The three individuals who claimed to be the owners of three of the thirty email addresses initially failed to allege or prove that they were U.S. citizens[1] rather than "foreign nationals acting outside the borders, jurisdiction, and control of the United States" and thus persons whose interests did "not fall [outside] the interests protected by the First Amendment." June Order, at 9-10 (quoting *DKT Memorial Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 283–85 (D.C. Cir. 1989)). Nor did they ever make any such allegations or offer any such proof as to the owners of the twenty seven other email accounts in which they claimed no ownership interest.

In all the circumstances, the motion is denied in all respects.

SO ORDERED.

Dated:     December 9, 2013

_____
Lewis A. Kaplan
United States District Judge

---

[1]     The owner of one of the three accounts later asserted on a motion for reconsideration that he is a U.S. citizen. The Court accepted that assertion for pleading purposes in the July Order.