# 13-2784-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHEVRON CORPORATION,

PLAINTIFF-APPELLEE,

V.

NON-PARTY JOHN DOE SIMEONTEGEL@HOTMAIL.COM, NON-PARTY JOHN DOE MEY_1802@HOTMAIL.COM, NON-PARTY JOHN DOE PIRANCHA@HOTMAIL.COM, NON-PARTY JOHN DOE DURUTI@HOTMAIL.COM,

MOVANTS-APPELLANTS,

V.

STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, DONZIGER & ASSOCIATES, PLLC, JAVIER PIAGUAJE, HUGO GERARDO CAMACHO NARANJO,

DEFENDANTS.

On Appeal from the United States District Court
for the Northern District of New York
Honorable Lewis A. Kaplan, U.S. District Judge

## APPELLANTS' REPLY BRIEF

Nathan Cardozo
nate@eff.org
Cindy Cohn
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333

Richard Herz
rick@earthrights.org
Michelle Harrison
Marco Simons
EARTHRIGHTS, INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Tel: (202) 466-5188

*Counsel for Non-Party John Doe Movants/Appellants*

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ................... 1

II.   STATEMENT OF THE CASE .................................................... 2

    A.    Recent Procedural Developments. ........................................ 2

    B.    Response to Chevron's Statement of Facts. ......................... 3

III.  ARGUMENT .................................................................... 6

    A.    Discovery Is Not Warranted Because the Trial Is Over ...................... 6

    B.    Chevron's Subpoena Should Have Been Quashed Because It Seeks Irrelevant Information and Is Overbroad. ........................... 7

        1.    The Subpoena Seeks Irrelevant Information ............................. 9

        2.    The Subpoena Is Overbroad .................................... 12

        3.    If the Subpoena is Not Quashed, It Should Be Limited to Exclude Irrelevant Information. ............................... 14

        4.    Chevron's Subpoena Targeting Political Opponents and Seeking Nine Years of Location Information and Identifying Information for 30 Non-Parties Is Extraordinary .................... 15

    C.    Chevron's Subpoena Impermissibly Burdens Appellants' First Amendment Rights .......................................................... 17

        1.    Chevron's Subpoena Violates Appellants' First Amendment Right to Anonymity. ................................. 17

        2.    Chevron's Subpoena Violates Appellants' First Amendment Right of Association. .............................. 23

    D.    Appellants Have Standing to Challenge Chevron's Subpoena. ......... 24

1.    All Four Appellants Have Standing to Challenge Chevron's Subpoena on Their Own Behalf.................................................. 24

a.    The U.S. Citizen Appellant Unquestionably Has Standing. ......................................................................... 24

b.    The Non-U.S. Citizen Appellants Have Standing to Challenge Chevron's Use of U.S. Process in the United States.................................................................. 26

2.    Appellants Have Standing to Represent the Interests of Those Non-Parties Targeted by Chevron Who Lack the Wherewithal to Secure Counsel.............................................. 27

IV.    CONCLUSION ........................................................................... 30

# TABLE OF AUTHORITIES

## Federal Cases

*AF Holdings LLC v. Doe,*
    No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806
    (N.D. Cal. May 31, 2012) ............................................................. 15

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) .................................................. 15, 22

*Arizona Right to Life Political Action Comm. v. Bayless,*
    320 F.3d 1002 (9th Cir. 2003) ....................................................... 29

*Buckley v. Am Constitutional Law Found., Inc.,*
    525 U.S. 182 (1999) ................................................................... 25

*Campbell v. Louisiana,*
    523 U.S. 392 (1998) ................................................................... 29

*Chevron Corp. v. Donziger,*
    No. 12-mc-80237 CRB, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ........ 8

*Chevron Corp. v. Donziger,*
    No. 13-mc-80038 CRB (NC), 2013 WL 1402727
    (N.D. Cal. April 5, 2013) ................................................... 4, 21, 22

*Chevron Corp. v. Donziger,*
    No. 1:11-cv-00691-LAK-JCF (S.D.N.Y. Dec. 12, 2012) ............................. 4

*Chevron Corp. v. Donziger,*
    No. 1:12-mc-0065-LAK-CFH (N.D.N.Y. Dec. 9, 2013) .............................. 2

*Concord Boat Corp. v. Brunswick Corp.,*
    169 F.R.D. 44 (S.D.N.Y. 1996) ..................................................... 12

*Convertino v. U.S. Dep't of Justice,*
    684 F.3d 93 (D.C. Cir. 2012) ......................................................... 6

*DKT Mem. Fund v. Agency for Int'l Dev.*,
    887 F.2d 275 (D.C. Cir. 1989)...................................................... 26

*Doe v. 2theMart.com*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001) .................................... 22

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965) ..................................................................... 29

*Estate of Ungar v. Palestinian Auth.*,
    332 Fed. Appx. 643 (2d Cir. 2009) .............................................. 25

*Green v. Baca*,
    226 F.R.D. 624 (C.D. Cal. 2005)................................................. 14

*Healy v. James*,
    408 U.S 169 (1972) ...................................................................... 21

*Huth v. Haslun*,
    598 F.3d 70 (2d Cir. 2010) .......................................................... 28

*In re Apollo Grp., Inc. Sec. Litig.*,
    329 Fed. Appx. 283 (D.C. Cir. 2009)............................................ 6

*In re Roebers*,
    No. 12-mc-80145-RS (LB) 2012 WL 2862122 (N.D. Cal. July 11, 2012).. 16

*John Wiley & Sons, Inc. v. Does 1-30*,
    284 F.R.D. 185 (S.D.N.Y. 2012)................................................. 15

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ..................................................................... 28

*Levin v. Harleston*,
    966 F.2d 85 (2d Cir. 1992) .......................................................... 25

*London v. Does 1-4*,
    279 F. Appx. 513 (9th Cir. 2008) ................................................ 16

*Mattel Inc. v. Walking Mt. Productions*,
    353 F.3d 792 (9th Cir. 2003) ............................................... 12, 14

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ................................................................ 17

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ................................................................. 2

*NAACP v. Alabama*,
    357 U.S. 449 (1958) ................................................................ 21

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ........................................................... 20, 21

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2010) ................................................ 25

*Sony Music Entertainment Inc. v. Does 1–40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ...................................... 22

*United States v. Blechman*,
    657 F.3d 1052 (10th Cir. 2011) ............................................... 12

*United States v. Bortnovsky*,
    879 F.2d 30 (2d Cir. 1989) ..................................................... 11

*United States v. Maynard*,
    615 F.3d 544 (D.C. Cir. 2010),
    *aff'd sub nom. Jones*, 132 S. Ct. 945 .................................... 13

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) ........................................................... 26, 27

*Watchtower Bible & Tract Soc. of N.Y., Inc. v. Village of Stratton*,
    536 U.S. 150 (2002) ................................................................ 17

*Xcentric Ventures, LLC v. Karsen, Ltd.*,
    No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888
    (D. Ariz. Aug. 28, 2012) ......................................................... 16

## Federal Rules

Federal Rule of Civil Procedure 26 ............................................................. 8, 12, 23

Federal Rule of Civil Procedure 45 ............................................................. 6, 8, 12

Federal Rule of Evidence 803 ........................................................................... 11

## Constitutional Provisions

U.S. Const., amend. I ......................................................................... *passim*

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

There is nothing "routine" about the discovery request underlying this appeal. Chevron Br. 39-40. Chevron seeks to enforce this subpoena even after its trial has ended. And it claims that it should be allowed to learn the non-parties' identities, and track their locations, as well as their political, social and intimate associations over the course of nearly a decade, because it has alleged that *others* have committed a fraud against it. Furthermore, while Chevron claims to know the non-parties' names, it argues that it still needs this evidence "confirm" those names at this late date, despite the fact that it has alleged no causes of action against the non-parties. Finally, Chevron urges that, even if its subpoena is constitutionally infirm and overbroad, no one has standing to challenge its action.

Chevron's contentions conflict with both Appellants' constitutional rights and the basic rules of discovery. Chevron's subpoena seeks irrelevant information and fails to meet the distinct and exacting legal standards that protect the identities and associations of the non-party Appellants. Far from satisfying those tests, Chevron's subpoena appears to be a blatant attempt to intimidate and harass the non-parties to discourage them from participating in the policy debate surrounding the environmental consequences of Chevron's oil extraction — core political expression protected by the First Amendment. Regardless, the Court should reject Chevron's overbroad and unconstitutional subpoena.

1

## II.    STATEMENT OF THE CASE

### A.    Recent Procedural Developments.

On November 16, 2013, the trial proceedings to which this subpoena relates formally concluded and Judge Kaplan announced that the record was "irrevocably" closed. *See infra* Section III.A.

Two weeks later, Judge Kaplan denied Appellants' application for a stay of enforcement pending the outcome of this appeal, *Chevron v. Donziger,* No. 1:12-mc-0065-LAK-CFH, Order Denying Motion for Stay, ECF No. 70 (N.D.N.Y. Dec. 9, 2013) ("NDNY ECF") – a motion that had been filed eight weeks earlier – and granted Chevron's motion to compel, despite the fact that he had not ordered production before the conclusion of the trial. NDNY ECF No. 69. The district court ordered Microsoft to comply by December 16, 2013. *Id.* at 2.

On December 11, 2013, Appellants moved this Court for an emergency stay of production to ensure that this appeal is not partially mooted. NDNY *Chevron v. Donziger*, No. 13-2784-cv, ECF No. 76 ("Second Cir. ECF"). On December 16, 2013, this Court denied Appellants' request for a stay. [1] Second Cir. ECF No. 92.

---

[1] Presumably, Microsoft will produce the requested information to Chevron shortly. This appeal is not mooted however, as this Court may still order the disclosed documents returned or destroyed. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105 (2009) (discovery order implicating the a privilege can be adequately reviewed on appeal). Counsel for Chevron has confirmed to the undersigned that Chevron will maintain the confidentiality of the data in the interim.

**B.    Response to Chevron's Statement of Facts.**

Chevron's statement of facts primarily describes the alleged conduct of the defendants. While Chevron claims that the *non-party* Appellants were "[i]ntimately [i]nvolved [i]n [t]he [f]raudulent Ecuador [l]itigation," Second Cir. ECF No. 75 at 14 ("Chevron Br."), its evidence entirely fails to support that claim. Even assuming that the *defendants* committed the fraud the Chevron has alleged, Chevron has provided no evidence that Appellants were involved in, or even knew of, any fraud.

For example, Chevron claims the owner of simeontegel@hotmail.com was the Communications Director of Amazon Watch, a public critic of Chevron and the environmental catastrophe Chevron caused. Chevron claims that he "publicized and distributed the fraudulent Cabrera report" and helped further the fraud "by writing false letters to news entities." Chevron Br. at 15. But there is no allegation that he was involved in drafting the report, and the only "evidence" to which Chevron cites are emails about letters to the editor and press releases calling public attention to harms caused by Chevron's operations, JA163-69, 171, 173-75, all of which were written before the independence of the Cabrera report had been questioned, and none of which have any bearing on Chevron's claim that the judgment in Ecuador was fraudulently procured.

3

Moreover, Chevron's enforcement attempt merely reasserts allegations against Amazon Watch that have already been fully litigated and decisively rejected. When Chevron attempted to enforce "egregiously overbroad" subpoenas against Amazon Watch and its Executive Director, it argued – through multiple briefs and dozens of exhibits – that Amazon Watch was involved in fraud. *Chevron Corp. v. Donziger*, No. 13-mc-80038 CRB (NC), 2013 WL 1402727 at *3-7, 15 (N.D. Cal. April 5, 2013). The court, however, held that "all evidence before this Court suggests otherwise." *Id.* at *4; *see also id.* at 4 ("all that Chevron has shown . . . is that Amazon Watch has been very critical of Chevron's operations in Ecuador").[2] Similarly, even Judge Kaplan denied Chevron's discovery request seeking "communications relating to AMAZON WATCH" and discovery into the advocacy campaign. *Chevron v. Donziger,* Case No. 1:11-cv-00691-LAK-JCF (S.D.N.Y. Dec. 12, 2012) Order at 65 (ECF No. 658-23) ("SDNY Action").

Chevron speculates that the owner of mey_1802@hotmail.com is Maria Eugenia Yepez, whom it claims set up meetings between the defendants and Ecuadorian political figures, the Ministry of Health and the Ecuadorian Supreme

---

[2] The court also refused to conclude Amazon Watch was funded or directed by Donziger, an allegation Chevron makes again here. Chevron Br. at 15; *id.* at 55. The court noted that, "[e]ven if this Court assumes that Amazon Watch was the mouthpiece for the RICO defendants, there is nothing to suggest that Amazon Watch's campaigns and speech were more than mere advocacy and were likely to incite or produce imminent lawless action." *Chevron Corp.*, 2013 WL 1402727 at *4.

Court. Chevron Br. at 15-16. Chevron provides no evidence to support its outlandish allegation that these alleged meetings "helped fix the judgment." *Id*.

At trial, Chevron's case depended upon the triple hearsay testimony of disgraced former Judge Guerra, whose credibility has been irreparably undermined. Guerra claims that the defendants bribed Judge Zambrano to allow them to write the Lago Agrio judgment, but Guerra has already been paid more than $158,000 in cash by Chevron, with a promise of at least $326,000 through January 2015, in addition to numerous other non-cash benefits. *See* SDNY Action, ECF No. 1422 at 6 (Def. Motion for Terminating Sanctions); *id.* at 5 (listing extensive cash and non-cash payments promised through 2015). *See also* SDNY Action, ECF No. 755-14 (Chevron's contract with Guerra). Moreover, Guerra has testified to taking numerous bribes while serving as a judge (SDNY Action, ECF No. 1640 at 1 (Def. Motion to Strike the Testimony of Guerra)), to lying to Chevron on multiple occasions about the defendants in order to improve his bargaining position with Chevron (*see, e.g., id.* at 13; SDNY Action, ECF No. 1422 at 16-17), and to soliciting a bribe from Chevron to fix the Lago Agrio judgment in Chevron's favor, *see e.g.,* SDNY Action, ECF No. 1422 at 16; SDNY Action, ECF No. 1640 at 12.

## III.    ARGUMENT

### A.    Discovery Is Not Warranted Because the Trial Is Over.

Chevron's only justification for the subpoena was its claimed need for the discovery at trial. But trial is now over, the record is closed, and this Court should not enforce the subpoena.

Ordinarily, and for good reason, the end of the trial for which a Rule 45 subpoena was issued voids that subpoena. *See e.g., In re Apollo Grp., Inc. Sec. Litig.,* 329 Fed. Appx. 283, 284 (D.C. Cir. 2009); *Convertino v. U.S. Dep't of Justice,* 684 F.3d 93, 101 (D.C. Cir. 2012).

The RICO trial officially concluded on November 26, 2013, with Judge Kaplan stating that "[t]he record is now at this moment, subject to getting [the deposition designation list], closed." SDNY Action, Trial Transcript, at 2963:12-13 (Nov. 26, 2013). *See also id.* at 2931:20-21 ("[w]e will close this record today"); *id*. at 2963:16-17 ("That ship has sailed irrevocably whether anybody is on it or not."). Although Judge Kaplan has suggested he *might* entertain a motion to reopen the record, that is irrelevant, because the absence of a pending trial in the Southern District *voids* the Northern District subpoena. Chevron's argument that it might be able to use this information to file a motion for reconsideration of a final verdict, Chevron Br. at 38, similarly fails. *Convertino*, 684 F.3d at 101 (holding that the end of a trial voids outstanding subpoenas despite the prospect of a motion for

reconsideration). Regardless, nothing in the requested information would provide any grounds for reconsidering a verdict against Chevron. *See infra* Section III.B.1. Notably, the requested information could not rehabilitate disgraced Judge Guerra, Chevron's key witness.

Nor should the Court fashion some exception to the rule that the subpoena is void, because Chevron has not "diligently pursued" the requested materials. Chevron Br. at 38. Chevron did not move to compel production until more than a year after it served the subpoena, more than four months after the May 31, 2013 discovery cutoff and just days before the start of its trial *See* SDNY Action, ECF No. 494. And of course, Chevron chose not to seek to expedite this appeal, which has been pending since July 18, 2013, months before the start of trial.

That Chevron has continued its attempt to enforce this subpoena, even after the close of trial, and especially given the limited utility of this information to Chevron (*see infra* Section III.B.1.), exacerbates the concern that the real purpose of this subpoena is to harass and intimidate the activists, interns, young lawyers, volunteers and journalists, both in the United States and around the world, who have supported the Ecuador campaign.

**B.    Chevron's Subpoena Should Have Been Quashed Because It Seeks Irrelevant Information and Is Overbroad.**

While this case raises significant First Amendment anonymity, right of association, and standing questions, the subpoena can and should be quashed for

7

much more simple reasons: it is overbroad and does not seek relevant admissible evidence. Even if the Court were to find that the subpoena is not moot, the fact that the trial is over means that Chevron must do more than simply show that the subpoena "appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b). Since there will be no further discovery, Chevron must show that the subpoena will produce relevant, admissible evidence. It cannot do so.

As a threshold matter, Chevron's standing argument is irrelevant to the overbreadth analysis required of the district court. There is no question that the Appellants have standing to contest the subpoena's overbreadth on their own behalf, and the district court had an independent obligation to ensure that all of the discovery sought – even that regarding the unrepresented non-parties – is relevant. Fed. R. Civ. P. 26(b)(2)(C) (where the burden of discovery exceeds the benefit, the court "on its own . . . must limit" discovery); Fed. R. Civ. P. 45(d)(1) (court "must enforce" party's duty to avoid imposing undue burden). Opening Br. at 47, n.13; *see also Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB, 2013 WL 4536808 at *4 (N.D. Cal. Aug. 22, 2013). The district court abused its discretion in ordering Chevron's subpoenas enforced with respect to the non-movants' addresses without even considering whether the information ordered disclosed was discoverable.

### 1.    The Subpoena Seeks Irrelevant Information.

Chevron's claim for nearly a decade's worth of location tracking information on the non-party Appellants rests on the bald assertion that every one of them were "intimately involved" (Chevron Br. at 36) and "provided significant assistance to the [defendants'] fraudulent enterprise." Chevron Br. at 42. That is nonsense, *even assuming* that the defendants committed the fraud the Chevron has alleged. This can be seen both with regard to the specific Does, *see supra* Section II.B., and more generally.

For example, with regard to the owner of simeontegel@hotmail.com, who Chevron asserts was the Communications Director of Amazon Watch, Chevron is simply seeking to re-litigate baseless allegations that have already been rejected. *Supra* Section II.B. And given that Judge Kaplan has previously concluded that Amazon Watch communications need not be disclosed, *see id.*, it is difficult to see how identity and IP log information of someone Chevron alleges worked for Amazon Watch is relevant.

More broadly, none of the information Chevron seeks has any relevance to its fraud theory. Chevron claims to need this information to support its various claims of document sharing. For example, Chevron claims that the "defendants and their affiliates established email accounts to store and exchange documents in furtherance of the fraud." Chevron Br. at 36. But Chevron has not accused these

9

specific non-parties of having participated in sharing, let alone provided any evidence of it. *Id.*

Regardless, the information Chevron seeks – identity information and login information – would absolutely not indicate whether the non-parties' accounts assisted the defendants in sharing any specific documents. *Id.* at 40. The login IP addresses do not indicate whether any documents (or other content) were shared, modified, or even accessed during any particular login, much less shared with whom. *Id.* at 36. Thus, the evidence obtained will not support key witness Guerra, who claims that the judgment was written by the defendants and later transmitted to the issuing Judge. Tellingly, Chevron has failed to present any evidence that drafts of the Ecuadorian judgment had been emailed or shared among the targeted non-party addresses, either in the record of this motion or at the underlying trial, and they will not get that evidence with this subpoena.

Equally unavailing is Chevron's claim that it needs this discovery to demonstrate that RICO predicate acts occurred in the United States. Chevron Br. at 36-37. Absent evidence that the any of the account holders were participants in fraudulent acts, their locations are irrelevant to prove where the defendants were when the RICO predicate acts took place. Of course, Chevron presented no such evidence of the non-parties' participation in the alleged predicate acts. *Id.* Indeed,

if Chevron were interested in the location of specific acts of alleged fraud, it would have focused the subpoena on the time periods of those specific acts.

Chevron also asserts, with no support, that identifying information, (but not the IP logs), would assist in determining the structure and management of the alleged fraud. Chevron Br. at 37. That is pretext, because on the very same page, Chevron asserts that it "likely knows the account holders' identities." *Id.* Regardless, Chevron provides no evidence that its targets actually participated in any fraud. *Id.* And it does not say how the identity information of these non-party Appellants, and other unrepresented non-actors in the fraud, would help it determine the structure the alleged enterprise.

Last, Chevron claims that the identity information will "substantiate the identities of the accountholders in a form usable at trial." Chevron Br. at 13. But the "identifying information" it seeks – specifically the subscriber information given to Microsoft at the time of account registration – is inadmissible hearsay. The record of subscriber information maintained by Microsoft could fall within the business record exception. *See* Fed. R. Evid. 803(6). But any statements by the *non-party* Appellants, even if contained within Microsoft's business records, are hearsay within hearsay for which no exception exists. *See United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) (statement of a third-party contained within otherwise admissible insurance report properly excluded where third-party

was under no business duty to report); *United States v. Blechman*, 657 F.3d 1052, 1065-66 (10th Cir. 2011) (information concerning identity of third-party over Internet was not admissible under business records exception to hearsay rule).

In any event, now that the trial has ended, Chevron should be able to specifically identify how the information sought could be used to help prove the claims presented at trial. Yet it has failed to do so. Indeed, Chevron apparently did not deem similar discovery obtained from Google and Yahoo sufficiently relevant or useful to even refer to it at trial. The Court should not permit Chevron's demand for information about these individuals' day-to-day activities without a well-documented showing – wholly absent here – that the information is relevant to the conspiracy it alleges. The subpoena should be quashed in its entirety.

### 2. The Subpoena Is Overbroad.

The subpoena must also be quashed because it is grossly overbroad under Federal Rule of Civil Procedure 26(c). Opening Br. at 47-48. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51 (S.D.N.Y. 1996) (a subpoena that is "overbroad on its face, and as such, falls within Rule 45(c)(3)(A)" must be quashed); *Mattel Inc. v. Walking Mt. Productions*, 353 F.3d 792, 813 (9th Cir. 2003) (upholding the quashing of a subpoena that was "too broad for the explanation given").

By demanding nine years and counting of detailed email usage information, Chevron seeks to catalog the account holders' daily movements. Chevron's demand is not limited to the IP data regarding specific communications, specific dates, specific communications with the defendants, or even specific communications with non-defendants. This information creates what the D.C. Circuit called an "intimate picture" of the subjects' travels and activities, stretching far beyond anything even conceivably relevant. *See e.g. United States v. Maynard*, 615 F.3d 544, 563 (D.C. Cir. 2010), *aff'd sub nom. Jones*, 132 S. Ct. 945 (emphasis added) (thirty days of location information). Chevron has no need to know where anyone was when he emailed birthday wishes to his cousin, or asked his mom for a recipe, or tried to catch up with a friend or did any of the innumerable other things that people do by email every day, information that even the district court recognized would be disclosed to Chevron. JA238-39. It is thus plain on the face of the subpoena that it demands far more information than Chevron could possibly need.[3]

Notwithstanding this facial overbreadth, it was Chevron's burden to show that discovery was properly limited to relevant information and Chevron was obligated to frame its subpoena to exclude such obvious irrelevancies. Because

---

[3] Chevron suggests that movants, with the exception of the owner of simeontegel@hotmail.com, did not meet their burden because they did not provide a declaration. Chevron Br. at 58. But no case law suggests that a movant must also provide a declaration when overbreadth is clear from the subpoena itself.

Chevron has not attempted to adequately tailor the subpoena, the subpoena should be quashed. *See Mattel*, 353 F.3d at 813 (subpoenas should be quashed if not tailored "to the immediate needs of the case"); *Green v. Baca*, 226 F.R.D. 624, 654 (C.D. Cal. 2005) ("The party issuing the subpoena must demonstrate . . . that the information sought is relevant and material to the allegations and claims at issue in the proceedings.") (internal quotation omitted). Chevron made no effort to tailor its demands to particular communications, particular dates or communications with particular email addresses. And Chevron surely had the ability to do so, particularly since it identified the accounts at issue here by reviewing documents recovered from Donziger's hard drive. Chevron Br. at 12.

### 3. If the Subpoena is Not Quashed, It Should Be Limited to Exclude Irrelevant Information.

While this overbreadth justifies quashing the entire subpoena, if this Court disagrees, it should order the lower court to limit any disclosure to the IP information associated with specific dates or communications with specific, relevant individuals. Even the district court recognized that, with respect to the one email address it considered, it is exceedingly unlikely that all this information, or even a sizeable percentage of it, is relevant to Chevron's claims. JA254. As the district court found, "Chevron has offered no argument why it has any compelling need for" the full nine years of detailed email usage information, which would

14

provide a catalog of the account holder's daily movements since 2003, and that to do so could "intrude upon certain protected activities." *Id*.

But if the scope for one non-party must be narrowed, there is no possibility that nine years of IP logs for each of the other 29 non-parties targeted by Chevron are directly and materially relevant to the case. The scope of the subpoena should be similarly limited with respect to all of the targets.

### 4. Chevron's Subpoena Targeting Political Opponents and Seeking Nine Years of Location Information and Identifying Information for 30 Non-Parties Is Extraordinary

The subpoena in this case is unprecedented. Chevron claims that courts "routinely" uphold subpoenas like this one. Chevron Br. 39-40. But the examples provided by Chevron are far different from the present case and indeed, to counsel's knowledge, no court has approved unmodified a subpoena of this scope targeting non-parties.

Many of the largely unpublished authorities Chevron cites involve plaintiffs seeking identity information about *defendants* to facilitate service of process. *John Wiley & Sons, Inc. v. Does 1-30*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012); *see also, AF Holdings LLC v. Doe,* No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806, at *2-3 (N.D. Cal. May 31, 2012) (seeking identity of defendant in copyright infringement case); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 113, 124 (2d Cir. 2010) (same).

Other cases Chevron cites are equally inapposite. *In re Roebers*, No. 12-mc-80145-RS (LB) 2012 WL 2862122, at *3 (N.D. Cal. July 11, 2012), concerned Irish divorce proceedings where wife sought information about *her own accounts* arising from husband's illegal access to her private communications. *London v. Does 1-4*, 279 F. Appx. 513, 514-15 (9th Cir. 2008), concerned French divorce proceedings where wife sought account information to confirm that *her husband* had been using the accounts to solicit sex online. Finally *Xcentric Ventures, LLC v. Karsen, Ltd.,* No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888, at *1-3 (D. Ariz. Aug. 28, 2012), did not even engage in a First Amendment test, since the question at issue was whether a protective order should issue and the information sought was about use of a business advertising account at Google, not a personal account.

Additionally, none of the authorities Chevron cites addressed subpoenas aimed at tracking the movements of non-parties. Chevron tries to elide the critical distinction between discovery about parties and non-parties by claiming that "Does were all agents of either the defendants in the RICO action or their co-conspirators." Chevron Br. at 40. There is no evidence of agency on the record; Chevron's targets here are not parties and do not become so by virtue of Chevron's mudslinging.

16

**C.    Chevron's Subpoena Impermissibly Burdens Appellants' First Amendment Rights.**

**1.    Chevron's Subpoena Violates Appellants' First Amendment Right to Anonymity.**

Chevron argues that the First Amendment's protections for anonymous speech and association are inapplicable because the expressive activities here are not truly anonymous and that, in any event, Chevron's "need" for the information trumps those interests. Chevron is incorrect.

Chevron does not disagree that, under Supreme Court precedent, the appearance of absolute secrecy of a speaker's identity is not necessary for First Amendment protections to apply. *See* Chevron Br. at 42; Opening Br. at 26-27. Instead, Chevron argues that Appellants "have not maintained secrecy regarding their identities—in 'appearance' or in fact." *Id.* Chevron is incorrect, both as a matter of fact and as a matter of law.

As the Supreme Court noted, "[T]he decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-2 (1995). And of course, in both *McIntyre* and *Watchtower Bible & Tract Soc. of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002), the Supreme Court protected the right of anonymity of people whose identity was obviously not secret – Ms. McIntyre as she handed

17

out pamphlets at Westerville, Ohio town meetings and Watchtower members as they proselytized in the Village of Stratton, Ohio. None of the Does here were as publicly identifiable as those individuals. It is enough to trigger First Amendment protection that Appellants here have chosen to withhold their identities in the expressive and associational activities in question; whether they have done so successfully, or done so in other contexts, or even whether such secrecy is their goal, is irrelevant.

Factually, Chevron is simply wrong that the e-mail handles themselves identify the Does. *See* Chevron Br. at 41-42. Specifically, three of the four Appellants' addresses, "mey_1802@hotmail.com," "priancha@hotmail.com," and "duruti@hotmail.com" do not point to any particular person, let alone evince some objective intent to announce specific authorship.[4] It is simply not the case that these three Does have chosen email addresses that breach their own anonymity.

Chevron also suggests that the ability of a third party to find through an Internet search engine what it believes to be evidence tying authorship to a particular person also undermines the First Amendment interest of the speaker. *Id*.

---

[4] Chevron points to a web page—http://chapaik.freserv.com/—as evidence that Rodrigo Wampakit of Maruma, Ecuador is the operator of priancha@hotmail.com. Chevron Br. at 42. As of December 12, 2013, counsel was unable to access this site. The "evidence" of ownership Chevron points to in the record, JA219 n.5, is a citation to Judge Kaplan's independent investigation of the same site and his supposition as to that Appellant's identity. But *that* "evidence" is not in the record, was the product of an improper judicial inquiry, is to the best of counsel's knowledge factually incorrect, and is inadmissible hearsay.

But the cleverness or lack thereof of a legal adversary to reverse engineer the identity of an anonymous speaker hardly seems relevant to determining whether "the Does chose *not* 'to remain anonymous,'" the test Chevron urges on this court Chevron Br. at 42.

Chevron next argues that "The Does have disclosed their associations with the [defendants]." Chevron Br. at 42. Yet this, too, is irrelevant. Chevron cites, for example, Maria Eugenia Yepez's "participat[ion] in radio interviews about her involvement in the [defendants'] public relations effort." Yet this fact has no bearing on whether the account holder behind the e-mail address "mey_1802@hotmail.com" is indeed Ms. Yepez or should be unmasked. And the associations sought here stem far beyond just possible associations with the Defendants – anyone who logged in from the same IP address as the Does, from family members to friends to professional contacts, will be identifiable as an associate by the data sought. Additionally, as even the district court recognized, Appellants' personal and political associations, *entirely apart from the Ecuador campaign*, will be revealed by the data Chevron seeks. JA238-39.

Chevron argues that Appellants should be unmasked because they "provided significant assistance to the [defendants'] fraudulent enterprise." Chevron Br. at 42; see also *id*. at 43 (arguing that "The First Amendment, moreover, does not protect fraudulent activity or associations that further a conspiracy"). But as noted

19

above, there is no evidence that Appellants themselves committed fraud or were members of the alleged conspiracy. The most Chevron can say is that the alleged owner of simeontegel@hotmail.com, was part of a public advocacy campaign along with the defendants. Chevron Br at 15. Yet this activity is at the core of the First Amendment.

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982), forecloses Chevron's effort to brand its targets as co-conspirators based on their exercise of their First Amendment rights. To show that advocacy speech is not protected, Chevron must prove not only that the speech itself was part of some fraud, but also that the speaker had a specific intent to further that fraud. *Id*.; Opening Br. at 28-30. Chevron does not even attempt to meet its burden for the owner of simeontegel@hotmail.com, much less for the other non-parties, nor did the district court find that it had.

Instead, Chevron claims that *Claiborne Hardware*'s protections somehow do not apply because this is a discovery dispute. Chevron Br. at 43. But it makes no difference that *Claiborne Hardware* considered whether the defendants could be held liable, because the case turned on whether their expressive conduct could be *deemed illegal.* The Court expressly "h[e]ld that the nonviolent elements of petitioners' activities are entitled to the protection of the First Amendment" without any caveat regarding the nature of the action. 458 U.S. at 415. Indeed, in

20

finding that First Amendment protections are inapplicable only if the actor has "specific intent to further . . . illegal aims," *Claiborne Hardware* relied on *Healy v. James*, which did not involve any form of liability. 458 U.S. at 919-20 (quoting *Healy v. James*, 408 U.S 169, 186 (1972)). And Chevron posits no reason why speech that is protected by the First Amendment in the context of a damages suit should nonetheless be considered unprotected in the context of a discovery dispute. *See contra NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (discovery intended to reveal associations with those "engaged in advocacy of particular beliefs" interferes with the First Amendment).

As in *Claiborne Hardware*, Chevron's argument that the First Amendment does not protect movants because their speech furthered a conspiracy requires that Chevron define public speech as illegal. But Chevron cannot have it both ways. It cannot argue that its broad subpoena is justified and that the targets can be stripped of constitutional rights because they allegedly were conspirators, and then spin on its heel and argue that it need not meet the strict standards of *Claiborne Hardware*, which carefully circumscribe who can be deemed a conspirator and the circumstances in which expressive activity can be defined as illegal.

Thus, when Chevron made this exact argument in defending its Amazon Watch subpoenas, that court correctly held that *Claiborne Hardware* applies. *Chevron*, 2013 WL 1402727 at *4. Indeed, "Chevron's counsel admitted that there

are no cases in which courts have found that running a pressure campaign brings speech outside the protection of the First Amendment and entitles a party to discovery." *Id*. Not surprisingly then, Chevron has not provided any such cases here.

Chevron's reliance on *Sony Music Entertainment Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) and *Arista Records*, 604 F.3d at 114, is also misplaced because those cases sought the identities of anonymous *party defendants*, directly accused of violating the law, in order to effectuate service of process on them so that the case could proceed. Where discovery attempts are directed at non-parties like Appellants, the appropriate standard is instead the one articulated by the district court in *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001); Opening Br. at 33-38. The *2theMart* court addressed, as neither the *Sony* nor *Arista Records* courts were asked to do, the additional and necessary discovery protections warranted for non-parties to prevent harassment, overburdening, and abuse. As the *2theMart* court noted:

> The standard for disclosing the identity of a non-party witness must be higher . . . When the anonymous Internet user is not a party to the case, the litigation can go forward without the disclosure of their identity. Therefore, non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker.

*2theMart.com*, 140 F. Supp. 2d at 1095.

No such exceptional circumstances exist here. As noted above, the subpoena is massively overbroad. These and other failures – such as Chevron's failure to exhaust other obvious avenues to obtain the information it argues it is entitled to under the subpoena – renders the subpoena not only unenforceable under Federal Rule of Civil Procedure 26, but also unenforceable under the First Amendment. *See* Opening Br. at 34-38.

### 2. Chevron's Subpoena Violates Appellants' First Amendment Right of Association.

Chevron fails entirely to respond to Appellants' evidence of the chilling effect that would be caused by Chevron gaining access to their IP addresses – and thus their locations and who they have associated with at every check of their email since 2003. Instead, Chevron rests its entire argument on the challenged revelation of the non-party Appellants' identities. As a result, Chevron has abandoned its attempt to defend its right to access the login IP addresses. Since Chevron presents no response to Appellants' claims that this information fails to meet the high standards under the right of association, this Court should quash the subpoena as to the login IP addresses of the Non-Party Appellants.

Even as to the associational harms due to the revelation of the identities of the Does, Chevron presented no evidence below, and points to none on appeal, to counter the Does' declarations that they felt chilled and intimidated by Chevron's

subpoena. These declarations meet the "light" standard for demonstrating a prima facie case of chilling effect. Opening Br. at 43-45.

Instead of addressing Appellants' unrebutted evidence that their speech will be chilled, Chevron makes the bald claim that it has a "compelling interest" in the information. Yet this is plainly untrue and nowhere has Chevron identified that interest. As noted above, not only is the underlying trial over and its record closed, but the discovery sought regarding the non-parties is irrelevant to the claims Chevron has made against defendants. *See supra* Section III.B.1.

### D. Appellants Have Standing to Challenge Chevron's Subpoena.

#### 1. All Four Appellants Have Standing to Challenge Chevron's Subpoena on Their Own Behalf.

Chevron's current arguments about the four Appellants are a 180-degree reversal from their position below, where it admitted that the four Appellants have standing to challenge its subpoena. JA24-25. To be sure, this Court must be satisfied that Appellants meet the requirements of Article III, and as Chevron understood at the outset, Appellants do so with ease.

##### a. The U.S. Citizen Appellant Unquestionably Has Standing.

Chevron's claim that the U.S. citizen Appellant will not suffer injury in fact (*see* Chevron Br. at 34-35) goes far beyond the district court's holding, is entirely without precedent, and is plainly incorrect.

As threshold matter, Chevron errs in claiming that the U.S. Citizen Appellant asserts only an interest in his anonymity. Chevron Br. at 35. Appellants assert their First Amendment interests in their mailing addresses, billing information, nicknames usage information, and IP logs which would allow Chevron to track their locations and associations over the course of years. *See, e.g.,* JA160, JA27-28. Such disclosure would constitute injury in fact even if it did not violate Appellants' constitutional rights. But in addition, Appellants made a showing, undisputed by Chevron, that disclosure of the information Chevron seeks would chill that Appellant's speech and associations. JA10-12; Opening Br. at 10-12. That chilling effect is a cognizable injury sufficient to confer standing. *See Levin v. Harleston*, 966 F.2d 85, 89-90 (2d Cir. 1992) (allegation of concrete chilling effect on speech is sufficient to confer First Amendment standing); *see also Buckley v. Am Constitutional Law Found., Inc.*, 525 U.S. 182, 192 (1999).

If Chevron's newly-minted claim that the disclosure of one's name, mailing address, billing information, and years' worth of detailed location information does not constitute injury is correct, then no litigant would ever have standing to challenge a subpoena such as Chevron's here, a holding inconsistent with established law. *See Estate of Ungar v. Palestinian Auth.*, 332 Fed. Appx. 643, 645 (2d Cir. 2009) (non-party claiming privilege has standing to challenge subpoena); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1143-45 (9th Cir. 2010) (quashing

25

subpoena for personal information, with the clear indication that the movant had shown injury in fact). Appellants have an obvious interest in the privacy of this information and will therefore suffer injury if it is disclosed, particularly since the admitted purpose of the disclosure is to give a detailed map of their identifying information and travels to associate with their political opponents.

> **b.    The Non-U.S. Citizen Appellants Have Standing to Challenge Chevron's Use of U.S. Process in the United States.**

A subpoena issued by a United States District Court to an American email provider, seeking data located within the United States, must comport with U.S. law. As Chevron admits, non-citizens have standing to bring First Amendment claims if they have "substantial connections" to this country. Chevron Br. at 29; *see, e.g., DKT Mem. Fund v. Agency for Int'l Dev.*, 887 F.2d 275, 283-85 (D.C. Cir. 1989). Contrary to Chevron's claim, Appellants do not seek extraterritorial application of the First Amendment, but rather to apply settled American law to the enforcement of Chevron's domestic subpoena.

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), upon which Chevron chiefly relies, supports standing. There, a criminal defendant was denied standing to raise a Fourth Amendment challenge to a search that occurred outside the United States because the defendant was an alien "with no voluntary attachment to the United States, and the place searched was located" abroad.

Chevron Br. at 30 (quoting 494 U.S. 259 274-75 (1990)). Both of those points favor standing here. First, Chevron's stated justification for its subpoena is Appellants' voluntary connections with the United States: Chevron claims that the information it seeks will tend to show Appellants' connections with a campaign "designed by U.S. lawyers, carried out largely in the United States, and directed at a U.S." corporation. Chevron Br. at 36-37.[5] Second, the "place searched" in this case – Microsoft's records – are also in the United States and they are here because of Appellants' voluntary use of a U.S.-based email service provider subject to U.S. laws.

> ### 2. Appellants Have Standing to Represent the Interests of Those Non-Parties Targeted by Chevron Who Lack the Wherewithal to Secure Counsel.

Chevron's formulation of the standard courts in this Circuit use to determine whether to permit third-party standing is substantially in accord with Appellants'; a litigant must show (1) a "hindrance to the third party's ability to protect his . . . own interests" and (2) that there is a "close relationship" between the litigant and the third parties whom the litigant will stand for. *See Huth v. Haslun*, 598 F.3d 70,

---

[5] Chevron's argument that the non-citizen Appellants lack standing contradicts its argument for the relevance of this discovery. In Chevron's view, its subpoena seeks relevant information in part because it will show that certain predicate acts occurred in the United States. Chevron Br. at 36. But if so, then Appellants most certainly have a significant voluntary connection to this country. If, on the other hand, Appellants have no connection to the United States, as Chevron argues in relation to standing (Chevron Br. at 30), then Chevron can hardly claim the discovery is necessary to show that the targets acted in the U.S.

75 (2d Cir. 2010); *see also Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Chevron, however, ignores the undisputed evidence on record regarding both prongs of the test.

First, the "hindrance" here is clear. The record demonstrates that that a number of the email accounts targeted by Chevron no longer function, so their owners could not have received notice via the only method by which it was sent. JA215. This undermines Chevron's claim that each of the unrepresented non-parties have "chosen not to object to Chevron's requests." JA25. Chevron also ignores the fact that one Appellant—the owner of duruti@hotmail.com—was only able to obtain counsel and join the Appellants' motion to quash during the pendency of that motion. JA214. The experience of that Appellant indicates the difficulty the non-parties faced in finding counsel and therefore the "hindrance" to their ability to protect their interests.[6]

Second, Appellants have shown a close relationship to the unrepresented non-parties whose interests they would stand to protect. A close personal relationship is sufficient, but not necessary. A "common interest" can also give rise

---

[6] In addition, Chevron adopts the district court's mischaracterization of the facts of a related challenge to its other subpoenas. The district court found that Appellants here were unhindered in part because two *other* non-parties were able to challenge Chevron's subpoenas *pro se*. JA253-254. Chevron claims that those two non-parties, John Rogers and Laura Belanger, are owners of some of the accounts here. Chevron Br. at 27-28. Chevron is fully aware that Mr. Rogers and Ms. Belanger are not among the account holders before this Court, but rather have challenged Chevron's subpoena to Google in California. JA92-93.

to third-party standing. In *Campbell v. Louisiana*, 523 U.S. 392, 398 (1998), the Supreme Court addressed the claim of a defendant on behalf of grand jurors he had never met and could never meet. The Court held because the third-parties "share[d] with him a common interest" in protecting the constitutional interest at stake, the defendant had shown the requisite "close relationship" with the absent parties. *Id*.

Here again, Chevron's own briefing makes clear that the interests of the unrepresented targets and of Appellants are identical. Chevron alleges that each of its targets participated in a single campaign of expressive activity aimed at holding Chevron accountable for the destruction of portions of the Ecuadorian Amazon. Chevron Br. at 36, JA28. Indeed it alleges that they were all part of the same fraud. *Id*. Because Chevron seeks the same categories of information from each target, and because they are being targeted for identical reasons, Appellants' First Amendment interests are the same as those of the unrepresented non-parties.

It is well-settled that, in First Amendment cases, there are "unique standing considerations" that tilt dramatically toward a finding of standing. *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (the First Amendment provides an "exception to the usual rules governing standing")). Chevron's subpoena here clearly impacts speech – it was issued solely to identify and track the location of those who participated in expressive activity that Chevron dislikes: the Ecuador

29

campaign's "legal and public relations strategies." JA18. Appellants should be permitted standing to protect the identical interests of the absent non-parties.

## IV.  CONCLUSION

For the reasons stated above as well as in Appellants' Opening Brief, Appellants respectfully request that this Court reverse the order of the district court, and quash the subpoena in its entirety.

Dated:  December 16, 2013      By:   /s/ Nathan D. Cardozo

Nathan D. Cardozo
nate@eff.org
Cindy Cohn
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333

Richard Herz
rick@earthrights.org
Michelle Harrison
Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Tel: (202) 466-5188

*Counsel for Movants-Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify as follows:

1.    This Appellants' Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,451 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 for Mac, the word processing system used to prepare the brief, in 14 point Times New Roman font.

Dated: December 16, 2103

By:  /s/ Nathan D. Cardozo
        Nathan D. Cardozo

*Counsel for Movants-Appellants*