# 12-4671-cv(L)

**12-4708-cv(CON), 12-4765-cv(CON), 13-4719-cv(CON),**
**13-4750 cv(CON), 13-4751-cv(CON), 13-4752-cv(CON),**
**14-32-cv(CON), 14-117-cv(CON), 14-119-cv(CON), 14-133-cv(CON),**
**14-157 cv(CON), 14-159-cv(CON), 14-192-cv(CON), 14-197-cv(CON),**
**14-219-cv(CON), 14-225-cv(CON), 14-241-cv(CON), 14-250-cv(CON),**
**14-266-cv(CON), 14-303-cv(CON), 14-331-cv(CON), 14-349-cv(CON),**
**14-404-cv(CON), 14-422-cv(CON), 14-443-cv(CON), 14-480-cv(CON),**
**14-497-cv(CON), 14-530-cv(CON), 14-567-cv(CON), 14-584-cv(CON),**
**14-606-cv(CON), 14-663-cv(CON), 14-837-cv(CON)**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

*IN RE PAYMENT CARD INTERCHANGE*
*FEE AND MERCHANT DISCOUNT*
*ANTITRUST LITIGATION*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**OBJECTORS-APPELLANTS FDC'S PAGE PROOF REPLY**
**BRIEF**

Jason A. Yurasek
Anahit Samarjian
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: 415.344.7000

*Attorneys for Objectors-Appellants*
*First Data Corporation, First Data Merchant Services Corporation, First Data*
*Government Solutions, TASQ Technology, Inc., TRS Recovery Services, Inc.,*
*Telecheck Services, Inc. and their affiliates*

## TABLE OF CONTENTS

**PAGE**

OPENING STATEMENT ........................................................................1

ARGUMENT .........................................................................................2

I. FDC'S CONSTITUTIONAL DUE PROCESS RIGHTS ARE
VIOLATED BY MANDATORY PARTICIPATION IN THE RULE
23(B)(2) CLASS ...........................................................................2

    A. The Settlement Agreement violates constitutional due process
because its release language is broad enough to preclude future
money damages claims not litigated by the class. .............................2

    B. Settlement Agreements do not comport with constitutional due
process when class members' relief is illusory. ...................................6

II. THE SETTLEMENT DOES NOT MEET THE REQUIREMENTS
OF RULE 23(B)(2) .......................................................................9

III. THE DISTRICT COURT FAILED TO PROPERLY CONSIDER
FDC'S OBJECTIONS ..................................................................12

IV. THE DISTRICT COURT HAD DISCRETION TO GRANT OPT-
OUT RIGHTS TO FDC AND SHOULD HAVE DONE SO ......................15

CONCLUSION ....................................................................................16

TABLE OF AUTHORITIES

PAGE

CASES

*County of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir. 1990) ...........................................................................15

*Holmes v. Continental Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) ......................................................................15

*In re Motor Fuel Sales Practices Litig.*,
    271 F.R.D. 263 (D. Kan. 2010) ..........................................................................7

*In re Visa Check/MasterMoney Antitrust Litigation*,
    192 F.R.D. 68 (E.D.N.Y. 2000) ........................................................................10

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .........................................................................10

*LaGarde v. Support.com*,
    2013 WL 1283325 (N.D. Cal. 2013) ..................................................................7

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) .........................................................................15

*Marcera v. Chinlund*,
    559 F.2d 1231 (2d Cir. 1979) ............................................................................8

*NaBanco v. Visa U.S.A., Inc.*,
    779 F.2d 592 (11th Cir. 1986) ........................................................................10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) .............................................................................8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)....................................................................................3, 8

*Paycom Billing Services v. MasterCard Int'l, Inc.*,
    67 F.3d 283 (2d Cir. 2006) .............................................................................10

*RJE Corp. v. Northville Indus. Corp.*,
    329 F.3d 310 (2d Cir. 2003) ................................................................5

*SCFC ILC, Inc. v. Visa U.S.A., Inc.*,
    36 F.3d 958 (10th Cir. 1994) ............................................................10

*Target Corp. v. Visa Inc.*,
    No. 1:13-cv-03477 (S.D.N.Y. Aug. 13, 2013) ..................................10

*United States v. Visa U.S.A., Inc.*,
    344 F.3d 229 (2d Cir. 2003) ............................................................10

*Visa U.S.A., Inc. v. First Data Corp.*,
    No. 02-1786 (N.D. Cal. Apr. 15, 2002) ...........................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................3, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..............................................................10

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ..............................................................15

## STATUTES

Fed. R. Civ. P. 23 ...................................................................1, 8, 15

Fed. R. Civ. P. 23(b) .....................................................................13

Fed. R. Civ. P. 23(b)(2).............................................................passim

Fed. R. Civ. P. 23(b)(3).................................................................2, 7

## OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte, 5 Newberg on Class Actions § 16.17
    (4th ed. 2012) ..................................................................................15

## OPENING STATEMENT

Despite the length and complexity of their briefs, Defendants and Class Plaintiffs gloss over and misstate important arguments that are at the core of FDC's[1] appeal. First, FDC (and the other objectors) never argued that release of future monetary damages *per se* violates constitutional due process. Instead, FDC's point has always been that constitutional due process is violated when a settlement agreement attempts to release future monetary damages for *future* rules that did not exist and were not litigated in this lawsuit—which is the case here— without giving mandatory class members the right to opt out of the settlement. This position is supported not only by the weight of authority, but common sense.

Second, where a mandatory settlement class is defined so broadly that non-merchants like FDC are included despite the fact that they are competitors of Defendants and are not "merchants" in any sense of the word, the requirements of Rule 23 cannot be met because non-merchants like FDC were not represented in this settlement, let alone "adequately" represented.

As for FDC's concerns that Defendants may attempt to use the extremely broad settlement release language to bar future lawsuits by FDC in its role as a

---

[1] Objectors-Appellants First Data Corporation, First Data Merchant Services Corporation, First Data Government Solutions, TASQ Technology, Inc., TRS Recovery Services, Inc., Telecheck Services, Inc. and their affiliates are collectively referred to as "FDC."

competitor, Defendants engage in double talk:  out of one side, they assure the Court that claims from competitors *as* competitors are not—indeed, cannot legally be—barred by the settlement, while out the other, they assert that any questions about the scope of preclusion of future lawsuits should be—indeed, must legally be—decided and litigated in the future.  The Court should reject it outright.

Each of these concerns would have been eliminated if the district court had used its discretion to grant FDC's motion to opt out of the 23(b)(2) settlement class, just as it opted out of the 23(b)(3) settlement class.  The district court abused its discretion in approving the settlement and denying FDC's motion to opt out and this Court should, at minimum, remand to the district court with instructions to grant FDC's motion.

## ARGUMENT

## I.   FDC'S CONSTITUTIONAL DUE PROCESS RIGHTS ARE VIOLATED BY MANDATORY PARTICIPATION IN THE RULE 23(B)(2) CLASS

### A.   The Settlement Agreement violates constitutional due process because its release language is broad enough to preclude future money damages claims not litigated by the class.

FDC's due process argument is much simpler than Defendants and Class Plaintiffs try to make it.  Disparate parties with vastly differing interests were forced to accept a settlement that precludes them from suing Defendants, even for

individualized money damages, for future network rules that are different than the rules that were at issue in this lawsuit. Class members have no right to opt out of this settlement, despite the fact that it takes away their right to sue for money damages for conduct different than that at issue in the litigation, even if, like FDC, they receive *no relief* in return. This violates the tenets of constitutional due process as discussed in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ("[S]erious constitutional concerns raised by the mandatory class resolution of individual legal claims, especially where a case seeks to resolve future liability in a settlement only action") and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011) ("[S]erious possibility" that the "absence of notice and opt-out" in a mandatory Rule 23(b)(2) class violates due process) and the district court abused its discretion in approving such a settlement.

The district court's reasoning for discounting these arguments must be examined and rejected. First, the trial court noted that *some* class members are traditional merchants who will benefit from the broad injunctive relief granted by the settlement. SPA36-43. This dovetails with Defendants' self-serving assertions that the settlement will exert pressure on the market, causing merchants to *potentially* make choices that increase consumer choice and exert downward pressure on fees and prices. But even if this entirely speculative view of the

consequences of the settlement is accepted as true,[2] it only underscores why a non-merchant entity like FDC should have been given the right to opt out.

FDC is not a merchant—it derives less than half a percent of revenues on credit card transactions. JA[_] {DE 4654 at p.1}. FDC's acceptance of credit cards is entirely incidental to its functioning as a business, in that credit card transactions take place only when, for example, employees buy lunch in the company cafeteria or pay for shipping services using the company mailroom. *Id.* Changes to Defendants' network rules would not affect FDC as a merchant, but would certainly affect FDC as a competitor, and could impede FDC's ability to act as a safeguard for consumers in the payments industry, as explained in detail in FDC's Opening Brief. *See* FDC Br. at 34-36.

FDC will not benefit *in any way* from even the idealized benefits of the settlement described by Defendants and Class Plaintiffs in their briefs. And yet, according to the settlement language itself, FDC will arguably be precluded from suing Defendants in the future for individualized money damages for *new network*

---

[2] There are, in any case, good reasons to doubt Defendants' assertions that market pressures will increase competition. *See* Report of Professor Jerry Hausman, JA[_] {DE 2670-5} and Report of Alan O. Sykes JA[_] {DE 5965 at pp.35-43}.

*rules* despite the fact that it is not anything like the merchants who form the class and that it cannot benefit from the relief provided.[3]

Defendants' only response to this argument is a *post hoc* assurance that the settlement language will not bar claims from FDC (or other competitors like American Express and Discover). But Defendants' assurances run counter to the actual settlement agreement's language. *See* SPA169-171 (Irrevocably waiving all and any claims and damages based on "the future effect …[of Defendants' acts] related to or arising out of interchange rules, interchange fees, or interchange rates, …or any Rule substantially similar to any of the foregoing Rules").

Such *parol* assurances provide cold comfort to FDC, particularly because Defendants go on to argue that any question about the scope of future rules must be determined in the future. *See* Defendants' Joint Appellate Brief (Dkt. 1123) at 71 ("[W]hether a particular (presently hypothetical) claim—based on changed network rules, an evolution in payment or processing technology, or other conduct—falls within this case's factual predicate is a determination to be made in *that* case, not this one.").

---

[3] Because due process forbids resolving unaccrued future claims by settlement with no opt-out rights, FDC does not waive its right to bring future lawsuits against defendants even if approval of the settlement agreement is affirmed.

In any future litigation, a court would look to the four corners of the settlement agreement itself as the primary determinant of the scope of any releases. *See, e.g.*, *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (Where an agreement "is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the instrument, and not from extrinsic evidence."). This is black letter law. Moreover, if Defendants truly did not mean to bar suits from FDC and others as competitors, they could have said so in the language of the settlement itself. The district court's own appointed expert suggested as much.[4] But the parties did not take this step to alleviate the problem, and the Court should not accept their post-settlement assurances and overlook this failure.

**B.      Settlement Agreements do not comport with constitutional due process when class members' relief is illusory.**

As FDC and other objectors pointed out, 42% of all credit transactions occur in states that prohibit surcharging, rendering the main injunctive relief component of allowing surcharging meaningless. The district court's justification for ignoring

---

[4] Sykes Report, JA[_] {DE 5965 at p.51} ("The parties and the Court might usefully consider whether modifications to the release or guidance regarding its construction might be desirable in relation to the effects of the release on possible future antitrust claims involving new and emerging payments technologies." )

this fact was unpersuasive. SPA38-39. The court's statements that (1) surcharging in states where it is permitted "may well inure to the benefit" of merchants in states that prohibit surcharging; (2) there is "reason to believe" some of the states that prohibit surcharging only sometimes enforce their laws; and (3) state law can "change," are mere speculations that do not counter the *fact* that FDC gets no useful injunctive relief because it is not a merchant and because it operates in states that prohibit surcharging.

Neither the district court nor the parties cite a single case in support of approving a settlement with similarly illusory injunctive relief under Rule 23(b)(2). And the cases they do cite are inapposite. For example, in *LaGarde v. Support.com*, 2013 WL 1283325 (N.D. Cal. 2013), the court certified a Rule 23(b)(3) class from which members were allowed to opt out, and thus the analysis of whether class members chose to benefit from the injunctive relief offered bears no resemblance to the issues in this case, where members of the Rule 23(b)(2) settlement class were not given the right to opt out. In *In re Motor Fuel Sales Practices Litig.*, 271 F.R.D. 263, 289 & n.36 (D. Kan. 2010), some settlement class members had objected to the fact that they would not benefit from the proposed injunctive relief if they chose not to be members of the warehouse club in the future or moved to different states where the relief would not be available. The

*Motor Fuel* case again emphasizes why the relief offered in this litigation is illusory—class members in the states that prohibit surcharging cannot *choose* to surcharge because they are legally prohibited from participating in the relief provided. Other cases in which class members *chose* not to participate in a settlement's available injunctive relief are inapposite, and neither Class Plaintiffs nor Defendants cite to any cases like the instant one where a settlement was approved.

Here, even if a Rule 23(b)(2) class member in one of the states that prohibits surcharging *desires* to participate in the injunctive relief by surcharging customers, it cannot do so. It is true that the district court and Defendants could not do anything by means of this litigation to change state law. It is also true that there is a policy in favor of settlements. But it is not true that a class member who faces a complete barrier to injunctive relief should be forced to accept a settlement that takes away its right to sue for money damages just because the district court cannot change the laws. *See, e.g.*, *Marcera v. Chinlund*, 559 F.2d 1231, 1240 (2d Cir. 1979) (Paradigmatic 23(b)(2) classes seek "classwide structural relief that would clearly redound equally to the *benefit of each class member*.") The correct result, of course, is either not to approve the settlement or to allow class members to opt out and preserve their right to challenge the conduct.

-8-

The purpose of due process protections for mandatory class members is to ensure that litigants are not forced into legal decisions "regardless either of their consent, or, in a class with objectors, their express wish to the contrary." *Ortiz*, 527 U.S. at 846-47. The requirements of Rule 23 also reflect this concern. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 182 n. 27 (3d Cir. 2001) (Prerequisites of class certification "constitute a multipart attempt to safeguard the due process rights of absentees.") The parties' arguments that this lawsuit could not have changed state law did not give the district court the right to annul its duty to deal with the mandates of constitutional due process in approving a broad settlement agreement and release. To approve such a settlement was an abuse of discretion.

## II. THE SETTLEMENT DOES NOT MEET THE REQUIREMENTS OF RULE 23(B)(2)

Contrary to Class Plaintiffs' and Defendants' arguments, FDC has never argued that Rule 23(b)(2) class settlement releases are *per se* inappropriate if they release claims for damages. Instead, FDC argued that a no-opt-out release cannot release claims for money damages for new, future rules that were not at issue in this litigation.

FDC has two specific concerns about the future releases. First, the settlement language releases claims for rules that are "substantially similar" to the

network rules at issue here, but of course such a phrase is inherently vague and ambiguous. Second, Defendants' insistence on waiting until future litigation commences to determine whether rules are "substantially similar" is a grave concern when Visa and Mastercard have histories of claiming that past releases broadly cover all future conduct[5] and where a long line of antitrust disputes in the payments industry has shown the importance of the right to litigate in preserving competition in the payments industry. *See, e.g.*, *NaBanco v. Visa U.S.A., Inc.*, 779 F.2d 592 (11th Cir. 1986) (challenge to interchange fees); *SCFC ILC, Inc. v. Visa U.S.A., Inc.*, 36 F.3d 958 (10th Cir. 1994), *cert. denied*, 515 U.S. 1152 (1995) (market concentration in issuing); *Visa U.S.A., Inc. v. First Data Corp.*, No. 02-1786 (N.D. Cal. filed Apr. 15, 2002) (monopolization, tying, and concerted refusals to deal); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) (merchant discount and interchange fees); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (interchange fees in debit card transactions and challenging "honor all cards" rules); *Paycom Billing Services v. MasterCard Int'l, Inc.*, 67 F.3d 283 (2d Cir. 2006) (challenging excessive chargeback activity);

---

[5] As a recent example, *see Target Corp. v. Visa Inc.*, No. 1:13-cv-03477 (S.D.N.Y. Aug. 13, 2013) (Dkt. 85-86) (Visa and MasterCard moved to dismiss antitrust lawsuit filed against them by 17 retailers on the grounds that claims were barred by release agreements from the 2003 settlement of *In re Visa Check/MasterMoney Antitrust Litigation*, 192 F.R.D. 68, 72-73 (E.D.N.Y. 2000), aff'd , 280 F.3d 124 (2d Cir. 2001), cert. denied, 122 S. Ct. 2382 (2002).)

*United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003) (prohibition on member banks to issue American Express and Discover cards).

Even in this case, Defendants ask the Court to gloss over the fact that the Fixed Acquirer Network Fee ("FANF") was never litigated but is released from future claims on the sole basis that FANF came into existence before the effective date of the settlement. Dfdts' Jt. Brf. at 69 fn. 21. That Defendants try to claim the FANF argument is waived because it was raised in a footnote of Merchants' Brief is telling, because Defendants' argument on the merits is silly: they state simply that FANF theoretically could have been litigated in this case and is thus barred by the release found in the settlement. But Defendants cannot seriously contend this. FANF was not imposed on merchants by Visa until April 2012, seven years after this litigation was commenced and years after parties participated in discovery, expert reports, and all aspects of the general adversarial process of this case. *See* FDC Br. at 15-16. Yet Defendants admit their position is that no class member can ever sue over FANF. At the same time, Defendants attempt to convince the Court that the settlement language does not preclude future claims over matters not litigated here. These radically inconsistent notions must be rejected.

Where, as here, Defendants have a long history of attempting to preclude litigation on the basis of past settlements, the Court should not leave releases of

competitors' claims to be decided in future litigation when the problem of overbroad release language can be addressed presently, either with clarification of the actual settlement language, or with opt-outs from competitors like FDC.

## III. THE DISTRICT COURT FAILED TO PROPERLY CONSIDER FDC'S OBJECTIONS

In addition to inadequate analysis of the settlement agreements' broad release language barring future claims for monetary damages based on different rules than those litigated, the district court failed to properly consider and analyze various other objections of FDC and others.

For example, the district court glossed over both the FANF issue described above and other problems with the scope of releases of future claims, including those related to developing mobile payments systems.[6] The court's own appointed expert, Alan O. Sykes, expressed concerns over the settlement's treatment of emerging technologies that were clearly not litigated in the case:

> "[I]t is possible that certain existing or 'substantially similar' rules or conduct may have future anticompetitive effects that are not apparent presently, particularly as to their effects on new and emerging payments technologies … a release covering the future effects of all existing or 'substantially similar' conduct or rules raises a danger of

---

[6] Further, the district court also failed to analyze the problems with the settlement agreement's definition of "Credit Card," which is broad enough to include mobile telephone payments, which largely did not exist when class plaintiffs commenced this litigation in 2005, yet which are included in the category of claims that are released. *See* FDC Br. at 15-16.

-12-

adverse, unintended consequences in a technologically dynamic industry, consequences that are inevitably somewhat speculative at this time. The parties and the Court might usefully consider whether modifications to the release or guidance regarding its construction might be desirable in relation to the effects of the release on possible future antitrust claims involving new and emerging payments technologies."

JA[_] {DE 5965 at pp.49-51}.

Yet, the district court failed to explain how these concerns were adequately addressed or how the settlement met the requirements of Rule 23(b) despite these problems.

Neither did the district court or Defendants address the serious concerns raised about Rule 23(b)(2) classes in *Dukes*. In *Dukes*, the Supreme Court made clear its concerns about the due process rights of Rule 23(b)(2) class members giving up monetary damages claims, and the language of the case suggested the concern applied broadly to all Rule 23(b)(2) classes, not just to the facts of that case. *See* 131 S. Ct. at 2559 ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process. While we have never held that to be so where the monetary claims do not predominate, the serious possibility that it may be so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here.") (citation omitted).

The district court simply addressed the concerns over 23(b)(2) certification by writing:

> "Because all the members of the injunctive relief class were subject to the same rules, and because the relief afforded by that class is a change to those rules, the class satisfies the requirement that defendants have 'acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole.' Fed. R. Civ. P. 23(b)(2). As discussed above, the rules reforms created by the settlement – in particular, the ability for merchants to surcharge – affect all (b)(2) class members equally."

SPA53.

But the relief afforded to the 23(b)(2) class by the rules reforms does *not* affect all (b)(2) class members equally, since by the terms of the settlement releases, individualized monetary damages for future claims based on new or "substantially similar" rules changes are barred. Even aside from that point, it is abundantly clear that even the surcharging rules changes do not affect all (b)(2) class members equally *now*, since many of the class members will not be able to surcharge at all due to state laws and others will be barred because of the American Express rule.[7]

---

[7] As explained thoroughly in FDC's Opening Brief, the settlement agreement contemplates that merchants who accept competitor credit cards (*e.g.,* American Express) also cannot pass interchange fees onto consumers if the competitor card does not allow such surcharging. SPA141-145; 154-158. FDC accepts competitor

## IV.   THE DISTRICT COURT HAD DISCRETION TO GRANT OPT-OUT RIGHTS TO FDC AND SHOULD HAVE DONE SO

The district court had authority to grant FDC's request to opt out.  *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982); *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 n.6 (9th Cir. 1998) ("This court has held that the option to opt-out is discretionary in cases, like this one, brought under Rule 23(b)(2)"); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304-05 (2d Cir. 1990) ("[A] district court, in a proper case and in the exercise of sound discretion, may allow a class member to opt out of a [mandatory class] in order to facilitate 'the fair and efficient conduct of the action.'"); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) (In some cases, a "determination that  the situation of [a party seeking opt-out rights] was distinguishable from that of the general class provides a sound reason for authorizing" court's granting of opt-out rights when they are not usually authorized by Rule 23);  *see also* Herbert B. Newberg & Alba Conte, 5 Newberg on Class Actions § 16.17 (4th ed. 2012) (courts authorized under discretionary power to grant opt-out rights).

Despite its authority, the district court neither ruled on FDC's motion nor addressed its implicit denial in its order.  An opt out for FDC would have avoided a

---

credit cards including American Express, rendering the injunctive relief even more worthless.  JA[_] {DE 4654 at p.17}.

violation of FDC's constitutional due process rights.  Instead, denial of FDC's

motion forced FDC to become a class member to a settlement that violates its

rights.  It was an abuse of discretion for the district court not to address FDC's

request and the motion to opt out should have been granted.

## CONCLUSION

Based upon the foregoing, this Court should reverse the district court's final

approval of the Rule 23(b)(2) class settlement and remand the action for further

proceedings.  At a minimum, this Court should remand to the district court with

orders to grant FDC's Motion to Opt Out of Rule 23(b)(2) Class Settlement.


DATED:  November 25, 2014              **PERKINS COIE LLP**


                                       By: */s/ Jason A. Yurasek*
                                           Jason A. Yurasek
                                           JYurasek@perkinscoie.com

                                       Attorneys for Objectors-Appellants
                                       First Data Corporation, First Data
                                       Merchant Services Corporation, First
                                       Data Government Solutions, TASQ
                                       Technology, Inc., TRS Recovery
                                       Services, Inc., Telecheck Services, Inc.
                                       and their affiliates

**CERTIFICATION OF COMPLIANCE
PURSUANT TO FED. R. APP. 32(A)(7)(C) AND
CIRCUIT RULE 32-1 FOR CASE NUMBER 12-4671**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,067 words, excluding portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

DATED:  November 25, 2014

**PERKINS COIE LLP**

By: */s/ Jason A. Yurasek*
    Jason A. Yurasek
    JYurasek@perkinscoie.com

Attorneys for Objectors-Appellants
First Data Corporation, First Data
Merchant Services Corporation, First
Data Government Solutions, TASQ
Technology, Inc., TRS Recovery
Services, Inc., Telecheck Services, Inc.
and their affiliates

# CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s):  12-4671

I hereby certify that I electronically filed and served the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Second Circuit by

using the appellate CM/ECF system on November 25, 2014.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.


Signature:    */s/ Sheila M. Merrill*

-1-