# 12-4671

## United States Court of Appeals

### *for the*

### Second Circuit

---

IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT
DISCOUNT ANTITRUST LITIGATION

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**PAGE PROOF REPLY BRIEF FOR APPELLANTS
RETAILERS AND MERCHANTS OBJECTORS**

---

PARKER WAICHMAN, LLP
6 Harbor Park Drive
Port Washington, NY 11050
(516) 723-4620

DUNCAN FIRM, P.A.
900 S. Shackleford, Suite 725
Little Rock, AR 72211
(501) 228-7600

THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201
(501) 374-1058

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

I.     Settlement Proponents Fail to Justify the Settlement's Disregard of the
       Interests of Merchants Such as 105 Degrees and Whole Hog Barbecue –
       Who Cannot Surcharge ......................................................................... 3

II.    Settlement Proponents Fail to Justify the False Claims in the Notice .......... 8

CONCLUSION ............................................................................................. 10

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Rules</u>

Federal Rule of Civil Procedure 23(b)(2) ...................................................... *passim*

## PRELIMINARY STATEMENT

Appellants Retailers and Merchants ("R&M") Objectors—a diverse group of 65 businesses operating retail outlets in 13 states—joined in the opening briefs filed by the Merchant Appellants [ECF No. 983] and the Merchant Trade Groups [ECF No. 973], and join in the reply briefs filed by these Appellants. The R&M Objectors submit this separate reply brief to highlight the failure of Settlement Proponents to justify a Settlement that was falsely represented in the Notice, and provides ***no value*** to many R&M Objectors.[1]

Settlement Proponents offer no justification for constructing a Settlement of the diverse claims of a class of merchants (certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure) by directing the Settlement's primary relief—a limited right to surcharge credit cards—to only a portion of the class. Proponents' briefs implicitly confirm that the Settlement gives virtually nothing to the majority of the (b)(2) class that, in the words of the district court, "will, as a practical matter, be precluded from surcharging Visa and MasterCard products." SPA41.

---

[1] As Appellants stated in their opening briefs and in support of their motion for case management relief, Appellants coordinated their briefs to avoid duplication. Defendants' observation that the R&M Merchants and others failed to cite *Illinois Brick* or to grapple with the underlying merits of the class case overlooks this effort to coordinate. *See, e.g.*, Defs. Br. at 41.

1

The R&M Objectors' opening brief vividly illustrated the inadequacy of the Settlement and the conflicts it creates among such class members. For example, R&M Objectors like 105 Degrees—a restaurant in Oklahoma that is barred by state law from surcharging—and Whole Hog Barbecue—a merchant that accepts American Express, and thus is barred from surcharging by the Settlement's anticompetitive level-playing-field provision—never would have released their valuable injunctive and monetary damages claims for an unavailable "right" to surcharge if their interests had been separately represented at the negotiating table.

Similarly, even merchants that are not legally barred from surcharging have differing interests in gaining a "right" to surcharge. Merchants that operate in the center of states that permit surcharging have a different interest in surcharging from the interests of merchants like those R&M Objectors that operate in Texarkana and Fort Smith, Arkansas, where they are theoretically permitted to surcharge, but operate *across the street* from businesses in Texas that are legally barred from doing so.

Settlement Proponents respond to the fact of these divergent interests by alternating between pretending all merchants have gained the ability to surcharge, and treating the many merchants that are precluded from surcharging as second class

2

citizens whose interests must take a back seat to the interests of merchants that are being awarded an actual right to surcharge.

**I.     Settlement Proponents Fail to Justify the Settlement's Disregard of the Interests of Merchants Such as 105 Degrees and Whole Hog Barbecue— Who Cannot Surcharge**

The opening brief of the R&M Objectors highlighted the absolute lack of interest merchants like 105 Degrees and Whole Hog Barbecue have in the Settlement's obtaining of a limited right to surcharge—that is unavailable to them. Settlement Proponents' response to this showing actually demonstrates the short shrift that was given to the interests of such merchants.

Settlement Proponents repeatedly—and inaccurately—characterize the Settlement's limited right to surcharge as a universal right that has been bestowed on all merchants in the (b)(2) class. For example, Defendants claim that merchants "won the ability" to surcharge. Defs. Br. at 15. Similarly, Class Plaintiffs refer to "merchants' newfound ability to surcharge." Class Br. at 69. In fact, merchants such as 105 Degrees and Whole Hog did not win any such "ability to surcharge" due to state laws barring surcharging and Settlement Proponents' own act in crafting a level-playing-field provision the precludes merchants that accept American Express from having any such ability.

Even when Settlement Proponents implicitly acknowledge that merchants such as 105 Degrees and Whole Hog do not actually have any such ability, they

3

reveal that the interests of such merchants were secondary to architects of the Settlement. Settlement Proponents' response to 105 Degrees and the millions of merchants located in no-surcharge states is to point out that "[m]erchants in those states previously faced *two* independent obstacles to surcharging—prohibitions from the networks and from the states—and now face only one." Class Br. at 64 (emphasis in original).

This is cold comfort to merchants like 105 Degrees, still barred from surcharging yet bound to a mandatory (b)(2) class and its broad release of existing and future claims. Class Plaintiffs also falsely suggest that these laws only "impede" the ability to surcharge, Class Br. at 64, rather than ban it with unmistakably clear language. SPA229 ("No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card or debit card in lieu of payment by cash, check or similar means.").

Class Plaintiffs also repeat the district court's suggestion that there is "reason to believe" that "'at least some state laws are enforced in a manner that prohibits surcharging only when the merchant fails to sufficiently disclose the increased prices for credit card use.' SPA38." Class Br. at 65. However, as the R&M Objectors pointed out in their opening brief, R&M Opening Br. at 36-37, neither Class Plaintiffs nor the district court cite anything in support of this "belie[f]," which

4

is actually contradicted by the uniformly plain language of the no-surcharge statutes. *See* SPA215-32. Visa's own website urges consumers facing surcharges in states like Oklahoma to "report the retailer to their state attorney general's office." JA___ [Dkt. 2670-8, Ex. 73, Shinder Decl.].

For many merchants in states that permit surcharging, the situation is similar. Whole Hog, one of many R&M Objectors from Arkansas, must accept American Express to remain competitive. Whole Hog cannot take advantage of the Settlement's primary relief because it is prohibited by the "level-playing-field requirement" from surcharging under the Settlement. SPA141-44, 154-57 (Settlement ¶¶ 42(a), 55(a)).

Class Plaintiffs argue that the Settlement cannot be held to account for the "choice" of merchants who "choose to maintain their relationships" with American Express. Class Br. at 63-64. Putting aside the odd stance Class Plaintiffs adopt— that an antitrust settlement with two dominant payment networks ought to result in merchants ending their "relationships" with the third—Class Plaintiffs have no answer to the charge that it is the *Settlement* that enabled Visa and MasterCard to adopt identical surcharging rules to eliminate the possibility of inter-brand competition through a facially anticompetitive "level-playing-field" provision. And while Class Plaintiffs cite the recent proposed (and not yet approved) settlement of

5

the American Express class action, that settlement would only make inter-brand competition *less* likely.

Indeed, as the R&M Objectors explained in their opening brief, by the terms of *this Settlement*, the three networks, Visa, MasterCard, and American Express, have the potential to engineer identical surcharge rules to eliminate competition between them. As long as the dominant networks maintain their current relative pricing parity, under the Settlement, each of them is immune from network competition via merchant threats to surcharge, and each lacks any incentive to change its surcharging rules adopted in tandem through this Settlement.

Settlement Proponents act as if the competitive card brand limitation is a force of nature, and the American Express "problem" an "external" one beyond the reach of the Settlement. Class Br. at 64. But this is a problem of their making, not nature's. Settlement Proponents deliberately crafted a provision of *this Settlement* that imports the rules of American Express, rather than offer a clean rescission of Visa or MasterCard rules that might allow some merchants outside of the 10 states a meaningful choice of whether to surcharge.

Settlement Proponents' discounting of preexisting "problems" affecting the interests of class members as beyond the scope of the Settlement reveals that the interests of merchants who are precluded from surcharging have been sacrificed to

6

the interests of merchants that have won a limited ability to surcharge. Given that most merchants will be precluded from surcharging, the "ability" to surcharge is granted to all merchants only in the same sense that the law (as Anatole France observed) forbids rich and poor alike from sleeping under bridges.

Tellingly, Settlement Proponents ignore the district court's expert, Professor Alan O. Sykes, who undermined the notion that surcharging would have class-wide or nationwide benefits. Professor Sykes "conclude[d] that the value of surcharging . . . is highly uncertain and may be small." JA____ [Memorandum of Prof. Sykes at 43, Aug. 28, 2013, ECF No. 5965]. That conclusion was bolstered by Professor Sykes' acknowledgment that virtually the entire Rule 23(b)(2) class probably will not surcharge under the Settlement—90% of the volume in the class is processed by merchants that accept American Express, and therefore cannot surcharge, and the remaining 10% of volume is processed mainly by smaller merchants that are unlikely to surcharge for fear of losing sales to their larger competitors that cannot (and therefore will not) surcharge. *Id.* at 42.

Significantly, Settlement Proponents never dispute the R&M Objectors' showing that merchants such as 105 Degrees and Whole Hog had no interest in sacrificing their valuable injunctive and damages claims for a limited "right" to surcharge that would, in effect, be given only to other members of the (b)(2) class—

7

but not to them. Far from rebutting this conflict among the members of the class, Settlement Proponents practically concede it by admitting that obtaining this limited ability to surcharge was one of the "primary goals" of Class Counsel. Def. Br. at 46. Despite being forced into that class, merchants such as 105 Degrees and Whole Hog never had any interest in giving up their rights for a rules change that would enable other members of the class—but not them—to surcharge.

In exchange for a "right" to surcharge that is not available to 105 Degrees and Whole Hog, the class representatives here traded away rights that are meaningful to 105 Degrees and Whole Hog, such as their capacity to bring claims against Visa and MasterCard for ongoing damages and injunctive relief in the future.

## II. Settlement Proponents Fail to Justify the False Claims in the Notice

The R&M Objectors' opening brief showed that the Notice falsely claimed that the Settlement would "require" Visa and MasterCard to "change some rules," when in fact those rules had already been changed or did not prohibit the conduct supposedly allowed by the Settlement. In fact, while the Notice stated on the first page in bold type that the Settlement "will require" Visa and MasterCard to "change some rules . . . to allow merchants" to engage in four separate practices, merchants were already allowed to engage in *all of them, except for surcharging*, before the Settlement.

Class Plaintiffs rely heavily on the fact that the district court rejected claims concerning these false statements brought to the lower court's attention before and after the Notice was approved. Class Br. at 84. Class Plaintiffs insist that the Notice "appropriately refers to anti-discounting rule changes" because the Settlement creates an obligation to "lock-in" these earlier reforms. *Id.* If the Notice had merely made that statement—putting aside that obligation's featherweight—that statement would have been accurate. Instead, neither the district court nor Class Plaintiffs have explained why the Notice falsely states—on the first page, and repeated in the body of the Notice, that the Settlement will require "change[s]" to "rules" when this simply isn't true, as merchants were already allowed to engage in the practice of discounting, group buying, and varying acceptance by trade banner, well before the Settlement.

The problems created by the Notice's false statements are aggravated by the fact that the false claim about discounting was designed to obscure one of the central reasons why a mandatory class should never have been certified in this case—that the surcharging relief at the heart of the Settlement was completely unavailable to millions of class members. Unlike surcharging, which is banned by at least 10 states, discounting, group buying, and varying acceptance by trade banner is permitted nationwide.

9

Such false claims about the value of the Settlement to merchants cannot be considered "scrupulously neutral" or "accurate," as the case law requires. *See* R&M Opening Br. at 23-24. These deceptive statements in the Notice provide a separate ground for reversal.

## CONCLUSION

For the reasons stated above and in the R&M Objectors' opening brief, R&M Objectors respectfully request that this Court reverse the district court's (1) certification of classes, and (2) approval of a Settlement and Notice that failed to provide Class Members an effective opportunity to opt out of classes releasing claims for monetary damages, and which failed to describe accurately the terms of the Settlement and the breadth of the Releases.

Respectfully Submitted,

By:   /s/ Thomas P. Thrash
       Thomas P. Thrash, ABN 80147
       Marcus N. Bozeman, ABN 95287
       **Thrash Law Firm, P.A.**
       1101 Garland Street
       Little Rock, AR 72201
       Telephone: (501) 374-1058

       Jerrold S. Parker
       Jay L.T. Breakstone
       **Parker Waichman, LLP**
       6 Harbor Park Drive
       Port Washington, NY 11050
       Telephone: (516) 723-4620

Phillip Duncan
Richard Quintus
**Duncan Firm, P.A.**
900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone: (501) 228-7600

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE <u>REQUIREMENTS</u>

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(b), because this brief contains 2,126 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 Point Times New Roman type.

Dated:          November 25, 2014

/s/ Thomas P. Thrash _____
Thomas P. Thrash
**Thrash Law Firm, P.A.**
1101 Garland Street
Little Rock, AR 72201

*Attorney for R&M Objectors*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served via U.S. Mail, postage prepaid this 25th day of November, 2014 to the following:

Robbins Geller Rudman & Dowd LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101

Kenny Nachwalter, P.A.
201 South Biscayne Blvd., Ste. 1100
Miami, FL 33131

Robins, Kaplan, Miller & Ciresi, LLP
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402

Sperling & Slater
55 W. Monroe St., Suite 3200
Chicago, IL 6060

Berger & Montague, P.C.
1622 Locust Stree t
Philadelphia, PA 19103

Hangley Aronchick Segal
Pudlin & Schiller
30 North Third Street
Harrisburg, PA 17101

*Co-Lead Counsel for Class Plaintiffs*

*Counsel for the Individual Plaintiffs*

Arnold & Porter LLP
399 Park Avenue
New York, NY 10022

Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY 10019

Holwell Shuster & Goldberg, LLP
125 Broad Street, 39th Floor
New York, NY 10004

Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
2001 K. Street, NW
Washington, DC 20006

*Attorneys for Defendant Visa U.S.A., Inc.*

*Attorneys for Defendant MasterCard
International Incorporated*

Morrion & Foerster, LLP
1290 Avenue of the Americas
New York, NY 10104

Shearman & Sterling, LLP
599 Lexington Avenue
New York, NY 10022

*Attorneys for Defendant
Bank of America*

*Attorneys for Defendant
Barclays Bank*

13

O'Melveny & Myers, LLP
Times Square Tower
7 Times Square
New York, NY 10036

*Attorneys for Defendant*
*Capital One Bank (USA)*

Sidley Austin, LLP
1 South Dearborn Street
Chicago, IL 60603

*Attorneys for Defendant*
*Citibank, N.A.*

Kutak Rock, LLP
1650 Farnam Street
Omaha, NE 68102

*Attorneys for Defendant*
*First National Bank of Omaha*

Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001

*Attorneys for Defendant*
*National City Corporation*

Alston & Bird, LLP
1201 West Peachtree Street
Atlanta, GA 30309

*Attorneys for Defendant*
*SunTrust Banks, Inc.*

Skadden, Arps, Slate, Meagher &
Flom, LLP
4 Times Square
New York, NY 10036

*Attorneys for Defendant JPMorgan*
*Chase & Co.*

Keating Muething & Klekamp, PLL
1 East Fourth Street, Suite 1400
Cincinnati, OH 45202

*Attorneys for Defendant*
*Fifth Third Bancorp*

Wilmerhale
7 World Trade Ctr, 250 Greenwich St.
New York, NY 10007

*Attorneys for Defendant*
*HSBC Finance Corporation*

Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06601

*Attorneys for Defendant*
*Texas Independent Bancshares, Inc.*

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

*Attorneys for Defendant*
*Wachovia Bank, NA*

14

Friedman Law Group, LLP
270 Lafayette Street, Suite 1410
New York, NY 10012

*Attorneys for Plaintiffs*
*in No. 05-cv-5074*

Constantine Cannon, LLP
335 Madison Ave, 9th Floor
New York, NY 10017

*Attorneys for Plaintiff NATSO, Inc.*

Vorys, Sater, Seymour & Pease , LLP
52 East Gay Street
Columbus, OH 43215

*Attorneys for Objector*
*Target Corporation*

Schlam, Stone & Dolan, LLP
26 Broadway, 19th Floor
New York, NY 10004

*Attorneys for Amicus Curiae*
*U.S. Public Research Interest Group*

Boies, Schiller & Flexner, LLP
575 Lexington Ave., 7th Floor
New York, NY 10022

*Attorneys for Objector*
*American Express Co.*

Freedman Boyd Daniels Hollander
Goldberg & Cline, P.A.
P.O. Box 25326
20 First Plaza, Suite 700
Albuquerque, NM 87102

*Attorneys for Plaintiffs in 05-cv-5075*

Quinn Emanuel
51 Madison Ave., 22nd Floor
New York, NY 10010

*Attorneys for Objector Home Depot*
*U.S.A., Inc.*

Emery, Celli, Brinckerhoff &
Abady, LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

*Attorneys for Objector*
*National Retail Federation*

Perkins Coie, LLP
4 Embarcadero Center, Suite 2400
San Francisco, CA 94111

*Attorneys for Objector*
*First Data Corporation*

Kirkland & Ellis
153 East 53rd Street
New York, NY 10022

*Attorneys for Objector*
*Discovery Financial Services*

15

Miller & Chevalier Chartered
655 Fifteenth St. NW, Suite 900
Washington, DC 20005

*Attorneys for Objector*
*Blue Cross Blue Shield Entities*

Law Offices of Edward F. Siegel
705 South Alton Way # 1C
Denver, CO 80247

*Attorneys for Objector*
*Vicente Consulting, LLC*

Ohio Attorney General Mike DeWine
150 E. Gay Street, 23rd Floor
Columbus, OH 43215

*Attorney for Objector*
*State of Ohio*

The Honorable John Gleeson, USDJ
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

The Law Offices of John J. Pentz
19 Widow Rites Lane
Sudbury, MA 01776

*Attorneys for Defendant*
*Daviss Donuts and Deli*

Joshua R. Furman Law Corp.
15260 Ventura Blvd., Suite 2250
Sherman Oaks, CA 91403

*Attorneys for Objector*
*Jon M. Zimmerman*

State of California Dept. of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

*Attorney for Objector*
*State of California*

/s/ Thomas P. Thrash
Thomas P. Thrash
**Thrash Law Firm, P.A.**
1101 Garland Street
Little Rock, AR 72201

16