# 12-4671-cv(L)

**12-4708-cv(CON), 12-4765-cv(CON), 13-4719-cv(CON), 13-4750-cv(CON), 13-4751-cv(CON), 13-4752-cv(CON), 14-32-cv(CON), 14-117-cv(CON), 14-119-cv(CON), 14-133-cv(CON), 14-157-cv(CON), 14-159-cv(CON), 14-192-cv(CON), 14-197-cv(CON), 14-219-cv(CON), 14-225-cv(CON), 14-241-cv(CON), 14-250-cv(CON), 14-266-cv(CON), 14-303-cv(CON), 14-331-cv(CON), 14-349-cv(CON), 14-379-cv(CON), 14-404-cv(CON), 14-422-cv(CON), 14-443-cv(CON), 14-480-cv(CON), 14-497-cv(CON), 14-530-cv(CON), 14-567-cv(CON), 14-584-cv(CON), 14-606-cv(CON), 14-663-cv(CON), 14-837-cv(CON)**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

## In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

## PAGE-PROOF REPLY BRIEF OF APPELLANTS BLUE CROSS AND BLUE SHIELD ENTITIES AND WELLPOINT ENTITIES

Anthony F. Shelley
  *Counsel of Record*
Adam P. Feinberg
Laura G. Ferguson
Michael N. Khalil
Katherine E. Pappas
Miller & Chevalier Chartered
655 Fifteenth St., NW, Suite 900
Washington, DC 20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: ashelley@milchev.com

November 25, 2014

*Counsel for Blue Cross and
Blue Shield Entities and
WellPoint Entities*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ ii

INTRODUCTION ...................................................................... 1

ARGUMENT .......................................................................... 3

I. The Appellees Do Not Dispute That the Health Insurers Receive No Meaningful Benefit from the Proposed Settlement ................................. 3

II. The District Court's Approval of the Proposed Settlement Should Be Reversed Because, by Including the Health Insurers, the Rule 23(b)(2) Class Failed the Cohesion and Adequacy Requirements for Class Certification ............................................................... 6

    A. By Including the Health Insurers, the Rule 23(b)(2) Class Lacked Cohesion ................................................................ 6

    B. The Class Representatives Could Not Adequately Represent the Health Insurers ........................................................... 11

CONCLUSION ....................................................................... 14

CERTIFICATE OF COMPLIANCE ...................................................... *post*

CERTIFICATE OF SERVICE .......................................................... *post*

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ................................................................... 7

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) .................................................................. 12

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) .................................................................. 11

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005) ................................................................ 7

*Stephenson v. Dow Chem. Co.*,
    273 F.3d 249 (2d Cir. 2001), *vacated in part on other grounds*, 539
    U.S. 111 (2003) ................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................... 7

## Statutes

42 U.S.C. § 300gg ....................................................................................... 9

42 U.S.C. § 300gg-81 .................................................................................. 8

42 U.S.C. § 18011 ........................................................................................ 9

42 U.S.C. § 18032 ........................................................................................ 9

## Other Authorities

45 C.F.R. Part 158, Subpart B (Oct. 3, 2013) .............................. 8, 9, 11

45 C.F.R. § 147.102 ..................................................................................... 9

45 C.F.R. § 147.140 ..................................................................................... 9

45 C.F.R. § 156.80 ....................................................................................... 9

CCIIO, Insurance Standards Bulletin Series – Extension of
  Transitional Policy through October 1, 2016 (Mar. 5, 2014),
  http://www.cms.gov/CCIIO/Resources/Regulations-and-
  Guidance/Downloads/transition-tocompliant-policies-03-06-
  2015.pdf ................................................................................9

CCIIO, Letter to Insurance Commissioners from Director Gary Cohen
  (Nov. 14, 2013),
  http://www.cms.gov/CCIIO/Resources/Letters/Downloads/commis
  sioner-letter-11-14-2013.PDF ...............................................9

CMS, REGTAP FAQ ID #816a (June 24, 2014),
  https://www.regtap.info/faq_viewu.php?id=816 ....................8

Evi Heilbrunn, *Top Health Insurance Companies*,
  http://health.usnews.com/health-news/health-
  insurance/articles/2013/12/16/top-health-insurance-companies
  (Nov. 5, 2014) ......................................................................10

Fed. R. Civ. P. 23 ...........................................................*passim*

Nat'l Ass'n of Ins. Comm'rs & The Ctr. for Ins. Pol'y & Research,
  *2013 Health Insurance Industry Analysis Report*
  http://www.naic.org/documents/topic_insurance_industry_snapsho
  ts_2013_industry_analysis_report.pdf (last visited Nov. 20, 2014)..................10

# INTRODUCTION

Appellants Blue Cross and Blue Shield entities and WellPoint entities (collectively, "Health Insurers") join and adopt by reference the Joint Reply Brief for the Objectors-Appellants and Plaintiffs-Appellants (Merchant Appellants' Joint Reply Brief).[1] In addition, the Health Insurers submit this short reply to the briefs of the Defendants-Appellees and Plaintiffs-Appellees (collectively, "Appellees") to address the Appellees' response to the Health Insurers' opening brief.

The Health Insurers filed objections to the proposed settlement of the class action filed against Defendants-Appellees Visa, U.S.A., MasterCard International Incorporated, and their respective issuing banks. [Dkt. Nos. 2493, 2643]. In its Memorandum and Order approving the class action settlement agreement, the district court addressed the objections of the Health Insurers in a cursory fashion. The District court "agree[d] with these objectors that no one thought of their unique concern in formulating the settlement," but nonetheless concluded "that is no reason not to approve it." SPA48.

---

[1] For ease of reference, we use the term "Health Insurers" to refer to all of the Blue Cross and Blue Shield entities and the WellPoint Objectors-Appellants, even though a small number of them are not health insurers (although they are affiliated with a health insurer). As with the opening brief, this brief focuses on issues unique to health insurers.

In seeking affirmance of the district court's decision, the Appellees also give short shrift to the objections of the Health Insurers, mentioning their arguments only in passing. *See* Joint Brief of Defendants-Appellees at 41 n.11; Brief for Plaintiffs-Appellees at 34 n.4, 54.

The Health Insurers' objections to the settlement cannot be so easily dismissed. The Health Insurers include some of the largest health insurance companies in the United States, and they raised objections that affect a major U.S. industry. The Health Insurers enjoy virtually no direct benefit from the settlement and yet are included in the non-opt-out Rule 23(b)(2) class, which requires a broad release of future claims. Their inclusion in the Rule 23(b)(2) class demonstrates the lack of cohesion of interests of the class members. And the fact that "no one thought of" the "unique concerns" of a major industry bound by the settlement also demonstrates that the Plaintiffs-Appellees did not adequately represent all the class members. The inclusion of the Health Insurers in the Rule 23(b)(2) settlement class, despite the fact that, due to their unique situation, they received no direct benefit from the settlement, is Exhibit A as to why the district court erred in approving the settlement.

## ARGUMENT

### I. The Appellees Do Not Dispute That the Health Insurers Receive No Meaningful Benefit from the Proposed Settlement

In their briefs, the Appellees largely ignore the class certification flaws and unfairness of the settlement as it relates to the Health Insurers. Neither the Plaintiffs-Appellees nor the Defendants-Appellees take issue with the following fundamental points: (1) the Health Insurers will derive at best a negligible benefit from the Rule 23(b)(3) monetary relief; (2) the Health Insurers will derive little, if any, direct benefit from the Rule 23(b)(2) relief; and (3) despite the lack of consideration, the Health Insurers must release future claims for monetary relief.

As stated in their opening brief, the Health Insurers generally did not engage in significant volumes of credit card transactions before October 2013, the beginning of the first open enrollment period under the Affordable Care Act. *See* Brief of Appellants Blue Cross and Blue Shield Entities and WellPoint Entities ("Health Insurers' Br.") at 8-9. Because most of the Health Insurers did not accept credit cards for health insurance premium payments before 2013, most were not members of the Rule 23(b)(3) cash settlement class. The Rule 23(b)(3) cash settlement class included only those entities that accepted Visa-Branded Cards and/or MasterCard-Branded Cards in the United States at any time from January 1, 2004 to November 28, 2012. *See* SPA13, SPA118, SPA120-23. Unlike the Plaintiffs-Appellees, the Health Insurers' primary interest was in preserving their

- 3 -

individualized claims for damages from *future* injuries, injuries that occurred after the end date for the cash settlement class.

The implementation of the Affordable Care Act led to a significant expansion of the market for individual and small-employer policies and the use of Health Benefits Exchanges to purchase health insurance coverage. Health Insurers' Br. at 9-10. Many individuals prefer to use credit cards to make premium payments on the internet-based Health Benefits Exchanges, with the result that Health Insurers will begin to process a substantially higher volume of credit card transactions and pay the associated interchange fees. When making their objections in May 2013, many of the Health Insurers reported that they expected that an increasing share of premiums for individual coverage would be paid by credit cards, starting in late 2013 or 2014 and into the foreseeable future. *Id.* at 11. The Health Insurers thus face the prospect of injuries from anticompetitive conduct associated with interchange fees beginning *after* the period for which Rule 23(b)(3) monetary relief was provided.

Despite the fact that they did not receive significant (or in some cases, any) benefit from the cash settlement that was the focus of the settlement package, the

- 4 -

Health Insurers were included in a non-opt out Rule 23(b)(2) settlement class.[2]
The proposed settlement agreement defines the "Rule 23(b)(2) Settlement Class"
to include "all persons, businesses, and other entities that as of the Settlement
Preliminary Approval Date *or in the future* accept any Visa-Branded Cards and/or
MasterCard-Branded Cards in the United States." SPA118 (emphasis added).

The principal form of relief provided to the Rule 23(b)(2) class, however, is
of little if any benefit to the Health Insurers. The principal injunctive relief offered
to members of the Rule 23(b)(2) class was the ability to surcharge Visa and
MasterCard users at both the brand and product levels. *See* SPA36 (describing
elimination of the rule prohibiting surcharging by merchants as "[o]ne of the
principal accomplishments of the injunctive relief obtained by the proposed
settlement"). As explained in the opening brief, the Affordable Care Act's
Medical Loss Ratio requirement, state laws prohibiting surcharging, and the
prospect of state or federal regulation prohibiting health insurers from surcharging
make the surcharging relief provided to the Rule 23(b)(2) class of minimal benefit
to the Health Insurers. Health Insurers' Br. at 9-16.

---

[2] Most of the Health Insurers either are not eligible for inclusion in the Rule
23(b)(3) class or opted out because the settlement offered them only nominal
financial benefits. [Dkt. No. 2643 at 3; Dkt. No. 2493-1 at 3-4 n.1].

To make matters worse, the Health Insurers, as members of the non-opt-out Rule 23(b)(2) class, are required to release claims for damages arising from *future* anti-competitive conduct associated with the interchange fees. *See id.* at 25. Under the proposed settlement agreement, the Health Insurers are required to provide a broad release of future damages claims despite the fact that many Health Insurers will receive little if any monetary relief as part of the Rule 23(b)(3) class and will see no tangible benefit from the injunctive and declaratory relief provided to the Rule 23(b)(2) class members.

## II. The District Court's Approval of the Proposed Settlement Should Be Reversed Because, by Including the Health Insurers, the Rule 23(b)(2) Class Failed the Cohesion and Adequacy Requirements for Class Certification

### A. *By Including the Health Insurers, the Rule 23(b)(2) Class Lacked Cohesion*

The Health Insurers provide a stark example of why the Rule 23(b)(2) class lacked the necessary cohesion. The Rule 23(b)(2) class included a major industry (the health insurance industry) that had not paid significant interchange fees in the past and, unlike the Plaintiffs-Appellees, did not have a significant monetary incentive (in the form of the cash settlement) to accept limited injunctive relief and waive future damages claims. Moreover, the limited injunctive relief provided to the Health Insurers had little value because of the "unique concerns" posed by their regulatory environment, concerns "no one thought of." *See* SPA48.

Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Because of the non-opt out nature of a Rule 23(b)(2) class, "even greater cohesiveness generally is required than in a Rule 23(b)(3) class." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998) ("a (b)(2) class may require more cohesiveness than a (b)(3) class"). Here, the Rule 23(b)(2) relief was not appropriate for categories of class members, including the Health Insurers, nor did it "provide relief to each member of the class," as *Dukes* requires. Accordingly, the Rule 23(b)(2) class lacked the requisite cohesiveness of interests. Separately, the class lacked the requisite cohesion of interests because some class members received substantial monetary relief as Rule 23(b)(3) class members and other members of the Rule 23(b)(2) class received little or no monetary recovery as a result of the settlement, even though both classes were required to give essentially identical releases of claims.

The Defendants-Appellees do not address the cohesion requirement as it relates to the Health Insurers. The Plaintiffs-Appellees summarily state: "speculation that health insurers might be actually or effectively prevented from surcharging by federal and state regulations – including wholly hypothetical effects of the Affordable Care Act's Medical Loss Ratio rules – likewise has no bearing

on Rule 23(b)(2) cohesion in the relevant sense." Plaintiffs-Appellees' Br. at 34 n.4. Plaintiffs-Appellees are wrong in two respects. First, there is nothing hypothetical about state laws prohibiting surcharging. *See* SPA215-32 (collecting state laws); *see also* Health Insurers' Br. at 12. Nor is there anything hypothetical about the operation of the Medical Loss Ratio rules. Those federal regulations are currently in effect and actually, not hypothetically, limit Health Insurers' ability to obtain a financial benefit from surcharging. *See id.* at 13-16 (explaining the operation of the regulations and their impact on surcharging); 42 U.S.C. § 300gg-81(b); 45 C.F.R. Part 158, Subpart B (Oct. 3, 2013).

Shortly after the Health Insurers filed their opening brief, the U.S. Department of Health and Human Services' Center for Consumer Information & Insurance Oversight ("CCIIO") issued additional guidance limiting Health Insurers' ability to surcharge. Under the guidance published June 24, 2014, issuers may not pass through credit card processing fees solely to "a certain section of the consumer group," *e.g.*, those consumers who pay premiums by credit card, in connection with individual or small group coverage offered inside or outside the Exchange. CMS, REGTAP FAQ ID #816a (June 24, 2014).[3] Rather, issuers that

---

[3] The guidance is available at https://www.regtap.info/faq_viewu.php?id=816. It is publicly available, although those wishing to view it must create a log-in account.

wish to pass through such fees in the individual or small group market must do so by spreading the cost across all plans to which they apply in the market, by making a plan-level adjustment to the market-wide index rate (for "administrative costs"), in developing the rate for each product to which the relevant fee applies and is passed through, in accordance with the Affordable Care Act's single risk pool provisions. *Id.*; *see* 42 U.S.C. § 18032(c); 45 C.F.R. § 156.80(d)(2)(iv).[4]

Second, the inability of a major industry to benefit from what the district court characterized as "[o]ne of the principal accomplishments" of the rule change relief provided to the Rule 23(b)(2) class is, in fact, highly relevant to the cohesion analysis. *See* SPA36; *see also* SPA15. While the fact that not every single member of the class may benefit from all forms of relief provided in the settlement may not destroy class cohesion, here we have a major industry "no one thought of"

_____

[4] It appears that the guidance applies, at the very least, to all health insurance coverage that is subject to the Affordable Care Act's single risk pool and fair health insurance premium provisions, namely all individual and small group coverage other than so-called "grandfathered" or "transitional" plans. *See* 42 U.S.C. §§ 300gg(a), 18032(c), 18011(a)(2); 45 C.F.R. §§ 147.102, 147.140, 156.80(a), (b); CCIIO, Letter to Insurance Commissioners from Director Gary Cohen (Nov. 14, 2013), http://www.cms.gov/CCIIO/Resources/Letters/Downloads/commissioner-letter-11-14-2013.PDF; CCIIO, Insurance Standards Bulletin Series – Extension of Transitional Policy through October 1, 2016 (Mar. 5, 2014), http://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/transition-tocompliant-policies-03-06-2015.pdf.

who, because of the unique regulatory environment in which it operates, is unable to obtain any meaningful benefit from the principal relief offered in the settlement. *That* creates a cohesion problem.

The U.S. health insurance industry collected over $700 billion in premium revenue in 2013 and had net earnings of approximately $10.3 billion in 2013.[5] Collectively, the Health Insurers cover millions of Americans and represent a substantial share of the U.S. health insurer market.[6] With the likelihood that an increasing share of health insurance premiums will be paid on Health Benefits Exchanges with credit cards, the district court erred in overlooking the impact of the settlement on the Health Insurers.

---

[5] Nat'l Ass'n of Ins. Comm'rs & The Ctr. for Ins. Pol'y & Research, 2013 Health Insurance Industry Analysis Report at 1. http://www.naic.org/documents/topic_insurance_industry_snapshots_2013_industry_analysis_report.pdf (last visited Nov. 20, 2014) ; *see also* http://health.usnews.com/health-news/health-insurance/articles/2013/12/16/top-health-insurance-companies (Nov. 5, 2014) ("The largest 125 U.S. health insurers collected some $744 billion in 2013 premiums.").

[6] The Health Insurers include the majority of the entities that are members of the Blues Cross and Blue Shield Association ("BCBSA"), among other insurance companies. Together, the BCBSA member companies administer or insure health benefits for more than 105 million individuals – one-third of all Americans – in all 50 states, the District of Columbia, and Puerto Rico. *See* http://www.bcbs.com/about-the-companies/ (last visited Nov. 20, 2014).

Because of the operation of the Affordable Care Act, this industry differed from the other merchants. Health Insurers will not benefit from the Rule 23(b)(3) relief, given that their role in processing substantial credit card transactions did not begin until after 2012. In addition, unlike other merchants, the Health Insurers' ability to benefit financially from surcharging is constrained by the Medical Loss Ratio regulations. *See* 45 C.F.R. Part 158, Subpart B (Oct. 3, 2013). Furthermore, in accordance with the Affordable Care Act's single risk pool provisions, CCIIO has confirmed that the Health Insurers, unlike other merchants, generally are prohibited from surcharging their customers in the individual and small group markets. *See supra* p. 8-9. These crucial differences between a major U.S. industry and other members of the class created a lack of cohesion in the Rule 23(b)(2) class requiring a carve-out of the Health Insurers or a denial of class certification.

**B.**   *The Class Representatives Could Not Adequately Represent the Health Insurers*

A class can be certified only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, the class representatives must possess the same interests and suffer the same injuries as the class members and "must have no interests antagonistic to the interests of other class members." *In re Literary Works in Elec.*

*Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (internal quotation marks and citation omitted).

Here, the class representatives received ample monetary consideration as Rule 23(b)(3) class members in exchange for their release of the ability to bring future claims for monetary relief as Rule 23(b)(3) class members.  And having waived such claims as members of the 23(b)(3) class, they had no incentive to negotiate against a similar release for Rule 23(b)(2) class members.  The Health Insurers, although faced with the threat of injury from anticompetitive conduct associated with interchange fees arising from their future acceptance of credit cards, will not receive any meaningful monetary consideration for their Rule 23(b)(2) release – the scope of which is as broad as the release given by those who received substantial financial rewards under the settlement.

The backward-looking nature of the class representatives' injuries thus created conflicts of interest with the Health Insurers and other emerging merchants, whose injuries would primarily, if not exclusively, arise in the future.  *See Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000) (categorizing as "obvious," for purposes of this adequacy analysis, the "conflict between those currently injured and those who had yet to suffer injury, but would in the future"); *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 261 (2d Cir. 2001) (where a class "purports to

- 12 -

represent both present and future claimants," the class "may encounter internal conflicts"), *vacated in part on other grounds*, 539 U.S. 111, 112 (2003).

Defendants-Appellees do not address the Health Insurers' argument regarding the adequate representation requirement. Plaintiffs-Appellees reject the Health Insurers' argument that there is some "radical asymmetry between present merchants and those objectors who purport to be 'predominantly concerned with future injuries'" because "all merchants similarly benefit from the rule reforms." Plaintiffs-Appellees Br. at 54 (quoting Health Insurers' Br. 23). But that is not the case. The Health Insurers do not enjoy a benefit similar to that enjoyed by the other merchants because, unlike other merchants, the Health Insurers are constrained in their ability to surcharge their customers.

Plaintiffs-Appellees also reject the notion that class representatives sacrificed Rule 23(b)(2) relief to secure greater Rule 23(b)(3) relief. According to Plaintiffs-Appellees, "the value of the injunctive relief here "'may *very likely exceed* the value of the monetary relief in the long run.'" *Id.* at 55 (quoting SPA67) (emphasis added by Plaintiffs-Appellees). Again, that is not the case for the Health Insurers, who obtain little value from the injunctive relief.

The Appellees would like to ignore the Health Insurers. But the Health Insurers are too big and too unique to be ignored. Their inclusion in the non-opt-out Rule 23(b)(2) settlement class eliminated any cohesion the class might

otherwise have had.  In addition, the class representatives did not adequately represent the Health Insurers because, again, as the district court acknowledged, "no one thought of their unique concern."  SPA48.  Nor was their "unique concern" some minor detail that should give way to the broader goals of settling the class action.  The proposed settlement unwittingly included a major industry in a non-opt-out Rule 23(b)(2) class that provided it no meaningful injunctive relief while at the same time requiring a broad release of claims for monetary damages.  Although that deal may have made sense for class members who benefited from the Rule 23(b)(3) cash settlement, it was fundamentally unfair to the Health Insurers.

## CONCLUSION

The decision of the district court approving the class action settlement should be reversed, at least to the extent that Health Insurers are included in the Rule 23(b)(2) class.

Respectfully submitted,

/s/ Anthony F. Shelley
Anthony F. Shelley
  *Counsel of Record*
Adam P. Feinberg
Laura G. Ferguson
Michael N. Khalil
Katherine E. Pappas
Miller & Chevalier Chartered
655 15th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: ashelley@milchev.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

XX this brief contains 3,054 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

___ this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

XX this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in Times New Roman, or

___ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

     November 25, 2014         /s/ Anthony F. Shelley
          Date                     Anthony F. Shelley

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2014, I electronically filed the foregoing **PAGE-PROOF REPLY BRIEF OF APPELLANTS** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to counsel of record for the parties.

I also certify that, on November 25, 2014, I have dispatched by Federal Express, the requisite six (6) copies of the **PAGE-PROOF REPLY BRIEF OF APPELLANTS** to the Clerk of the United States Court of Appeals for the Second Circuit.

/s/ Anthony F. Shelley
Anthony F. Shelley