# 12-4671-cv(L)

12-4708-cv(CON), 12-4765-cv(CON), 13-4719-cv(CON), 13-4750-cv(CON), 13-4751-cv(CON), 13-4752-cv(CON), 14-32-cv(CON), 14-117-cv(CON), 14-119-cv(CON), 14-133-cv(CON), 14-157-cv(CON), 14-159-cv(CON), 14-192-cv(CON), 14-197-cv(CON), 14-219-cv(CON), 14-225-cv(CON), 14-241-cv(CON), 14-250-cv(CON), 14-266-cv(CON), 14-303-cv(CON), 14-331-cv(CON), 14-349-cv(CON), 14-404-cv(CON), 14-422-cv(CON), 14-443-cv(CON), 14-480-cv(CON), 14-497-cv(CON), 14-530-cv(CON), 14-567-cv(CON), 14-584-cv(CON), 14-606-cv(CON), 14-663-cv(CON), 14-837-cv(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST LITIGATION

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**PAGE PROOF REPLY BRIEF FOR OBJECTORS-APPELLANTS
DFS SERVICES LLC, DISCOVER HOME LOANS, INC.
AND DISCOVER BANK**

WILLIAM H. PRATT
JENNIFER M. SELENDY
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

*Attorneys for Objectors-Appellants
DFS Services LLC, Discover
Home Loans, Inc. and
Discover Bank*

November 25, 2014

i

## **TABLE OF CONTENTS**

**Page**

**ARGUMENT** ...................................................................................................1

**CONCLUSION**................................................................................................7

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) ................................................................................3

*E. States Retail Lumber Dealers' Ass'n v. United States*,
  234 U.S. 600 (1914) .............................................................................................3

*Fashion Originators Guild of Am. v. FTC*,
  312 U.S. 457 (1941) .............................................................................................3

*Nw. Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
  472 U.S. 284 (1985) .............................................................................................3

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*,
  883 F.2d 1101 (1st Cir. 1989) ..............................................................................3

*Robertson v. Nat'l Basketball Ass'n*,
  556 F.2d 682 (2d Cir. 1977) .................................................................................2

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314 (2d Cir. 2010) .................................................................................4

*United States v. Apple, Inc.*,
  952 F. Supp. 2d 638 (S.D.N.Y. 2013) ..................................................................4

*United States v. Crescent Amusement Co.*,
  323 U.S. 173 (1944) .............................................................................................3

## ARGUMENT

Objector-Appellants DFS Services LLC, Discover Home Loans, Inc., and Discover Bank (together "Discover") operate one of the two payment card networks that compete with the dominant Visa and MasterCard networks. Under the guise of the Definitive Class Action Settlement Agreement (the "Agreement") aimed at eliminating the Visa and MasterCard networks' harmful anti-steering rules, Visa and MasterCard entered into an illegal group boycott, which imposes unnecessary and anti-competitive burdens on merchants that seek to accept Discover cards along with Visa and MasterCard cards. This has, in turn, led some merchants to threaten to stop accepting Discover in order to avoid those burdens, detrimentally impacting Discover's business in a significant way. In short, the Agreement, which was touted as eliminating anti-competitive rules, actually puts new rules for merchants in place that continue to block competition on the merits from Discover.

Notably, the settling plaintiffs do not even address the provisions of the Agreement challenged by Discover — the so-called Level Playing Field Rules — and offer no defense of, or support for, them in their brief to this Court. The only attempt to defend those rules comes from Visa and MasterCard (together "Defendants") — the very parties who stand to benefit directly from this illegal agreement. Yet, nowhere in their brief do Defendants deny that the Agreement

1

imposes unique burdens on a much smaller rival. Nor do they address the fact that the Agreement is designed to thwart price competition from Discover by forcing merchants to calculate their cost of accepting Discover card transactions differently from the way they calculate the cost of accepting Visa and MasterCard transactions. Defendants appear to hope that the Court will not read too closely either the plain language of the Agreement or the cases they cite.

Defendants first attempt to defend the Level Playing Field Rules by setting forth an unsupported and implausible standard of review. According to Defendants, who rely on a single case, *Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682 (2d Cir. 1977), Discover needs to show that the challenged provisions of the Agreement either previously have been held *per se* illegal or otherwise are unlawful to a legal certainty. (Defs. Br. at 76.) *Robertson* does not say that. While it does caution that, when approving a settlement, a court "should not in effect try the case by deciding unsettled legal questions," nowhere does it impose a requirement of a prior finding of illegality, let alone *per se* illegality. *Robertson*, 556 F.2d at 686. Moreover, in *Robertson*, the settlement was challenged as not effectively addressing or resolving the underlying dispute that was being settled. In contrast, Discover's objection focuses on a new illegality created by the Agreement itself that impacts an innocent third-party competitor.

2

Not only are Defendants wrong on the legal standard, but they are also wrong in their assertion that Discover lacks legal authority supporting its position. (Defs. Br. at 76.) Discover in its main brief discusses multiple cases in which courts have held boycotts to be *per se* illegal where a group of competitors used their dealings with suppliers or customers to disadvantage rivals — the situation created by the Level Playing Field Rules. (Discover Br. at 44-46.)[1] Defendants fail to distinguish, or even discuss, these cases.

Instead, Defendants seek to defend the Level Playing Field Rules as "nothing more than 'most favored nations' clauses," which they assert have been repeatedly upheld by courts "given their legitimate, *competitive* features." (Defs. Br. at 76, 77 (emphasis in original).) Setting aside whether the Level Playing Field Rules are actually "most favored nations" ("MFN") provisions, Defendants' argument ignores the key point. The principles discussed in each of the cases cited by Defendants (Defs. Br. at 77) involve unilateral vertical contracting practices, not a horizontal conspiracy between two competitors. *See Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101, 1111-12 (1st Cir. 1989) (rejecting Section 2 claim that revolved around whether defendant's "unilateral decisions" about price can "violate the Sherman Act"); *Blue Cross &*

---

[1] *See, e.g., Nw. Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 294 (1985); *United States v. Crescent Amusement Co.*, 323 U.S. 173, 183-84 (1944); *Fashion Originators Guild of Am. v. FTC*, 312 U.S. 457, 467-68 (1941); *E. States Retail Lumber Dealers' Ass'n v. United States*, 234 U.S. 600, 614 (1914).

3

*Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995) (addressing MFN clause in the context of vertical Section 1 allegation where the buyer was unilaterally trying to "bargain for low prices" with sellers). Neither of these cases stands for the proposition that competitors can collude to impose MFN provisions.

By contrast, in cases where competitors conspire to use MFN clauses, courts regularly reject assertions of the legality of such conduct. In *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 323-24 (2d Cir. 2010), this Court found that a conspiracy by competitors that encompassed parallel imposition of MFN clauses stated a claim. In so doing, the Court noted that defendants knew colluding on MFN clauses was problematic and "attempted to hide the MFNs because they knew they would attract antitrust scrutiny." *Id*. at 319. Similarly, in *United States v. Apple, Inc.*, 952 F. Supp. 2d 638 (S.D.N.Y. 2013), the use of MFN clauses in parallel agreements between book publishers and Apple as part of a conspiracy among book publishers to fix book prices was found illegal. *Id*. at 691-702.

Notwithstanding these authorities — and decades of antitrust precedent more generally prohibiting competitors from conspiring on pricing terms — Defendants are asking this Court to create precedent that it is permissible for the two largest firms in a market to disadvantage a much smaller competitor by colluding to impose MFN pricing terms on customers. This argument is brazen if nothing else.

4

Defendants' only other argument is that Discover's "protestations" about "burdensome calculations" ring "hollow" because of Discover's own Equal Treatment Rule. (Defs. Br. at 77.) At the outset, in making this argument, Defendants tellingly ignore how the calculations in their Level Playing Field Rules are ***rigged for Discover to fail even when it is the cheapest network option for merchants***. (*See* Discover Br. at 22-27.) Because it is impossible to defend their rigged cost comparison, Defendants do not even try. Moreover, the very fact that their test is rigged puts the lie to Defendants' claim that the Level Playing Field cost comparisons are routine "comparative exercises" that are "merely a cost of doing business in the payment card industry." (Defs. Br. at 77.)

More generally, Defendants' argument ignores the key difference between (a) two large firms ***colluding*** to impose rules that disadvantage a small competitor and (b) a small competitor without any market power ***unilaterally*** maintaining a rule designed to protect it from the anti-competitive behavior of two firms with a history of repeatedly violating the antitrust laws. Discover's Equal Treatment Rule says that it should not be discriminatorily surcharged if it is cheaper to merchants. (Discover Br. at 19-21.) The rule does not lead to routine "comparative exercises" (Defs. Br. at 77) that result in a costly burden; indeed, Discover has never had the need to enforce the rule nor ever required a merchant to make such a cost comparison. *See* 9/12/13 Tr. at 149:25-150:23. The rule exists to address a long

5

history of extreme behavior by rival networks, not as a routine "cost of doing business in the payment card industry," as Defendants assert. (Defs. Br. at 77.) Indeed, if Discover's rule ever led to routine burdensome calculations, it would have to be modified or eliminated, as Discover, unlike Defendants, does not have the market power to impose higher costs on customers. (Discover Br. at 13.) Discover's evidence in this regard stands in the record as uncontroverted by any of the proponents of this illegal Agreement.

Defendants' briefing strategy in this Court mirrors the critical misleading assertions that they made in the court below. First, Defendants assured the district court that Discover would not be subject to the Level Playing Field Rules if it were, in fact, cheaper. 9/12/13 Tr. at 205:20-24. This purported assurance, however, is totally hollow. As just discussed, the Agreement includes a rigged cost comparison that ensures Discover will always be deemed more expensive. (Discover Br. at 22-24.) Second, Defendants asserted that Discover could just drop its own Equal Treatment Rule, 9/12/13 Tr. at 205:25-206:14, totally ignoring the abundant record evidence that Discover's rule is indisputably procompetitive and has never been used to block price competition in the marketplace. R2657-5 (Declaration of Roger Hochschild ("Hochschild Decl.")) ¶¶ 21-22. Finally, Defendants argued that Discover will be free to negotiate a no-surcharge arrangement with merchants (thus avoiding the Level Playing Field Rules), 9/12/13

6

Tr. at 206:13-14, without acknowledging or addressing that the Agreement imposes costly requirements on merchants who negotiate such arrangements with Discover — requirements that do not apply to the merchants' comparable dealings with Visa and MasterCard. (Discover Br. at 27-30.) Defendants' approach to Discover's appeal invites this Court to accept similarly misleading and insupportable assertions about the Agreement and a rival third-party's objections to it. The Court should not accept Defendants' invitation.

## CONCLUSION

For the foregoing reasons and the reasons set out in Discover's main brief, this Court should reverse the district court's order granting final approval of the Agreement and remand with instructions to modify the Level Playing Field Rules of the Agreement to exclude Discover from the scope of those rules.

November 25, 2014                    Respectfully submitted,

                                     */s/ Jennifer M. Selendy*
                                     William H. Pratt
                                     Jennifer M. Selendy
                                     KIRKLAND & ELLIS LLP
                                     601 Lexington Avenue
                                     New York, New York 10022
                                     Telephone: (212) 446-4800

                                     *Attorneys for DFS Services LLC,*
                                     *Discover Home Loans, Inc., and*
                                     *Discover Bank*

7

## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

This reply brief complies with FRAP 32(a)(7)(B)(i) because it contains 1,570 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

This reply brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jennifer M. Selendy*
William H. Pratt
Jennifer M. Selendy
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

*Attorneys for DFS Services LLC, Discover Home Loans, Inc., and Discover Bank*

## CERTIFICATE OF DIGITAL-SUBMISSION COMPLIANCE

The undersigned hereby certifies that:

(1) all required privacy redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the written document filed with the Clerk; and

(2) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program (McAfee Enterprise 8.5 Virus Scan, updated as of March 9, 2009) and, according to the program, are free of viruses.

          */s/ Jennifer M. Selendy*
          William H. Pratt
          Jennifer M. Selendy
          KIRKLAND & ELLIS LLP
          601 Lexington Avenue
          New York, New York 10022
          Telephone: (212) 446-4800

          *Attorneys for DFS Services LLC,*
          *Discover Home Loans, Inc., and*
          *Discover Bank*